No. 24-13742

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**CYNTHIA ALLEN,**
*individually and on behalf of others similarly situated, et al.,*
*Plaintiffs,*

**AMANDA CURLEE,**
*Intervenor Plaintiff-Appellant,*

v.

**AT&T MOBILITY SERVICES, LLC,**
*Defendant-Appellee,*

**AT&T SERVICES, INC.,**
*Defendant.*

Appeal from the United States District Court
for the Northern District of Georgia

No. 1:18-cv-03730-WMR

## BRIEF OF APPELLEE

Kenneth W. Gage                    Benjamin W. Snyder
Kaveh Dabashi                      *Counsel of Record*
PAUL HASTINGS LLP                  PAUL HASTINGS LLP
200 Park Avenue                    2050 M Street NW
New York, New York 10166           Washington, DC 20036
(212) 318-6000                     (202) 551-1700

*Counsel for Defendant-Appellee*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. Rule 26.1-1, the undersigned counsel hereby certifies that the following is a full and complete list of known trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this appeal:

1. American Civil Liberties Union of Georgia (counsel for Intervenor-Appellant)

2. American Civil Liberties Union Foundation (counsel for Intervenor-Appellant)

3. AT&T Inc. (NYSE: T) (corporate affiliate of AT&T Mobility Services LLC)

4. AT&T Mobility Services LLC (Defendant-Appellee)

5. AT&T NCWS Holdings, Inc. (corporate owner of New Cingular Wireless Services, Inc.)

6. AT&T Teleholdings, Inc. (corporate owner of SBC Telecom, Inc.)

7. BellSouth Mobile Data, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

8. Cohen Milstein Sellers & Toll, PLLC (counsel for Intervenor- Appellant)

9.    Cricket Holdco Inc. (corporate owner of AT&T Mobility Services LLC)

10.   Curlee, Amanda (Intervenor-Appellant)

11.   Dabashi, Kaveh (counsel for Defendant-Appellee)

12.   Gage, Kenneth W. (counsel for Defendant-Appellee)

13.   Isaacson, Cory (counsel for Intervenor-Appellant)

14.   Leap Wireless International, Inc. (corporate owner of Cricket Holdco Inc.)

15.   Lopez-Delgado, Andrés M. (counsel for Intervenor-Appellant)

16.   LWI Holdco, Inc. (corporate owner of Leap Wireless International, Inc.)

17.   New Cingular Wireless Services, Inc. (corporate owner of LWI Holdco, Inc.)

18.   Paul Hastings LLP (counsel for Defendant-Appellee)

19.   Ray, William M., II (United States District Court Judge for the Northern District of Georgia)

20.   SBC Telecom, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

21.   Sellers, Joseph M. (counsel for Intervenor-Appellant)

22.   Snipe, Sheldon W. (counsel for Defendant-Appellee)

23.   Snyder, Benjamin W. (counsel for Defendant-Appellee)

24.   Srinivasan, Harini (counsel for Intervenor-Appellant)

25.   Thomas, Gillian L. (counsel for Intervenor-Appellant)

# STATEMENT REGARDING ORAL ARGUMENT

AT&T joins Appellant Amanda Curlee's request for oral argument.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ......................................................... XI

ISSUES PRESENTED ............................................................................ 1

INTRODUCTION ................................................................................... 2

STATEMENT OF THE CASE .............................................................. 5

    A.    Allen and Webb's original suit. ............................................. 5

    B.    Curlee's post-dismissal attempt to intervene. ....................... 9

    C.    Curlee's prior appeal. ........................................................... 9

    D.    The district court's jurisdictional dismissal. ...................... 13

STANDARD OF REVIEW ................................................................... 14

SUMMARY OF ARGUMENT ............................................................. 14

ARGUMENT ........................................................................................ 19

I.    THE DISTRICT COURT LACKED JURISDICTION TO
    GRANT INTERVENTION INTO A CASE THAT HAD
    ALREADY BEEN VOLUNTARILY DISMISSED. ....................... 19

    A.    Generally, a plaintiff's voluntary dismissal of all
        claims extinguishes a district court's jurisdiction. ............. 19

    B.    Exceptions to the general rule are limited. ......................... 24

        1.    A district court can exercise jurisdiction that it
            expressly retains in a pre-dismissal order. ................ 24

        2.    A district court can exercise jurisdiction to
            address collateral matters that implicate the
            court's power to protect its proceedings and that
            arose while a case was still pending. ........................... 27

        3.    A district court retains jurisdiction to consider a
            motion to reopen a case under Rule 60(b). ................ 29

    C.    The district court correctly dismissed Curlee's
        complaint-in-intervention because no exception to the
        general rule applies here. ...................................................... 32

D.  Curlee's contrary arguments lack merit.............................. 38

    1.  Curlee's attempt to distinguish this Court's decision in Anago Franchising fails........................... 39

    2.  That the district court would have had subject-matter jurisdiction to hear Curlee's claims in a new suit does not establish that it retained jurisdiction over a previously dismissed suit brought by other plaintiffs......................................... 44

    3.  Curlee cannot intervene into a case that has already been voluntarily terminated......................... 46

    4.  Allen and Webb retained no ongoing interest in class certification that could have kept their case live. ................................................................. 51

    5.  Curlee's remaining authorities ultimately provide no support for her position......................... 53

II. THE JANUARY 2023 STIPULATION OF DISMISSAL WAS EFFECTIVE. ................................................................. 58

CONCLUSION ........................................................................ 60

CERTIFICATE OF COMPLIANCE....................................... 61

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
925 F.3d 1205 (11th Cir. 2019) ........................................................ 20

*Adam Joseph Resources v. CNA Metals Limited*,
919 F.3d 856 (5th Cir. 2019) ............................................................ 48

*Allen v. AT&T Mobility Servs., LLC*,
104 F.4th 212 (11th Cir. 2024) ............................ 11, 12, 30, 51, 55, 57

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .................................................... 14, 20, 22, 33, 44

*Alvarez v. Smith*,
558 U.S. 87 (2009) ............................................................................ 20

*American Canoe Ass'n, Inc. v. City of Attalla*,
363 F.3d 1085 (11th Cir. 2004) ........................................................ 45

*Anago Franchising, Inc. v. Shaz, LLC*,
677 F.3d 1272 (11th Cir. 2012) ................ 1, 2, 4, 10, 11, 13, 15, 17, 18,
21, 22, 24, 25, 28, 33, 37, 38,
39, 40, 41, 44, 49, 50, 54, 57

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ...................................................................... 20, 22

*Black v. Central Motor Lines, Inc.*,
500 F.2d 407 (4th Cir. 1974) ............................................................ 46

*BLOM Bank SAL v. Honickman*,
145 S. Ct. 1612 (2025) ........................................ 30, 31, 34, 38, 43, 50

*In re Brewer*,
863 F.3d 861 (D.C. Cir. 2017) .......................................... 35, 36, 49, 50

iv

*Bridgeport Music, Inc. v. Smith,*
714 F.3d 932 (6th Cir. 2013)..............................................35

*Bryant v. Yellen,*
447 U.S. 352 (1980)..............................................53

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
595 U.S. 267 (2022)..............................................53

*Chiles v. Thornburgh,*
865 F.2d 1197 (11th Cir. 1989).................................. 13, 46, 47

*Cita Trust Co. AG v. Fifth Third Bank,*
879 F.3d 1151 (11th Cir. 2018)................................... 16, 51

*Commissioner, Ala. Dep't of Corr. v. Advance Local Media, LLC,*
918 F.3d 1161 (11th Cir. 2019)...................................27, 56

*Coopers & Lybrand v. Livesay,*
437 U.S. 463 (1978)..............................................54

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990).......................................... 15, 26, 27, 33

*DeOtte v. State,*
20 F.4th 1055 (5th Cir. 2021) ...................................54

*Deposit Guaranty National Bank, Jackson, Mississippi v. Roper,*
445 U.S. 326 (1980)..............................................52

*Dillard v. Chilton County Commission,*
495 F.3d 1324 (11th Cir. 2007)................................... 47, 48

*Dukes v. Wal-Mart Stores, Inc.,*
No. 01-cv-2252, 2016 WL 4269093 (N.D. Cal. Aug. 15, 2016)..............................................32

*Efron v. Candelario,*
110 F.4th 1229 (11th Cir. 2024) ...............................14

*Fleming v. Citizens for Albemarle, Inc.*,
577 F.2d 236 (4th Cir. 1978)............................................................55

*Flying J, Inc. v. Van Hollen*,
578 F.3d 569 (7th Cir. 2009)............................................................53

*Ford v. City of Huntsville*,
242 F.3d 235 (5th Cir. 2001) (per curiam)........................................56

*Gambale v. Deutsche Bank AG*,
377 F.3d 133 (2d Cir. 2004) .......................................................22, 27

*GMAC Com. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*,
213 F.R.D. 150 (S.D.N.Y. 2003) ......................................................32

*Green v. Drug Enforcement Admin.*,
606 F.3d 1296 (11th Cir. 2010) ........................................................45

*Hendrickson v. United States*,
791 F.3d 354 (2d Cir. 2015) .............................................................26

*Hinsdale v. Farmers Nat'l Bank & Trust Co.*,
823 F.2d 993 (6th Cir. 1987).......................................................23, 42

*Homesite Ins. Co. of the Midwest v. Robards*,
No. 13-cv-515, 2014 WL 359823 (E.D. Tenn. Feb. 3, 2014) ...............32

*Houston General Ins. Co. v. Moore*,
193 F.3d 838 (4th Cir. 1999).............................................................46

*Janssen v. Harris*,
321 F.3d 998 (10th Cir. 2003)...........................................................23

*Kem Mfg. Corp. v. Wilder*,
817 F.2d 1517 (11th Cir. 1987)..........................................................35

*Kemp v. United States*,
596 U.S. 528 (2022).....................................................................30, 37

*Kendrick v. Kendrick*,
16 F.2d 744 (5th Cir. 1926)...............................................................46

*Kokkonen v. Guardian Life Ins. Co. of America*,
　511 U.S. 375 (1994)........................................................ 19, 24, 25, 28

*Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*,
　924 F.3d 375 (7th Cir. 2019)............................................56

*Love v. Turlington*,
　733 F.2d 1562 (11th Cir. 1984)........................................51

*Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*,
　475 F.3d 1228 (11th Cir. 2007)........................................47

*Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*,
　2 F.3d 544 (4th Cir. 1993).................................................32

*Marino v. Ortiz*,
　484 U.S. 301 (1988) (per curiam)....................................53

*McAlpin v. Lexington 76 Auto Truck Stop, Inc.*,
　229 F.3d 491 (6th Cir. 2000)............................................26

*McDonald v. E.J. Lavino Co.*,
　430 F.2d 1065 (5th Cir. 1970)..........................................55

*United States ex rel. McGough v. Covington Techs. Co.*,
　967 F.2d 1391 (9th Cir. 1992)..........................................54

*Meek v. Metropolitan Dade Cnty.*,
　985 F.2d 1471 (11th Cir. 1993).........................................53

*Mut. Produce, Inc. v. Penn Cent. Transp. Co.*,
　119 F.R.D. 619 (D. Mass. 1988)........................................33

*Myers v. Mo & Co., Inc.*,
　452 F. App'x 856 (11th Cir. 2011).....................................26

*Odle v. Flores*,
　899 F.3d 344 (5th Cir. 2017)......................................49, 53

*Peruta v. Cnty. of San Diego*,
　824 F.3d 919 (9th Cir. 2016)............................................53

*Preiser v. Newkirk,*
   422 U.S. 395 (1975) ........................................................... 20

*Reagan v. Fox Navigation, LLC,*
   No. 02-cv-627, 2005 WL 2001177 (D. Conn. Aug. 17, 2005) ............. 32

*Rensel v. Centra Tech, Inc.,*
   2 F.4th 1359 (11th Cir. 2021) ............................................. 52

*Ross v. Marshall,*
   426 F.3d 745 (5th Cir. 2005) .............................................. 54

*Shores v. Sklar,*
   885 F.2d 760 (11th Cir. 1989) ...................................... 34, 43

*Smith v. Dowden,*
   47 F.3d 940 (8th Cir. 1995) ............................................... 23

*Smith v. Phillips,*
   881 F.2d 902 (10th Cir. 1989) ............................................ 28

*Smoke v. Norton,*
   252 F.3d 468 (D.C. Cir. 2001) ............................................ 54

*Sommers v. Bank of America, N.A.,*
   2016 WL 1720180 (Apr. 28, 2016) ...................................... 50

*Sommers v. Bank of America, N.A.,*
   835 F.3d 509 (5th Cir. 2016) ........................................ 49, 50

*Stallworth v. Monsanto Co.,*
   558 F.2d 257 (5th Cir. 1977) ............................................. 55

*State Nat'l Ins. Co. v. Cnty. of Camden,*
   824 F.3d 399 (3d Cir. 2016) .............................................. 23

*State of Alaska v. Suburban Propane Gas Corp.,*
   123 F.3d 1317 (9th Cir. 1997) ............................................ 49

*Szabo Food Serv., Inc. v. Canteen Corp.,*
   823 F.2d 1073 (7th Cir. 1987) ....................................... 22, 23

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ................................................................. 19

*Triax Co. v. TRW, Inc.,*
724 F.2d 1224 (6th Cir. 1984) ............................................. 54

*U.S. Parole Comm'n v. Geraghty,*
445 U.S. 388 (1980) ................................................................. 52

*United Airlines, Inc. v. McDonald,*
432 U.S. 385 (1977) .................................................. 12, 13, 54, 55

*United Nuclear Corp. v. Cranford Ins. Co.,*
905 F.2d 1424 (10th Cir. 1990) ..................................... 27, 28

*United States v. Ford,*
650 F.2d 1141 (9th Cir. 1981) ............................................. 32

*United States v. US Stem Cell Clinic, LLC,*
987 F.3d 1021 (11th Cir. 2021) .......................................... 53

*Waetzig v. Halliburton Energy Services, Inc.,*
145 S. Ct. 690 (2025)........................ 4, 17, 29, 30, 31, 34, 37, 41, 42, 50

*Estate of West v. Smith,*
9 F.4th 1361 (11th Cir. 2021) ............................................. 21

*Whittier v. Ocwen Loan Serv., L.L.C.,*
128 F.4th 724 (5th Cir. 2025) ............................................. 26

**Statutes**

28 U.S.C. § 1291 ...................................................... 10, 30, 55

28 U.S.C. § 1331 ................................................................. 43

Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555,
92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k))................... 5

## Other Authorities

7 Arthur R. Miller, Fed. Prac. & Procedure § 2367 (3d ed. 2008)........................................................................24

Fed. R. Civ. P. 24 ............................................ 13, 56, 57

Fed. R. Civ. P. 41(a)(1)(A) ......................................51

Fed. R. Civ. P. 41(a)(1)(A)(ii)............................ 8, 10, 21, 32, 58

Fed. R. Civ. P. 60(b).......................................... 29, 34

Fed. R. Civ. P. 60(b)(1) .......................... 4, 16, 29, 30, 35

Fed. R. Civ. P. 60(b)(2) ..........................................36

Fed. R. Civ. P. 60(b)(3) ..........................................36

Fed. R. Civ. P. 60(b)(4) ..........................................37

Fed. R. Civ. P. 60(b)(5) ..........................................37

Fed. R. Civ. P. 60(b)(6) ........................ 29, 30, 37, 43, 48, 49

Fed. R. Civ. P. 60(c)(1)...........................................30

Fed. R. Civ. P. 82..................................................44

*Random House Dictionary of the English Language* (2d ed. 1987)........................................................................46

*Black's Law Dictionary* (12th ed. 2024)....................................46

James Wm. Moore & Elizabeth B. Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623 (1946).................................29

## JURISDICTIONAL STATEMENT

Cynthia Allen and Kristine Webb voluntarily dismissed their suit against AT&T Mobility Services LLC on January 23, 2023. 2 Appx. 389–91.* The district court correctly determined that in light of that dismissal, it lacked jurisdiction to consider Appellant Amanda Curlee's subsequent motion to intervene in the already-closed case, and it therefore dismissed Curlee's complaint-in-intervention. 3 Appx. 482–88. Curlee timely appealed from that final order of dismissal. *Id.* at 490. This Court has jurisdiction to review the district court's order pursuant to 28 U.S.C. § 1291.

---

\* Citations to "Appx." refer to Intervenor Plaintiff-Appellant's Appendix. (ECF No. 32.) Citations to "Suppl. Appx." refer to AT&T's Supplemental Appendix, filed herewith.

# ISSUES PRESENTED

1.     Whether the district court had jurisdiction to consider Appellant Amanda Curlee's motion to intervene in an action that had already been voluntarily dismissed, given this Court's recognition that voluntary dismissal "divests the district court of jurisdiction" over any ongoing Article III case or controversy. *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012).

2.     Whether the January 23, 2023 stipulation of voluntary dismissal was effective to dismiss Cynthia Allen's and Kristine Webb's claims against AT&T Mobility Services, LLC under Rule 41(a)(1)(A)(ii) even though it was not explicitly signed by AT&T Services, Inc., given that AT&T Services, Inc. participated in the lawsuit only to contest personal jurisdiction and was not named in the operative complaint.†

---

†     On June 11, 2025, this Court requested that the parties briefly address this issue, carried with the case from a prior appeal, "as they deem necessary or appropriate." June 11, 2025 Order at 2.

## INTRODUCTION

Under Article III of the Constitution, the federal courts may exercise jurisdiction over an action for only so long as an actual case or controversy between the parties persists. It follows that when the parties to a case settle their dispute and formally dismiss all asserted claims, that dismissal "divests the district court of jurisdiction" because the court no longer has before it an Article III case or controversy. *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012).

The decision below properly applied those fundamental principles. In January 2023, former plaintiffs Cynthia Allen and Kristine Webb reached a settlement with defendant AT&T Mobility Services, LLC and filed a stipulation under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) voluntarily dismissing their action. At that point, the district court no longer had before it any Article III case or controversy involving Allen and Webb's claims. Appellant Amanda Curlee later tried to intervene, seeking to appeal the class-certification decision from Allen and Webb's now-dismissed action. But the district court properly held that it had no jurisdiction to consider Curlee's motion because it no longer had Article III jurisdiction over the action into which she sought to intervene.

Citing the principle that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction, Curlee argues that the district court erred when it concluded that the original plaintiffs' Rule 41(a)(1)(A) dismissal stripped it of jurisdiction. That argument, however, misunderstands the role that Rule 41(a)(1)(A) played in the district court's analysis. Rule 41(a)(1)(A) did not itself withdraw jurisdiction from the court; instead, it simply set forth the means by which the parties could formalize the end of their dispute. And while the formal end of their dispute did have jurisdictional consequences, that was because of Article III, not any independent effect of Rule 41(a)(1).

That result hardly leaves litigants like Curlee without options. The most obvious would have been to intervene sooner. Curlee was on notice of an impending settlement for more than three months before Allen and Webb finally dismissed their claims; she could have filed a motion to intervene at any point within that time. Alternatively, if Curlee was committed to suing only after Allen and Webb had dismissed their claims, she was free to file a new suit of her own. Or, if her failure to intervene before Allen and Webb's dismissal was the result of "mistake, inadvertence, surprise, or excusable neglect," she could have sought to

reopen under Federal Rule of Civil Procedure 60(b)(1) within a year after the action was dismissed.

But Curlee took none of those available paths. Instead, she asks this Court to let her intervene directly into a case that no longer exists. The Court should deny that request. Curlee never explains how the district court could have retained Article III jurisdiction over Allen and Webb's action after the case or controversy that gave rise to jurisdiction had ended. The Supreme Court's decision in *Waetzig v. Halliburton Energy Services, Inc.*, 145 S. Ct. 690 (2025), on which she principally relies, does not solve that problem. Rather, it just confirms that the district court would have needed to reopen Allen and Webb's case under Rule 60(b) before it could take any other actions—an option Curlee chose not to pursue. And while Curlee invokes a hodge-podge of other cases, those cases either fail to consider jurisdictional issues, involve materially different circumstances, or are not controlling and out of step with *Anago Franchising* and the prevailing view in other courts. For all of those reasons, this Court should adhere to its settled precedent and affirm.

**STATEMENT OF THE CASE**

**A.     Allen and Webb's original suit.**

Nearly seven years ago, Cynthia Allen sued AT&T Mobility Services, LLC ("AT&T") and AT&T Services, Inc. ("AT&T Services"), claiming that AT&T's attendance policy unlawfully disciminated against pregnant sales associates in violation of Title VII and the Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k)). *See* 1 Appx. 19–45. Allen alleged that the policy AT&T had in place at the time did not explicitly authorize absences based on pregnancy (as opposed to certain other specifically mentioned health conditions) and argued that the policy resulted in disparate treatment and disparate impact on pregnant employees. 1 Appx. 136–74. A second plaintiff, Kristine Webb, later joined the suit, and together Allen and Webb filed a new complaint in which they sought to assert claims against AT&T on behalf of not only themselves, but also a putative class of female employees nationwide. 1 Appx. 158, ¶ 72; *see* 2 Appx. 175–232 (memorandum in support of motion for class certification). The new complaint asserted no claims against AT&T Services, which had participated in the case only through its submission

of a Rule 12(b)(2) motion contesting personal jurisdiction, and which Allen had thereafter voluntarily dismissed from the case in March 2019. *See* Suppl. Appx. 1–9.

AT&T opposed certification of a class. AT&T explained that although the word "pregnancy" did not appear in the challenged policy, the policy in fact provided substantial protection for pregnant workers. *See id.* 27–39. Indeed, nearly all pregnant workers (including Allen and Webb) had taken advantage of the multiple excuses available under the policy for pregnancy-related absences, and Allen and Webb's own expert acknowledged that pregnant workers were no more likely to be terminated than were non-pregnant workers. *See id.* at 29, 32–33, 51. AT&T further explained that, to the extent that Allen and Webb claimed that AT&T had unlawfully failed to excuse some absences by pregnant employees, those claims necessarily turned on individualized questions about whether the absences were in fact related to pregnancy, whether the employees properly reported them, whether the unexcused absences resulted in any adverse employment actions, and so forth. *See id.* at 56–59.

On March 21, 2022, the district court denied the motion for class certification. 2 Appx. 288–317. The court found that "individual issues [would] predominate in this case," explaining that it would need to address "numerous individualized inquir[i]es," such as "whether a class member was absent from work, whether the absence was caused by an inability to come to work, whether that inability was pregnancy related," and "whether the employee sought an excuse for the absence." *Id.* at 312. In addition, the court found that a "class proceeding is not superior because of the difficulty in managing the multitude of fact-specific inquiries needed to resolve each putative class member's claims of discrimination, which w[ould] necessarily lead th[e] [c]ourt to a series of individualized hearings." *Id.* at 314.

Allen and Webb filed a Rule 23(f) petition for interlocutory review in this Court, seeking review of the district court's decision on class certification. *See* 2 Appx. 323–54. This Court denied the petition on May 25, 2022. *Id.* at 386–87.

Allen, Webb, and AT&T thereafter filed a joint motion for a stay and requested a court-supervised settlement conference. *See* 1 Appx. 15 (collecting docket entries). The district court granted the stay and

referred the case to a magistrate judge for settlement discussions on October 3, 2022. *Id.* On December 15, 2022, the court filed a minute entry on the public docket indicating that while no settlement had yet been reached, "the parties remain in potentially fruitful discussions" and that the court-directed mediation would therefore remain "open through 12/30/2022, absent further order of the Court." *Id.* at 15–16. Five days later, after being informed that the parties had made further progress in their settlement discussions, the court entered a new order on the public docket directing the parties to "file a dismissal or other filing disposing of this case upon finalization of the settlement within thirty days." *Id.* at 16 (capitalization altered).

On January 19, 2023, AT&T requested a brief extension, explaining that "[t]he parties have a fully negotiated settlement agreement prepared, but AT&T needs until January 27, 2023 to finalize the settlement so that the parties can file a proper stipulation with the Court." Suppl. Appx. 66–69. The district court granted the extension, *see* 1 Appx. 16, and on January 23, 2023, Allen and Webb filed a stipulation signed by counsel for Allen, Webb, and AT&T dismissing the entire action with prejudice. 2 Appx. 389–91. Under Rule 41(a)(1)(A)(ii), the filing of

the signed stipulation terminated the case without the need for any further court order. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (providing that "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared").

**B.    Curlee's post-dismissal attempt to intervene.**

On January 24, 2023, Appellant Amanda Curlee filed a motion to intervene in the now-ended case. 3 Appx. 392–410. Curlee asserted that she had been a member of the putative class identified in Allen and Webb's complaint and indicated that she was "seek[ing] leave to intervene so that she may appeal [the district court's] March 21, 2022 Order denying Plaintiffs' motion for class certification." *Id.* at 396.

The district court entered an order purporting to grant Curlee's motion to intervene. *Id.* at 443–49. Two days later, Curlee filed a notice of appeal seeking review of the court's class-certification decision. *See* 1 Appx. 16.

**C.    Curlee's prior appeal.**

On appeal, this Court directed the parties to address several jurisdictional questions that the Court raised on its own initiative. *See* Suppl. Appx. 70–71 and 141–43. First, the Court asked "whether the

January 23, 2023 stipulation of voluntary dismissal under [Rule] 41(a)(1)(A)(ii) was valid and effective to dismiss the claims against Defendant AT&T Mobility Services LLC, given that the stipulation appears to contain signatures for the plaintiffs and only one of the two defendants who appeared in this action." *Id.* 71. Second, the Court asked "whether the district court had jurisdiction to consider and grant the putative class member's motion to intervene after the case was rendered final by the January 23, 2023 joint stipulation of voluntary dismissal." *Id.* (citing, *inter alia*, *Anago Franchising*, 677 F.3d 1272). And third, the Court asked "whether there is a final judgment considering that the district court has not ruled on the merits of [Curlee's] claims." *Id.* 142 (citing, *inter alia*, 28 U.S.C. § 1291).

The parties agreed on the answer to the first question—namely, that the Rule 41(a)(1)(A)(ii) stipulated dismissal had been valid and effective even though it did not explicitly list AT&T Services as a signatory. They explained that Rule 41(a)(1)(A)(ii) requires only that a stipulation be signed by the "parties who have appeared" in the case, Fed. R. Civ. P. 41(a)(1)(A)(ii), and that there was therefore no need for AT&T Services to sign because AT&T Services had never appeared as a party

(instead participating only to contest personal jurisdiction). *See* Suppl. Appx. 86–91 (submission from AT&T); *id*. 120–23 (submission from Curlee).

The parties disagreed, however, about this Court's second and third questions. As to the second question, AT&T explained that under the Court's decision in *Anago Franchising*, the filing of the Rule 41 stipulated dismissal divested the district court of continued jurisdiction over Allen and Webb's suit such that there was no existing case into which Curlee could later intervene. *See id*. 92–101. And as to the third question, AT&T observed that even if Curlee's post-termination intervention were permissible, the district court had not entered any final judgment on the merits of Curlee's claims from which she could appeal under 28 U.S.C. § 1291. *See id*. 154–60. Curlee, meanwhile, argued that the district court had properly granted intervention and that Allen and Webb's stipulated dismissal was itself a final judgment for purposes of Section 1291. *See id*. 127–30; *id*. 175–83.

This Court agreed with AT&T on the third question and therefore did not reach the other two. *See Allen v. AT&T Mobility Servs., LLC*, 104 F.4th 212, 216–18 (11th Cir. 2024). The Court explained that "it is black

letter law that Allen and Webb's stipulation of dismissal did not result in an appealable final judgment" because it did not resolve any claims on the merits. *Id.* at 217. And the Court rejected Curlee's "inexplicabl[e]" argument that "she can do what the original plaintiffs could not: immediately appeal as of right without ever litigating the merits of her claims." *Id.* Accordingly, "[b]ecause there [wa]s no final judgment," the Court held that it "d[id] not have jurisdiction to address whether the district court erred when it granted Curlee's motion to intervene," and instead dismissed the appeal. *Id.* at 218.

Judge Jordan joined the Court's opinion in full and also filed a separate concurrence. *Id.* at 218–20. He acknowledged that "[t]here are cases, from both the Supreme Court and some circuits, which intimate" that a person in Curlee's position "would be entitled to intervene in a purported class action for the limited purpose of immediately appealing the denial of class certification entered against the former named plaintiffs." *Id.* at 218–19. But Judge Jordan explained that courts "typically do not imply jurisdictional holdings from cases which do not directly address the matter of jurisdiction." *Id.* at 219. Because neither *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), nor any of the

other cases invoked by Curlee had squarely considered the jurisdictional question before the Court, Judge Jordan declined to treat any of those cases as dispositive. *See id.*

### D. The district court's jurisdictional dismissal.

Following this Court's dismissal of the appeal, the district court took up the question that this Court had raised (but not resolved) regarding Curlee's ability to intervene in a case that had already been voluntarily dismissed. *See* 3 Appx. 482–88. After a new round of briefing, the court held that allowing intervention had been improper. It explained that "intervention under Fed. R. Civ. P. 24 requires the existence of a pending 'justiciable case or controversy into which an individual wants to intervene.'" *Id.* at 487 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989) (brackets omitted)). Here, however, "the Rule 41(a)(1)(A)(ii) stipulation of dismissal . . . disposed of all the claims that remained in the case and extinguished any rights that the original Plaintiffs may have had to appeal the denial of class certification." *Id.*; *see id.* at 486 (explaining that "'district courts need not and may not take action after the stipulation becomes effective because the stipulation dismisses the case and divests the district court of jurisdiction'") (quoting

*Anago Franchising*, 677 F.3d at 1278 (brackets omitted)). And because "there was no longer a justiciable case or controversy between the parties" into which Curlee could intervene, the court held that it "was divested of jurisdiction to consider any subsequent claims asserted by Curlee." *Id.* at 487.

This appeal followed.

## STANDARD OF REVIEW

When evaluating a district court's order dismissing a case for lack of jurisdiction, this Court "review[s] legal conclusions *de novo* and findings of fact for clear error." *Efron v. Candelario*, 110 F.4th 1229, 1234 (11th Cir. 2024).

## SUMMARY OF ARGUMENT

The district court correctly determined that it lacked jurisdiction to grant Curlee's motion to intervene.

**I.A.** Because "courts have 'no business' deciding legal disputes or expounding on law in the absence of [an Article III] case or controversy," the Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (citations omitted). Accordingly, where the parties to a case resolve their

dispute and stipulate to formal dismissal of all claims under Rule 41(a)(1), the filing of that stipulation "divests the district court of jurisdiction." *Anago Franchising*, 677 F.3d at 1278.

**B.**     Courts have recognized three exceptions to that general rule, encompassing circumstances in which the district courts' inherent powers enable them to take limited actions notwithstanding the lack of any pending case or controversy.

*First*, a district court may enforce judgments and orders that it entered before the parties dismissed their case. If the court incorporated a settlement agreement into a judicial order *before* dismissal, therefore, the court may enforce that agreement even after the case is dismissed. If no such order exists at the time of dismissal, however, the court cannot later incorporate the settlement agreement into a new order because the dismissal divests it of jurisdiction over the merits of the original dispute.

*Second*, a district court may address certain "collateral issues" related to the protection of "the judicial process" rather than the merits of the case. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990). Such issues include civil sanctions, criminal contempt charges, awards of

costs or attorney's fees, and modifications of previously entered protective orders governing documents filed with the court.

*Third*, a district court has the inherent power to reopen a case where any of the grounds identified in Federal Rule of Civil Procedure 60(b) are satisfied. Of particular significance here, Rule 60(b)(1) permits the reopening of a case on grounds of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and would therefore likely enable reopening a case in which a class-action defendant and the named plaintiffs engaged in confidential settlement negotiations and then filed a Rule 41(a)(1) dismissal without any advance notice to absent members of the putative class.

**C.** The district court correctly applied those principles. When Allen and Webb dismissed their case, the district court's jurisdiction over that case ended because it no longer had before it any live Article III case or controversy. Curlee's subsequent motion did not come within any of the recognized exceptions. She did not seek enforcement of any pre-dismissal order. She did not ask the Court to address collateral issues like sanctions, attorney's fees, or a protective order. And she did not seek reopening under Rule 60(b)—nor would such relief have been

appropriate, given that she was on notice of the likely dismissal months earlier but chose not to intervene.

**D.** Curlee's contrary arguments lack merit. She argues that this Court's statement in *Anago Franchising* that a Rule 41(a)(1) dismissal "divests the district court of jurisdiction," 677 F.3d at 1278, was mere dictum, but that argument fails to grapple with the full scope of the Court's decision there. She also argues that the Supreme Court's decision in *Waetzig* demonstrates that district courts retain jurisdiction over previously dismissed cases, but *Waetzig* simply addressed the district courts' inherent power to reopen cases under Rule 60(b). It did not suggest that courts retain post-dismissal plenary jurisdiction to take all actions that they could have taken while a case remained pending; to the contrary, *Waetzig* made clear that courts can take such actions only after first addressing the "antecedent" question of whether to reopen under Rule 60(b). 145 S. Ct. at 695. Because Curlee could not satisfy Rule 60(b)'s requirements, *Waetzig* undermines her appeal rather than supporting it.

Curlee separately argues that a Rule 41(a)(1) dismissal cannot divest a court of jurisdiction because the Federal Rules of Civil Procedure are not designed to expand or contract jurisdiction. But Rule 41(a)(1)

simply provides a means of determining when a case or controversy has ended and thereby enables courts to apply Article III's constitutional limits—much like Rule 6(a) enables courts to determine whether a party has met the jurisdictional time limit on a notice of appeal.

Curlee's remaining arguments are likewise flawed. Nearly all of the intervention cases on which she relies either involved materially different circumstances (such as intervention while a case remained pending) or failed to address jurisdictional questions. And while she does identify a small handful of out-of-circuit decisions that have embraced her position, those decisions have been sharply criticized as inconsistent with *Anago Franchising* and the vast majority of other circuit precedent. Particularly following the Supreme Court's recent clarification of the role of Rule 60(b), they provide no persuasive justification for departing from this Court's settled precedents.

**II.** This Court also invited the parties to briefly address whether the Rule 41(a)(1)(A)(ii) stipulation was effective even though it was not explicitly signed by AT&T Services. As the parties agreed during Curlee's last appeal, it was. A signature from AT&T Services was not necessary because AT&T Services never "appeared" in the case within the meaning

of Rule 41(a)(1)(A)(ii), instead participating only to contest personal jurisdiction. Moreover, even if its signature had been required, the attorney who signed the stipulation on behalf of AT&T also represented AT&T Services.

## ARGUMENT

## I.     The district court lacked jurisdiction to grant intervention into a case that had already been voluntarily dismissed.

The district court correctly determined that its jurisdiction over Allen and Webb's suit ended when they voluntarily dismissed all of their claims. Accordingly, while it would have had jurisdiction to address Curlee's claims in a *new* case, it had no continuing jurisdiction to grant intervention into a previously closed case unless and until that case was reopened under Rule 60(b). Because Curlee did not seek reopening under Rule 60(b)—and could not have established that reopening was warranted in any event—the court properly dismissed her complaint-in-intervention.

### A.     Generally, a plaintiff's voluntary dismissal of all claims extinguishes a district court's jurisdiction.

"Federal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Nor do they "exercise general legal oversight . . . of private

entities." *Id.* at 423–24. Rather, "[f]ederal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994), authorized to exercise the judicial power only when "adjudicating actual 'cases' and 'controversies'" in the manner and on the subjects that Congress has directed. *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019).

Because "courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy," the Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (citations omitted). If at any point a "dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights,'" the court ceases to have jurisdiction over that dispute. *Id.* at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)); *see, e.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))).

This appeal concerns one specific way in which a justiciable case or controversy—and thus the federal courts' jurisdiction—can come to an end. Under Rule 41(a)(1)(A)(ii), a "plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). This Court has recognized that "a stipulation filed pursuant to that subsection is self-executing and dismisses the case upon its becoming effective." *Anago Franchising, Inc. v. Shaz*, 677 F.3d 1272, 1278 (11th Cir. 2012). And the Court has further held that the consequence of that dismissal is jurisdictional: "[U]nless [the stipulation] explicitly conditions its effectiveness on a subsequent occurrence," a district court "may not take action after the stipulation becomes effective because the stipulation dismisses the case and divests the district court of jurisdiction." *Id.*; *see id.* at 1279 ("A district court loses all power over determinations of the merits of a case when it is voluntarily dismissed."); *see also Estate of West v. Smith*, 9 F.4th 1361, 1366–67 (11th Cir. 2021) (stating that "fil[ing] a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii) . . . immediately divested the district court of jurisdiction over the case").

That understanding flows not from anything in Rule 41(a)(1)(A) itself, but rather from the foundational Article III principles discussed above. Where the parties to a case have reached a settlement and filed a voluntary stipulation formally dismissing all claims, their dispute is "no longer embedded in any actual controversy about the plaintiffs' particular legal rights" of the sort that is "fit for federal-court adjudication." *Already, LLC*, 568 U.S. at 91 (citation and internal quotation marks omitted). And because a federal court's jurisdiction depends on the existence of a judicially cognizable case or controversy "at all stages," *Arizonans for Official English*, 520 U.S. at 67 (citation omitted), that jurisdiction ends as soon as the case or controversy before it ends. As Judge Easterbrook put it, "[y]ou can't have a suit without a plaintiff. When the plaintiff packs up his portfolio and goes home, the case goes home with him. There is no longer a dispute for the court to decide. . . . [T]he absence of a plaintiff ends the court's power." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1078 (7th Cir. 1987).

Other courts of appeals therefore overwhelmingly agree with this Court's determination in *Anago Franchising* that when the parties file a Rule 41(a)(1)(A) stipulation dismissing all claims, the district court's

continued jurisdiction over their case automatically ends. *See, e.g.,* *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139 (2d Cir. 2004) ("Generally, . . . a plaintiff's filing in the district court of a stipulation of dismissal signed by all parties . . . divests the court of its jurisdiction over a case . . . ."); *State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 407 (3d Cir. 2016) ("Once the voluntary stipulation is filed, the action on the merits is at an end. 'Any action by the district court after the filing of the Stipulation of Dismissal can have no force or effect because the matter has already been dismissed.'") (citations omitted); *Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993, 995–96 (6th Cir. 1987) (Rule 41(a) "dismissal with prejudice terminated the district court's jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b) of the Federal Rules of Civil Procedure") (citation omitted); *Szabo Food Serv., Inc.*, 823 F.2d at 1078 ("[A] dismissal under Rule 41(a)(1)(i) strips a court of 'jurisdiction'. The dismissal terminates the case all by itself. There is nothing left to adjudicate."); *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("The jurisdictional effect of such a voluntary dismissal deprives the court of any power to adjudicate the withdrawn claim."); *Janssen v.*

*Harris*, 321 F.3d 998, 1000 (10th Cir. 2003) ("Once the notice of dismissal has been filed, the district court loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them . . . ."); *see also* 7 Arthur R. Miller, Fed. Prac. & Procedure § 2367 (3d ed. 2008) (explaining that a Rule 41(a) dismissal "leaves the situation as if the action never had been filed" and that "the action no longer is pending in the district court and no further proceedings in the action are proper").

## B.     Exceptions to the general rule are limited.

Although voluntary dismissal of a plaintiff's claims generally extinguishes the district court's jurisdiction, the Supreme Court and this Court have recognized three circumstances in which a district court can continue to exercise limited jurisdiction after the dismissal takes effect. This section addresses each of those exceptions in turn.

### 1.     *A district court can exercise jurisdiction that it expressly retains in a pre-dismissal order.*

First, a district court may exercise jurisdiction to enforce a settlement agreement between the parties after a Rule 41(a)(1)(A)(ii) stipulated dismissal if it enters an order expressly preserving that jurisdiction before the dismissal takes effect. *See Anago Franchising*, 677

F.3d at 1280 (citing *Kokkonen*, 511 U.S. at 381–82). That can occur in one of two ways: "either (1) the district court must issue the order retaining jurisdiction . . . prior to the filing of the stipulation, or (2) the parties must condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction." *Id.*

The Supreme Court explained the doctrinal basis for that exercise of continued jurisdiction in *Kokkonen*. Where "the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal," a post-dismissal "breach of the agreement would be a violation of the order" that the court can punish using its inherent power to "vindicate its authority" and "effectuate its decrees." *Kokkonen*, 511 U.S. at 380–81.

Importantly, however, that reasoning extends only to the enforcement of orders that a district court entered while a case was still properly before it; it does not give the court open-ended jurisdiction to enter new orders related to the merits of the original case. Accordingly, if the parties file an unconditional Rule 41(a)(1)(A)(ii) stipulated dismissal without the court having first acted to preserve its jurisdiction, the court cannot later re-establish jurisdiction by entering a post-

dismissal order. *See Anago Franchising*, 677 F.3d at 1280–81 ("The district court did not retain jurisdiction to enforce the Settlement Agreement here because the court issued no such order before the case was dismissed and the stipulation was not conditioned by the entry of an order retaining jurisdiction."); *Myers v. Mo & Co., Inc.*, 452 F. App'x 856, 858 (11th Cir. 2011) (holding that district court lacked post-dismissal jurisdiction over enforcement of a settlement agreement because it failed to expressly retain it).[3]

---

[3]     *See also, e.g.*, *Whittier v. Ocwen Loan Serv., L.L.C.*, 128 F.4th 724, 727 (5th Cir. 2025) (district court lacked post-dismissal jurisdiction over settlement agreement because it "fail[ed] to expressly retain jurisdiction"); *Hendrickson v. United States*, 791 F.3d 354, 356 (2d Cir. 2015) ("Because the district court's order of dismissal failed expressly to retain jurisdiction or to incorporate the terms of the [settlement] agreement, and because the district court's so-ordering of the settlement took place after the court had already relinquished jurisdiction over the case . . . the district court did not have jurisdiction over the enforcement of the settlement agreement"); *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000) ("the district court's failure expressly to retain jurisdiction over the Settlement Agreement . . . precludes it from enforcing unincorporated terms against the parties").

> 2. *A district court can exercise jurisdiction to address collateral matters that implicate the court's power to protect its proceedings and that arose while a case was still pending.*

Second, district courts also retain jurisdiction "after an action is no longer pending" to address certain "collateral issues" that arose before dismissal and that relate to the protection of "the judicial process" rather than any "judgment on the merits of an action." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990). The Supreme Court has recognized that such issues include "the imposition of a Rule 11 sanction," adjudication of a "criminal contempt charge," and the award of "costs" or "attorney's fees." *Id.* at 396. Courts of appeals, including this Court, have applied similar reasoning in recognizing "that a district court retains the power to modify or lift protective orders that it has entered" governing access to the court's "own records and files." *Gambale*, 377 F.3d at 140–41 (citations and internal quotation marks omitted); *see Commissioner, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1166 n.5 (11th Cir. 2019) ("[c]ourts retain jurisdiction to unseal judicial records and may allow parties to intervene well after judgment in a dispute" to seek unsealing); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in

effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed.").

Like the jurisdiction to enforce settlement agreements that are incorporated into pre-dismissal orders, however, a court's jurisdiction to address those collateral issues is not open-ended. Rather, it is limited to what is necessary "to protect [the court's] proceedings and vindicate its authority." *Kokkonen*, 511 U.S. at 380. For example, while a district court can grant access to court records that it had sealed while a case was still pending, once "the underlying controversy [i]s no longer alive, 'the court simply lack[s] power to impose any new, affirmative requirements on the parties relating to discovery.'" *United Nuclear*, 905 F.2d at 1428 (citation omitted). Indeed, in *Anago Franchising*, this Court approvingly cited the Tenth Circuit's decision in *Smith v. Phillips*, 881 F.2d 902 (10th Cir. 1989), which held that after the parties have filed a Rule 41(a)(1) stipulation of dismissal, a district court lacks jurisdiction even to require the parties to file a copy of their settlement agreement with the court. *Id.* at 905 ("We find nothing in the law which gives the district court power to require parties not before the court to disclose documents not filed with

the court when there is no case before the court."); *see Anago Franchising*, 677 F.3d at 1275.

3.   *A district court retains jurisdiction to consider a motion to reopen a case under Rule 60(b).*

Finally, after a case is voluntarily dismissed under Rule 41(a)(1), district courts also retain jurisdiction to reopen the case under Rule 60. *See Kokkonen*, 511 U.S. at 378 (noting that some courts of appeals have held that "reopening of the dismissed suit by reason of breach of the [settlement] agreement that was the basis for dismissal . . . can be obtained under Federal Rule of Civil Procedure 60(b)(6)"). That exception, like the others discussed above, reflects a court's "inherent power and control over its own proceedings." James Wm. Moore & Elizabeth B. Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623, 684 (1946) (cited in Fed. R. Civ. P. 60(b) advisory committee's note (1946 Amendment)); *see id.* (even before adoption of Rule 60(b), courts had the "inherent" authority, "'in the exercise of their control over their own judgments, [to] open such judgments upon the application of any one adversely affected by the judgment upon sufficient reason, in the furtherance of justice'" (citation omitted)).

The Supreme Court addressed this last exception most recently in *Waetzig v. Halliburton Energy Services, Inc.*, 145 S. Ct. 690 (2025). There, the Court acknowledged that where a plaintiff's "dismissal under Rule 41(a) [has] terminated his case," "filing a new motion in the case" would ordinarily be "impossible." *Id.* at 694. But the Court held that a motion under Rule 60(b) is not subject to that limitation because its very purpose is to "relieve a party from such a dismissal and reopen the case" in certain enumerated circumstances. *Id.* at 700. For example, Rule 60(b)(1) allows a court to reopen a case on grounds of "mistake, inadvertence, surprise, or excusable neglect" if asked to do so within a year of the dismissal. Fed. R. Civ. P. 60(b)(1); *see* Fed. R. Civ. P. 60(c)(1). And Rule 60(b)(6) allows a court to grant relief at an even later date if it concludes that "'extraordinary circumstances' . . . justify reopening." *Kemp v. United States*, 596 U.S. 528, 533 (2022) (citation and some internal quotation marks omitted); *see BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025) (same).[4]

---

[4]  In holding that a Rule 41(a)(1) dismissal qualifies as a "final . . . proceeding" from which a court can grant relief under Rule 60(b), the Supreme Court made clear that Rule 60(b) uses the term "final" in a manner different from "statutes governing the jurisdiction of federal appellate courts," such as 28 U.S.C. § 1291. *Waetzig*, 145 S. Ct. at 698.

Once a district court grants a Rule 60(b) motion to reopen a case, the court generally re-obtains the jurisdiction that it had possessed while the case was previously pending. *See Waetzig*, 145 S. Ct. at 696–97. Rule 60(b) does not itself provide the court with *additional* jurisdiction, however, so questions sometimes arise about whether the court can take certain actions in the reopened case. *See id.* In *Waetzig*, for example, the parties disputed whether the district court, after reopening the case under Rule 60(b), would have jurisdiction to vacate an arbitral award that had been entered following the original proceedings. *Id.* But the Supreme Court explained that such questions could be addressed only if the district court first determined that Rule 60(b) relief was appropriate, because the Rule 60(b) "question is separate from, and antecedent to, the question whether the District Court could exercise jurisdiction" with respect to a particular motion after reopening is granted. *Id.* at 695; *see*

_____

Specifically, whereas a judgment is generally final for purposes of Section 1291 only if it "terminates the litigation between the parties *on the merits* of the case," *id.* at 697 (brackets, citation, and internal quotation marks omitted), a voluntary dismissal that does not resolve the merits is sufficiently final for purposes of Rule 60(b) "because it terminates the case," *id.* at 698. The Supreme Court's decision in *Waetzig* therefore does not conflict with this Court's earlier decision holding that Allen and Webb's voluntary dismissal of their case did not result in an appealable final judgment. *See Allen,* 104 F.4th at 217.

*id.* at 696 ("[T]he power, under Rule 60(b), to reopen [a] case in the first place . . . must be addressed before any subsequent jurisdictional question[] is considered."). As the Court put it in *BLOM Bank*, the required "order of operations" for "a party seeking to reopen [a] case" is to "first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before" asking the district court to take additional steps with its reacquired jurisdiction. 145 S. Ct. at 1619.

### C. The district court correctly dismissed Curlee's complaint-in-intervention because no exception to the general rule applies here.

The district court correctly determined—consistent with the views of most other courts to have addressed the question—that it lacked jurisdiction to grant intervention into a case that had already been voluntarily dismissed. *See* 3 App. 482–88.[5] After Allen and Webb filed

---

[5]      *See also, e.g.*, *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 547–48 (4th Cir. 1993) (following a Rule 41(a) stipulation of dismissal without prejudice, "the district court had no discretion to allow [proposed intervenor] to intervene in the defunct action" even though proposed intervenor "could possibly have initiated a new, independent civil action"); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) (court could not grant intervention after government voluntarily dismissed its own case because "there is no longer any action in which appellants can intervene"); *Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252, 2016 WL 4269093, at *1 (N.D. Cal. Aug. 15, 2016) ("Because this action automatically terminated upon the filing of the Rule 41(a)(1)(A)(ii)

the Rule 41(a)(1) stipulation and dismissed their claims, the district court no longer had before it any dispute "embedded in an[] actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC*, 568 U.S. at 91 (citation omitted). The court therefore could "not take action after the stipulation bec[ame] effective because the stipulation" had already "divest[ed] the district court of jurisdiction." *Anago Franchising*, 677 F.3d at 1278. While the court would have had jurisdiction to hear Curlee's claims in a *new* action, there was no pending action into which she could intervene at the time that she filed her motion.

---

notice, the Court lacks jurisdiction to adjudicate the Proposed Intervenors' Motion to Intervene," which was filed "for purposes of appealing the Court's denial of class certification"); *Homesite Ins. Co. of the Midwest v. Robards*, No. 13-cv-515, 2014 WL 359823, at *3 (E.D. Tenn. Feb. 3, 2014) ("the stipulation of dismissal signed by plaintiff and defendant, which was effective when filed . . . divested the Court of jurisdiction over this matter nine days before [proposed intervenors] sought to intervene"); *Reagan v. Fox Navigation, LLC*, No. 02-cv-627, 2005 WL 2001177, at *1 (D. Conn. Aug. 17, 2005) ("once the parties have filed a Rule 41(a)(1)[(A)](ii) stipulation of dismissal, there is no longer a pending case or controversy into which a non-party may intervene"); *GMAC Com. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 213 F.R.D. 150, 150–51 (S.D.N.Y. 2003) (denying motion to intervene because "there is no 'case or controversy' pending in light of the [stipulation of] dismissal"); *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 621 (D. Mass. 1988) ("Because the stipulations of dismissal were effective when filed, there is no action in which to intervene").

None of the exceptions discussed above supports a different result. Curlee does not contend that the Rule 41(a)(1) stipulation "explicitly condition[ed] its effectiveness on a subsequent occurrence" or that the district court entered any order before dismissal that acted to preserve ongoing jurisdiction. *Anago Franchising*, 677 F.3d at 1278. Nor did Curlee's motion address collateral matters arising from the earlier litigation that the court could address through its inherent power independent of any "judgment on the merits." *Cooter & Gell*, 496 U.S. at 396. Rather, Curlee sought to raise new merits issues (her own individual claims) and revisit others that the court had addressed before the earlier case was dismissed. And finally, Curlee made no attempt to show that she could satisfy the Rule 60(b) criteria for reopening, instead skipping over that "antecedent" question entirely. *Waetzig*, 145 S. Ct. at 695.

Curlee's failure to follow the "order of operations" that the Supreme Court has prescribed for reopening a case—"first satisfy[ing] Rule 60(b) on its own terms" before asking the district court to take further actions— was no mere technicality. *BLOM Bank*, 145 S. Ct. at 1619. Curlee herself cites "longstanding precedent" in this circuit (Br. 10) indicating that once the named plaintiffs in a class action have settled their individual claims

following the denial of class certification, "any members of the putative class who wish to intervene and file a notice of appeal of the denial of class certification *will first have to move the district court to open the judgment under Fed. R. Civ. P. 60(b)*." *Shores v. Sklar*, 885 F.2d 760, 765 n.3 (11th Cir. 1989) (Johnson, J., concurring) (emphasis added).[6] Curlee's choice not to do so likely reflected a recognition that, on the particular facts here, none of the grounds for Rule 60(b) relief is present.

As indicated above, Rule 60(b)(1) allows for reopening on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Relief under that provision might be available where a class-action defendant sought to surreptitiously "buy off" the named representatives by reaching a "confidential settlement" of their individual claims and then entering a Rule 41(a)(1)(A)(ii) stipulation without advance notice to the members of the putative class. *In re*

---

[6]     Rule 60(b) provides that a district court may grant relief to "a party or its legal representative." Fed. R. Civ. P. 60(b). This Court has explained that even if a litigant does not formally become (or remain) a "party," she can seek relief under Rule 60(b) if she was "in a position tantamount to that of a party" or if her "legal rights were . . . intimately bound up with the parties." *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1520 (11th Cir. 1987); *see Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 940 (6th Cir. 2013) ("courts have . . . allowed a nonparty to seek relief under Rule 60(b) where its interests were directly or strongly affected").

*Brewer*, 863 F.3d 861, 867, 870 (D.C. Cir. 2017) (internal quotation marks omitted). In such circumstances, absent class members could likely show that they failed to intervene before the case was dismissed only because of "inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), in that they assumed the named class representatives would continue to defend their interests and did not learn otherwise until the case was already closed.

Curlee can make no such claim here, however. As described above, absent members of the putative class were on notice no later than October 3, 2022 that the existing parties were exploring a settlement. *See* 1 Appx. 15; p. 6, *supra*. Subsequent entries on the public docket confirmed that negotiations were progressing and that a settlement resulting in "dismissal" was expected. 1 Appx. 16. Had Curlee (or any other member of the putative class) wished to pursue individual or class claims, she had more than three and a half months in which to do so before the case was finally dismissed on January 23, 2023. *See* 2 Appx. 389–91. Any concerns that might exist about defendants "buy[ing] off" class representatives with "confidential settlement[s]" in other cases, therefore, cannot excuse

Curlee's failure to seek pre-dismissal intervention in *this* case. *In re Brewer*, 863 F.3d at 867, 870 (internal quotation marks omitted).

Nor can Curlee invoke any of the other grounds for Rule 60(b) relief. She points to no "newly discovered evidence that" she could not have discovered "with reasonable diligence" before dismissal. Fed. R. Civ. P. 60(b)(2). She identifies no "fraud," "misrepresentation, or misconduct" in connection with the settlement of Allen and Webb's claims. Fed. R. Civ. P. 60(b)(3). And she cannot claim that any "'extraordinary circumstances' . . . justify reopening" under Rule 60(b)(6), *Kemp*, 596 U.S. at 533 (citation and some internal quotation marks omitted), particularly given that she had notice that the case was likely to be dismissed but chose not to intervene before the dismissal occurred.[7]

Accordingly, because the originally parties' voluntary "stipulation dismisse[d] the case and divest[ed] the district court of jurisdiction,"

---

[7] It is not clear that Rule 60(b)(4) and (5) apply to Rule 41(a)(1) stipulated dismissals at all, given that both require the existence of a final "judgment." Fed. R. Civ. P. 60(b)(4), (5); *see Waetzig*, 145 S. Ct. at 698 n.2 ("Because we hold that [Rule 41(a)(1) dismissals qualify as proceedings, we need not decide whether they qualify as judgments for purposes of Rule 60(b)."). In any event, Curlee could not establish any of the grounds for relief under those provisions, either.

*Anago Franchising*, 677 F. 3d at 1278, the district court correctly determined that it could not authorize Curlee's intervention.

### D.  Curlee's contrary arguments lack merit.

Curlee offers a number of contrary arguments, but none has merit. Most importantly, her attempt (Br. 22–23) to distinguish this Court's controlling decision in *Anago Franchising* fails to grapple with key parts of that decision. And even setting *Anago Franchising* aside, Curlee's arguments show at most that she could have filed a new suit or intervened in Allen and Webb's case while it was still ongoing; they do not explain how Curlee could intervene in a case that had already been voluntarily dismissed without first satisfying the Rule 60(b) criteria for reopening. While Curlee identifies a small handful of out-of-circuit decisions that allowed post-dismissal intervention without first addressing Rule 60(b), those decisions are unpersuasive in light of the Supreme Court's recent clarification about the mandatory "order of operations" for "a party seeking to reopen [a] case." *BLOM Bank*, 145 S. Ct. at 1619.

1. *Curlee's attempt to distinguish this Court's decision in* Anago Franchising *fails.*

As discussed above, the district court's jurisdictional determination correctly followed this Court's statement in *Anago Franchising* that "'[d]istrict courts need not and may not take action after [a] stipulation becomes effective because the stipulation dismisses the case and divests the district court of jurisdiction.'" 3 Appx. 486 (quoting *Anago Franchising*, 677 F.3d at 1278 (first brackets in original)); *see* pp. 32–37, *supra*. Curlee does not dispute that *Anago Franchising*'s statement of the governing rule, taken at face value, would preclude intervention here. But she nevertheless asserts that *Anago Franchising*'s statement "is dicta and thus not binding," Br. 23 n.4, based on her view that *Anago Franchising* was concerned only with district courts' ability to exercise jurisdiction over new disputes about the enforceability of settlement agreements, not their ability to exercise continued jurisdiction over the claims that were before them prior to dismissal. *See* Br. 22–23, 27–29.

Curlee's attempted distinction is impossible to reconcile with *Anago Franchising* itself. In *Anago Franchising*, the parties to a federal suit had negotiated a settlement under which the claims and counterclaims would all be dismissed with prejudice. *See* 677 F.3d at 1274. They then filed a

Rule 41(a)(1)(A)(ii) stipulation with the district court reciting "'that the Court shall reserve jurisdiction to enforce the settlement between the parties pursuant to the terms contained therein.'" *Id.* They also filed a separate "Joint Motion for Entry of Final Judgment by Consent." *Id.* The court signed the final judgment submitted by the parties several days later. *See id.* at 1275. When a dispute subsequently arose about alleged violations of the settlement agreement, the defendants asked the district court to compel the plaintiff to comply. *See id.* This Court held that the district court lacked jurisdiction to do so. *See id.* at 1279–80. It explained that the parties' mere agreement that the district court would continue to exercise jurisdiction after dismissal was insufficient without an actual court order to that effect. *See id.* at 1279–80. And critically, this Court held that while the district court could have entered such an order *before* the Rule 41(a)(1) stipulation was filed, it could not do so afterwards because "a court has no power to enter orders after a Rule 41(a)(1)(A)(ii) stipulation becomes effective." *Id.* at 1280. The Court therefore vacated the district court's entry of the "consent final judgment" submitted by the parties after the Rule 41(a)(1) dismissal on the ground that "the court was without power to issue" it. *Id.* at 1281 n.6.

That disposition shows that the "jurisdictional issue" in *Anago Franchising* was not limited, as Curlee maintains, to "the nature of the new dispute between the parties—that is, essentially a state-law contract dispute that had no place in federal court." Br. 22. If the only problem had been the nature of that new dispute, this Court would have had no grounds to vacate the district court's entry of a post-dismissal "final judgment" on the claims asserted in the original suit. *Anago Franchising*, 677 F.3d at 1281 n.6. Moreover, it would not have mattered whether the court entered an order incorporating the settlement agreement "before the stipulation becomes effective" or "after [the] Rule 41(a)(1)(A)(ii) stipulation becomes effective," *id.* at 1280, because (on Curlee's reasoning) the entry of that stipulation would have had no effect on the court's continued jurisdiction over the original claims and thus no effect on the court's jurisdiction to enter an order related to the resolution of those claims.

Instead, *Anago Franchising* holds more broadly that a Rule 41(a)(1)(A)(ii) stipulation does not simply prevent a district court from acquiring new jurisdiction, but "dismisses the case and *divests* the district court of jurisdiction" that it had while the case was ongoing. 677

F.3d at 1278 (emphasis added). That holding effectively resolves this case: Because the district court had already been divested of jurisdiction over Allen and Webb's case by the time Curlee sought to intervene, it lacked the power to add Curlee to that (already-closed) case. *See* 3 App. 487 ("As there was no longer a justiciable case or controversy between the parties, this Court was divested of jurisdiction to consider any subsequent claims asserted by Curlee following the voluntary dismissal.").

Contrary to Curlee's contentions (Br. 27–29), *Waetzig* does not suggest otherwise. As discussed above, *see* pp. 29–31, *supra*, *Waetzig* held that district courts have "the power, under Rule 60(b), to reopen" cases that have been voluntarily dismissed under Rule 41(a). 145 S. Ct. at 696. Curlee argues that if courts can consider Rule 60(b) motions after voluntary dismissals, that "confirms that Rule 41(a)(1)(A) does not strip jurisdiction." Br. 29. But the Supreme Court in *Waetzig* said just the opposite, explaining that "[a]fter a case is finally terminated, . . . a court no longer presides," and that a Rule 41(a)(1) dismissal "strips a court of its equitable power to revise its earlier rulings." 145 S. Ct. at 697. Indeed, the Court observed that Rule 60(b) is necessary precisely *because* the

Rule 41(a)(1) dismissal strips the district court of the broader power that it had while the case was still pending. *See id.* ("It is at that point that a court's power under Rule 60(b) kicks in, permitting the court to look back at the 'final' act in a case and provide relief from that act when appropriate."); *see also Hinsdale*, 823 F.2d at 995–96 (explaining that a Rule 41(a)(1) dismissal "terminate[s] the district court's jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)" (citation and internal quotation marks omitted)).

In the end, therefore, *Waetzig* just reinforces the conclusion that "any members of [a] putative class who wish to intervene and file a notice of appeal of the denial of class certification will first have to move the district court to open the judgment under Fed. R. Civ. P. 60(b)." *Shores*, 885 F.2d at 765 n.3 (Johnson, J., concurring); *see BLOM Bank*, 145 S. Ct. at 1621 ("It is Rule 60(b)'s standard—and *only* Rule 60(b)'s standard— that applies when a party seeks relief from [a] final judgment"). Because

Curlee did not do so, her intervention motion was correctly denied. *See* pp. 33–37, *supra.*[8]

> 2. *That the district court would have had subject-matter jurisdiction to hear Curlee's claims in a new suit does not establish that it retained jurisdiction over a previously dismissed suit brought by other plaintiffs.*

Curlee also argues (Br. 20) that because she has alleged a violation of a federal statute (the Pregnancy Discrimination Act), federal-question jurisdiction over her claims existed under 28 U.S.C. § 1331. But that simply means that the district court would have had jurisdiction to hear a new suit filed by Curlee; it does not mean that the court still had jurisdiction over the separate suit that Allen and Webb had already voluntarily dismissed. And again, *Anago Franchising* establishes otherwise, holding that Allen and Webb's "stipulation . . . divest[ed] the district court of jurisdiction" over their case. 677 F.3d at 1278.

---

[8] Even if the district court could have granted Curlee intervention without first considering her entitlement to Rule 60(b) relief, Curlee would have needed to establish a right to reopening under Rule 60(b) before she could file her new complaint-in-intervention. *See BLOM Bank*, 145 S. Ct. at 1620 (explaining that where a plaintiff seeks to file a new complaint in a case that has already been terminated, "satisfaction of Rule 60(b)(6) necessarily precedes any" decision about whether to allow the new complaint). For all the reasons discussed in the accompanying text and in Section I(C) above, Curlee could not do so.

Curlee objects (Br. 20–21) that giving such effect to a Rule 41(a)(1) dismissal would violate the principle that the Federal Rules of Civil Procedure themselves "do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82. But as discussed above, *see* pp. 20–21, *supra*, the jurisdictional significance of a Rule 41(a)(1) dismissal flows from the fundamental Article III principle that "an 'actual controversy' must exist . . . through 'all stages' of the litigation." *Already, LLC*, 568 U.S. at 90–91 (citation omitted). Rule 41(a)(1) simply provides a means of crystalizing when Article III's case-or-controversy requirement is no longer satisfied.

In that sense, Rule 41(a)(1) is similar to the provisions in Rule 6(a) about how to compute time periods specified by statute. Like Rule 41(a)(1), Rule 6(a) often has jurisdictional implications, such as when it establishes that an appeal deadline runs through a Monday rather than expiring on a Saturday. But this Court has held "that application of Rule 6(a)'s computational rules presents no offense to Rule 82's command that the Federal Rules of Civil Procedure neither limit nor expand district court jurisdiction" because Rule 6(a) just "provide[s] the court and the parties with a means of determining the beginning and end of a [period]

prescribed elsewhere in law." *American Canoe Ass'n, Inc. v. City of Attalla*, 363 F.3d 1085, 1088 (11th Cir. 2004) (citation omitted); *cf. Green v. Drug Enforcement Admin.*, 606 F.3d 1296, 1303 (11th Cir. 2010) (dismissing for lack of jurisdiction where losing party "took none of the steps outlined in Appellate Rule 4(a) to extend the time" for appeal). So, too, with application of Rule 41(a)(1): It does not expand or contract a district court's jurisdiction in its own right, but simply "provide[s] the court and the parties with a means of determining the . . . end of" the Article III case or controversy. *American Canoe Ass'n*, 363 F.3d at 1088.

### 3. Curlee cannot intervene into a case that has already been voluntarily terminated.

Relatedly, Curlee argues (Br. 30–34) that because she has standing to pursue her own claim, she need not demonstrate that any live controversy persisted in Allen and Webb's original case in order to intervene. The very function of intervention, however, is to allow a litigant to join an existing case rather than start a new one. *See, e.g.*, in•ter•vene, *Random House Dictionary of the English Language* 999 (2d ed. 1987) ("*Law.* To interpose and become a party to a suit pending between other parties."); intervention, *Black's Law Dictionary* (12th ed. 2024) ("The entry into a lawsuit by a third party who, despite not being

named a party to the action, has a personal stake in the outcome . . . ."). Thus, as the Fifth Circuit held nearly a century ago, "[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit." *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926); s*ee, e.g.*, *Houston General Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999) ("[I]t is well-settled law that 'intervention presupposes pendency of an action in a court of competent jurisdiction.'") (quoting *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974)). A litigant can no more intervene in a case that has already ended than she could intervene in a case that has yet to begin.

Curlee observes (Br. 33–34) that in *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989), this Court considered without objection a case in which the original plaintiff (Senator Chiles) lacked standing but a subsequent intervenor-plaintiff (Dade County) established standing in its own right. There, however, the intervention was granted while the case was still pending, before any determination about the original plaintiff's standing had been made. *See id.* at 1202. *Chiles* thus provides

no support for Curlee's attempt to intervene here in a suit that had already been voluntarily dismissed by the time she filed her motion.[9]

Curlee's reliance (Br. 30–31) on *Dillard v. Chilton County Commission*, 495 F.3d 1324 (11th Cir. 2007), is likewise misplaced. There, a pair of voters sought "to intervene in a long-pending case" to seek relief under Rule 60(b)(5) from a judicial consent decree that had governed elections in Chilton County for nearly two decades. *Id.* at 1327; *see id.* at 1328 (discussing request for "relief under Fed. R. Civ. P. 60(b)(5)"). This Court held that intervention was improper because the voters lacked standing to seek relief not requested by any of the original parties. *See id.* at 1339–40. Curlee nevertheless focuses (Br. 30) on the Court's indication that if the voters did have standing, they likely could have intervened to "continue [the] suit" by seeking Rule 60(b)(5) relief

_____

[9]     Moreover, the *Chiles* Court did not address the propriety of Dade County's intervention in light of Senator Chiles' lack of standing. On the contrary, it treated Dade County as one of the "original parties," with its discussion of intervention focused on other litigants who sought to join the case at a later stage. 865 F.2d at 1215; *see id.* at 1211–15. Even if *Chiles* were on all fours with this case, therefore, its "*sub silentio*" assumption that intervention had been proper would not dictate the outcome here. *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1231 (11th Cir. 2007) ("[I]t is well-established circuit law that 'we are not bound by a prior decision's *sub silentio* treatment of a jurisdictional question.'") (citation omitted).

even though the original parties were no longer adverse in any meaningful sense. *Chilton County*, 495 F.3d at 1330. But Curlee cannot "continue" Allen and Webb's case, because (unlike *Chilton County*) it was no longer pending when she filed her motion to intervene, and she has in any event made no attempt to establish any of the grounds for relief under Rule 60(b). *See* pp. 33–37, *supra*.

Curlee also relies on a handful of out-of-circuit decisions in which she contends that courts "held that granting a motion to intervene filed after the original parties' claims have been dismissed—including via Rule 41(a)(1)(A)—is consistent with Article III." Br. 31. Two of the cited cases do not fit that description at all. In *Adam Joseph Resources v. CNA Metals Limited*, 919 F.3d 856 (5th Cir. 2019), the intervenor (Brown Sims, a law firm) filed a Rule 60(b)(6) motion and moved to intervene while the case was "still pending." *Id.* at 864. The court found that because "the district court had subject matter jurisdiction to hear Brown Sims's claim, the settlement between [the original parties] did not moot the case." *Id.* at 864–65; *see id.* at 864 n.10 (noting concession "that the case was not formally moot at the time Brown Sims filed its Rule 60(b)(6) motion"). And in *State of Alaska v. Suburban Propane Gas Corp.*, 123

F.3d 1317 (9th Cir. 1997), the Ninth Circuit considered only the application of the Rule 24(b) permissive-intervention factors and the intervenor's interest in pursuing the class-certification issue, *see id.* at 1319–21, not the lack of an Article III case or controversy at the time of intervention.

The other three cases, meanwhile, are inconsistent with *Anago Franchising* and have been sharply criticized as "out of step with the vast majority of circuit precedent on the jurisdictional finality of Rule 41(a)(1) stipulated dismissals." *Odle v. Flores*, 899 F.3d 344, 353 (5th Cir. 2017) (Jones, J., joined by Jolly, Smith, Clement, and Owen, JJ., dissenting from denial of rehearing en banc) (explaining that the panel decision in *Odle*, as well as the Fifth Circuit's earlier decision in *Sommers v. Bank of America, N.A.*, 835 F.3d 509 (5th Cir. 2016), and the D.C. Circuit's decision in *In re Brewer*, 863 F.3d 861, are incompatible with *Anago Franchising* and most other appellate precedent).

Moreover, *In re Brewer* and *Sommers* both involved circumstances in which the intervening parties asserted surprise regarding the fact or terms of the stipulated dismissal and could likely have obtained relief under Rule 60(b)(1). *See In re Brewer*, 863 F.3d at 867 (explaining that

dismissal followed "confidential settlement negotiations"); Appellant's Br. at 3, *Sommers v. Bank of America, N.A.*, 2016 WL 1720180 (Apr. 28, 2016) (asserting that Mediated Settlement Agreement entered into by original parties improperly released claims held on behalf of the intervenor); pp. 33–37, *supra*. Now that the Supreme Court in *Waetzig* and *BLOM Bank* has clarified the correct "order of operations" that a plaintiff must follow to reopen such cases, *BLOM Bank*, 145 S. Ct. at 1619, they would likely be decided differently even in their own circuits. Those cases thus provide no sound basis for this Court to ignore *Anago Franchising* and the bedrock Article III principles it reflects.

### 4. *Allen and Webb retained no ongoing interest in class certification that could have kept their case live.*

Curlee separately argues that "even if the district court was correct that intervention requires a pending case or controversy," she can still intervene "[b]ecause the original plaintiffs maintain a 'case or controversy' due to their unresolved interest in class certification." Br. 34 (emphasis omitted); *see* Br. 34–37. Curlee forfeited that argument, however, by failing to assert it in the district court. *See Cita Trust Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1156 (11th Cir. 2018). Indeed, in Curlee's last appeal "she [affirmatively] conceded that Allen and Webb's

'settlement and voluntary dismissal of their individual claims . . . extinguished their ability to challenge the denial of class certification.'" *Allen*, 104 F.4th at 218 (citation omitted). Curlee never acknowledges that prior concession, let alone explains why she should not be held to it.

In any event, Curlee's current argument is clearly wrong. She principally relies (Br. 35–36) on *Love v. Turlington*, 733 F.2d 1562 (11th Cir. 1984), in which this Court held that a plaintiff who had settled her individual claim could still appeal the denial of class certification. *See id.* at 1565. In *Love*, though, the plaintiff expressly preserved her claim for class-wide relief when settling her individual claim. *See id.* at 1564 (noting that "as a condition of the settlement of Love's individual claim, the defendants agreed not to contest the appealability of the [class] certification order"). Allen and Webb did precisely the opposite: Following their unsuccessful Rule 23(f) petition, they voluntarily dismissed the entire "action" with prejudice. Fed. R. Civ. P. 41(a)(1)(A). By their own litigation conduct, they thus disclaimed any further interest in class certification—as Curlee previously conceded.

Curlee also invokes the Supreme Court's decisions in *Deposit Guaranty National Bank, Jackson, Mississippi v. Roper*, 445 U.S. 326

(1980), and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980). In both cases, though, the named plaintiffs' claims were dismissed "over their continued objections." *Roper*, 445 U.S. at 332; *see Geraghty*, 445 U.S. at 400 ("named plaintiffs whose claims are satisfied through entry of judgment *over their objections* may appeal the denial of a class certification ruling") (emphasis added). The facts in *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359 (11th Cir. 2021), were similar. *See id.* at 1370 n.6 ("[T]he named plaintiffs moved for default judgment against Centra Tech only because the district court ordered them to do so; they did not, for example, consent to a defendant's offer of judgment and waive their right to appeal."). Accordingly, none of those cases supports Curlee's argument that Allen and Webb somehow retained an interest in the class-certification issue even after they submitted a Rule 41(a)(1) stipulation voluntarily dismissing their suit.

5. *Curlee's remaining authorities ultimately provide no support for her position.*

Curlee closes her brief with an appeal to "[d]ecades of settled precedent on the rights of putative intervenors." Br. 37 (emphasis omitted). But as the sections above have explained, the district court's decision faithfully followed applicable precedent; it is Curlee's position

that is "out of step with the vast majority of circuit precedent." *Odle*, 899 F.3d at 353 (Jones, J., dissenting from denial of rehearing en banc). Unsurprisingly, therefore, all of the cases that Curlee cites in the closing pages of her brief (*see* Br. 37–41) involved materially different circumstances. None of them supports allowing intervention here.

To start, most of the cited cases involved judgments on the merits entered over the objection of one (or more) of the pre-existing parties. *See, e.g.*, *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022); *Bryant v. Yellen*, 447 U.S. 352, 365–66 (1980); *Marino v. Ortiz*, 484 U.S. 301, 303 (1988) (per curiam).[10] In those circumstances, there was no loss

---

[10] *See also United States v. US Stem Cell Clinic, LLC*, 987 F.3d 1021, 1023–24 (11th Cir. 2021) (explaining that motion to intervene was filed before defendants' notice of appeal, and that district court reserved decision on the motion to intervene until the appeal had concluded); *Meek v. Metropolitan Dade Cnty.*, 985 F.2d 1471, 1476 (11th Cir. 1993); *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 924 (9th Cir. 2016); *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 570 (7th Cir. 2009); *Ross v. Marshall*, 426 F.3d 745, 748 (5th Cir. 2005); *Smoke v. Norton*, 252 F.3d 468, 469 (D.C. Cir. 2001); *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1225 (6th Cir. 1984); *DeOtte v. State*, 20 F.4th 1055, 1063 (5th Cir. 2021); *cf. Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members" and therefore not immediately appealable under the collateral order doctrine); *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992) (government permitted to intervene where it filed motion to challenge qui tam relator's dismissal of claims against one defendant immediately after

of adversity between the pre-existing parties (and the federal courts' jurisdiction therefore remained live) until the time for appeal or rehearing expired—meaning there was no jurisdictional obstacle to intervention before then and no need to re-open the case. Here, by contrast, Curlee filed her motion to intervene after Allen and Webb had already "divest[ed] the district court of jurisdiction" by voluntarily dismissing their case. *Anago Franchising*, 677 F.3d at 1278.

Similarly, several of the cases on which Curlee relies involved settlements that had been effectively directed by district courts and implemented through judicial judgments rather than voluntary dismissals. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393 n.14 (1977) (explaining that characterization of original parties' resolution as a "settlement" was "slightly misleading" because the "agreement came only after the District Judge had granted motions by some plaintiffs for partial summary judgment"); *Fleming v. Citizens for Albemarle, Inc.*, 577 F.2d 236, 238 (4th Cir. 1978) (district court had effectively coerced county to settle by threatening to impose personal liability on individual county

---

entry of jury's verdict as to other defendant; dismissal order was incorporated into final order).

supervisors if they did not); *cf. McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1067 (5th Cir. 1970) ("[t]he jury was instructed to enter a verdict for McDonald in the amount of the settlement, and after verdict judgment was entered accordingly"). In those circumstances, the original parties remained free to seek appellate review (subject to non-jurisdictional waiver and forfeiture arguments), again preserving the federal courts' jurisdiction until the time for filing a notice of appeal had run.[11]

In other cases that Curlee cites, courts addressed motions to intervene filed before a settlement had been finalized or while the district court was continuing to enforce an injunction. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 261–62 (5th Cir. 1977) (describing ongoing settlement negotiations when motion to intervene was filed); *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 389–90 (7th Cir. 2019) (State's motion to intervene was timely under Rule 24 where it was filed within the time for appealing district court's entry of injunction barring enforcement of state law). That courts found intervention appropriate in

---

[11]    Indeed, if the settlement of the original plaintiffs' claims in *United Airlines* had resulted in voluntary dismissal rather than an appealable final judgment on the merits, then 28 U.S.C. § 1291 would have provided no basis for the intervenors' immediate appeal (as this Court's decision in Curlee's last appeal makes clear). *See Allen*, 104 F.4th at 216–18.

those circumstances has no bearing on the district court's jurisdiction to grant intervention after voluntary dismissal of Allen and Webb's suit here.

Other cases involved the exception for "collateral" issues over which district courts retain inherent power even after a particular case or controversy ends. *See Advance Loc. Media, LLC*, 918 F.3d at 1163, 1166 n.5 ("[c]ourts retain jurisdiction to unseal judicial records and may allow parties to intervene well after judgment in a dispute" in order to vindicate the right to unseal); *Ford v. City of Huntsville*, 242 F.3d 235, 238–41 (5th Cir. 2001) (per curiam) (allowing newspaper to intervene to seek vacatur of confidentiality order regarding terms of settlement). As discussed above, *see* pp. 33–34, Curlee does not and cannot invoke that exception, so those cases provide her no aid.

Finally, even if the cases in the closing section of Curlee's brief did not all arise in materially different circumstances, her reliance on those cases would still be unpersuasive for the additional reason that none of them actually addressed the jurisdictional question presently before this Court. *See* Br. 38–39 (acknowledging that "many of these cases focus on whether interventions are 'timely' under Rule 24"). Thus, as Judge

Jordan recognized during the last appeal in this case, any "intimat[ions]" that a person's in Curlee's position "would be entitled to intervene in a purported class action for the limited purpose of immediately appealing the denial of class certification" cannot be treated as controlling. *Allen*, 104 F.4th at 219 (Jordan, J., concurring). Instead, this Court should follow the jurisdictional determinations in *Anago Franchising* and the other Article III precedents discussed above to affirm the district court's well-considered decision here.

## II.    The January 2023 stipulation of dismissal was effective.

Following Curlee's submission of her opening brief, this Court entered an order suggesting that the parties also address, "as they deem necessary or appropriate," the question raised in the prior appeal about "whether the January 23, 2023, stipulation of voluntary dismissal was effective to dismiss Cynthia Allen's and Kristine Webb's claims against AT&T Mobility Services, LLC under [Rule] 41(a)(1)(A)(ii) even though it was not signed by AT&T Services, Inc." June 11, 2025 Order at 2.

As discussed above, pp. 10–11, *supra*, the parties agreed during the prior appeal that AT&T Services had never "appeared" as a "part[y]," Fed. R. Civ. P. 41(a)(1)(A)(ii), and that its signature was therefore not

needed to make the stipulation of voluntary dismissal effective. As Curlee explained, "[a] defendant may contest personal jurisdiction under Rule 12(b)(2) without appearing as a party in the action." Suppl. Appx. 121 (collecting cases). Here, AT&T Services "responded to the [original] complaint solely by contesting personal jurisdiction under Rule 12(b)(2)" and was voluntarily dismissed from the case in March 2019, such that it was not even named as a defendant in the Second Amended Complaint that was operative at the time the case was dismissed. *Id.* at 122. Accordingly, "AT&T Services never appeared as a party." *Id.* at 10. Because only the signatures of the "parties who have appeared" are required under Rule 41(a)(1)(A)(ii), there was no need for AT&T Services to sign the stipulation. *See id.*; *accord* Suppl. Appx. 82 (submission from AT&T agreeing that the January 2023 stipulation was effective because "AT&T Services never answered . . . but only appeared specially to seek dismissal due to lack of personal jurisdiction").

Finally, even if a signature from AT&T Services *had* been required, that requirement would have been met because the stipulation was signed by an attorney representing both AT&T and AT&T Services. *See* 2 Appx. 162 (listing signature of Kenneth Gage); 1 Appx. 4 (noting pro

hac vice admission of Kenneth Gage "on behalf of AT&T Mobility Services LLC" and "AT&T Services, Inc.").

## CONCLUSION

For the foregoing reasons, the district court's order of dismissal should be affirmed.

Dated: July 21, 2025                    Respectfully submitted,


                                        /s/ Benjamin W. Snyder
Kenneth W. Gage                         Benjamin W. Snyder
Kaveh Dabashi                             *Counsel of Record*
PAUL HASTINGS LLP                       PAUL HASTINGS LLP
200 Park Avenue                         2050 M Street NW
New York, New York 10166                Washington, DC 20036
(212) 318-6000                          (202) 551-1700


Counsel for Defendant-Appellee

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 12,777 words, excluding those parts exempted by Eleventh Circuit Local Rule 32-4.

This brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Benjamin W. Snyder
Benjamin W. Snyder