No. 24-13742

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CYNTHIA ALLEN,
*individually and on behalf of others similarly situated, et al.,*
*Plaintiffs,*

AMANDA CURLEE,
*Intervenor Plaintiff-Appellant,*

v.

AT&T MOBILITY SERVICES, LLC,
*Defendant-Appellee,*

AT&T SERVICES, INC.,
*Defendant.*

Appeal from the United States District Court
for the Northern District of Georgia

No. 1:18-cv-03730-WMR

## SUPPLEMENTAL APPENDIX

Kenneth W. Gage
Kaveh Dabashi
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000

Benjamin W. Snyder
*Counsel of Record*
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700

*Counsel for Defendant-Appellee*

# INDEX

| Tab | Description | Page |
|-----|-------------|------|
| 1 | Joint Stipulation of Dismissal of AT&T Services, Inc., dated March 1, 2019 (D. Ct. Dkt. 32) | 001 |
| 2 | AT&T Mobility Services LLC's Memorandum in Opposition to Plaintiff's Motion for Class Certification, dated March 31, 2021 (D. Ct. Dkt. 104) | 010 |
| 3 | Motion to Extend Time, dated January 19, 2023 (D. Ct. Dkt. 160) | 066 |
| 4 | Eleventh Circuit Court of Appeals' request for briefing on jurisdictional questions, dated March 15, 2023 (USCA11 Case 23-10572 Docs. 18-1 and 18-2) | 070 |
| 5 | AT&T's Response to Jurisdictional Questions, dated March 29, 2023 (USCA11 Case 23-10572 Doc. 22) | 072 |
| 6 | Amanda Curlee's Response to Jurisdictional Questions, dated March 29, 2023 (USCA11 Case 23-10572 Doc. 23) | 104 |
| 7 | Eleventh Circuit Court of Appeals' Order, dated April 1, 2024 (USCA11 Case 23-10572 Doc. 50) | 141 |
| 8 | AT&T's Response to Supplemental Jurisdictional Question, dated April 22, 2024 (USCA11 Case 23-10572 Doc. 51) | 144 |
| 9 | Amanda Curlee's Supplemental Brief on Jurisdiction, dated April 22, 2024 (USCA11 Case 23-10572 Doc. 52) | 164 |

# TAB 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CYNTHIA ALLEN,

      Plaintiff,

v.

AT&T MOBILITY SERVICES LLC a/k/a/
AT&T MOBILITY LLC and AT&T
SERVICES, INC.,

      Defendants.

Civil No. 1:18-cv-3730-WMR

## JOINT STIPULATION OF DISMISSAL OF AT&T SERVICES, INC.

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff Cynthia Allen, Defendant AT&T Mobility Services LLC, and Defendant AT&T Services, Inc., by and through the parties' respective counsel, jointly stipulate to the dismissal without prejudice of Plaintiff Allen's claims and causes of action against Defendant AT&T Services, Inc. in the above-styled case, in their entirety. The parties enter into this stipulation on the basis of the information contained in the revised Declaration of Heather Miller, dated February 28, 2019 and attached as Exhibit A.

AT&T Services, Inc. has filed neither an answer nor a motion for summary judgment, and voluntary dismissal pursuant to Federal Rule 41(a)(1)(A)(ii) is proper. Each party will bear her or its own attorneys' fees and costs.


Dated:  March 1, 2019                    Respectfully submitted,


/s/ Kalpana Kotagal                      /s/ Kenneth W. Gage
Joseph M. Sellers*                       Kenneth W. Gage*
Kalpana Kotagal*                         Paul Hastings LLP
Cohen Milstein Sellers & Toll PLLC       200 Park Avenue, 30th Floor
1100 New York Avenue, Suite 500          New York, New York 10166
Washington, DC 20005                     Tel: (212) 318-6046
Telephone: (202) 408-4600                kennethgage@paulhastings.com
Fax: (202) 408-4699
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com               Alex J. Maturi*
                                         Paul Hastings LLP
                                         71 S. Wacker Drive, Suite 4500
Lenora M. Lapidus*                       Chicago, Illinois 60606
Gillian L. Thomas*                       Tel: (312) 499-6000
American Civil Liberties Union           alexmaturi@paulhastings.com
Women's Rights Project
125 Broad Street, 18th Floor             Sheldon W. Snipe
New York, NY  10004                      AT&T Southwest Legal Dept.
Telephone: (212) 549-2500                675 Peachtree Street, NW, Suite 4300
llapidus@aclu.org                        Atlanta, Georgia, 30308
gthomas@aclu.org                         Tel: (404) 927-3516
                                         ss5526@att.com

Sean J. Young (Georgia Bar No.
790399)                                  **Counsel for AT&T Services, Inc. and**
American Civil Liberties Union           **AT&T Mobility Services LLC**
Foundation
of Georgia, Inc.                         *pro hac vice*
1100 Spring Street, Suite 640

2

Atlanta, GA 30309
Telephone: (678) 981-5295
syoung@acluga.org

***Counsel for Plaintiffs***

*pro hac vice

3

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1.C**

I hereby certify, pursuant to LR 5.1B and 7.1D of the Northern District of Georgia, that the foregoing *Joint Stipulation of Dismissal of AT&T Services, Inc.* complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

/s/ *Kenneth W. Gage*
Kenneth W. Gage (*pro hac vice*)

LEGAL_US_W # 97719096.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, I caused the foregoing *Notice of Joint Stipulation of Dismissal of AT&T Services, Inc.* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

 /s/ *Kenneth W. Gage*
Kenneth W. Gage (*pro hac vice*)

5

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| CYNTHIA ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:18-cv-03730-WMR |
| v. | ) | |
| | ) | |
| AT&T MOBILITY SERVICES LLC | ) | |
| a/k/a AT&T MOBILITY LLC and | ) | |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF HEATHER MILLER

I, Heather Miller, hereby declare as follows:

1.      This declaration is based on my personal knowledge, and I would be competent to testify to the following facts if called upon to do so.

2.      I am an employee of AT&T Mobility Services LLC ("AT&T Mobility"). My title is Associate Director for Attendance and Payroll. I have been in this position since November 2015.

3.      I reside and work in the state of Texas.

4.    Since November 2015, one of my primary responsibilities has been overseeing AT&T Mobility's Centralized Attendance Group (the "AT&T Mobility CAG").

5.    The AT&T Mobility CAG assigns points to AT&T Mobility employees pursuant to the AT&T Mobility Sales Attendance Guidance ("AT&T Mobility SAG") for unexcused absences, tardies, and early departures from work. The AT&T Mobility SAG applies only to employees of AT&T Mobility; it does not apply to employees of any other entity.

6.    During my entire time as Associate Director for Attendance and Payroll, all decisions about whether to impose or remove employees' points under the AT&T Mobility SAG have been made exclusively by the AT&T Mobility CAG. In other words, the AT&T Mobility SAG is administered exclusively by the AT&T Mobility CAG. Discipline imposed pursuant to the AT&T Mobility SAG is delivered to employees by their AT&T Mobility managers.

7.    There are 28 employees in the CAG, including supervisors. Of these, 19 reside in Texas, four reside in North Carolina, one resides in Florida, one resides in Missouri, one resides in Indiana, one resides in Montana, and one resides in Louisiana. None of the employees in the CAG resides or works in Georgia.

Suppl. App. 008

8.    Each of the 28 employees in the CAG is an employee of AT&T

Mobility.  None of the 28 employees in the CAG is an employee of AT&T

Services, Inc. or any other AT&T affiliated entity.

I have read this declaration, and pursuant to 28 U.S.C. § 1746, declare

under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: _Richardson_____Texas
      February _28_, 2019

_____

Heather Miller

Suppl. App. 009

# TAB 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| CYNTHIA ALLEN and KRISTINE WEBB, | |
| Plaintiffs, | |
| v. | Civil No. 1:18-cv-3730-WMR |
| AT&T MOBILITY SERVICES LLC a/k/a AT&T MOBILITY LLC, | |
| Defendant. | |

## DEFENDANT AT&T MOBILITY SERVICES LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................1

II.  STATEMENT OF THE FACTS ..................................................3

    A.  AT&T Mobility Fairly Manages Retail Employee Attendance
        With A Point System. ......................................................3

    B.  Pregnant Employees Are Treated The Same As Others. ...................6

    C.  The Centralized Attendance Group Tracks Attendance But
        Does Not Determine Employee Requests For Excuses. .....................8

    D.  AT&T Mobility Undisputedly Accommodates Pregnancy-
        Related Absences. ........................................................10

        1.  Pregnancy-Related Absences Are Excused Under FMLA. .....11

        2.  Pregnancy-Related Absences Are Excused Under
            AT&T's Short-Term Disability Benefits Plan. .......................15

        3.  Pregnancy-Related Absences Can Be Excused Under Job
            Accommodation. .......................................................19

        4.  AT&T Mobility Helps Retail Employees Navigate These
            Processes. ..............................................................22

    E.  Plaintiffs Fail to Show AT&T Treated Other Workers
        Differently. .............................................................24

III.  ARGUMENT ....................................................................25

    A.  Plaintiffs' Claims and Their Burden. ...................................25

    B.  The Requirements of Class Certification ...............................27

    C.  Plaintiffs Have Not Established Commonality. ...............................29

    D.  Plaintiffs Have Not Established Typicality. ...............................35

    E.  Plaintiffs Are Not Adequate Class Representatives. ........................36

    F.  Plaintiffs Do Not Meet Rule 23(b)(3)'s Requirements. .....................39

        1.  Individual Issues Predominate. ...................................39

        2.  A Class Proceeding Is Not Superior ...............................43

    G.  It Would Be Inequitable to Proceed Under Rule 23(c)(4). ...............45

Suppl. App. 011

IV.    CONCLUSION..................................................................................45

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ..............................................................44

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................40

*Andrews v. American Tel. & Tel. Co.*,
    95 F.3d 1014 (11th Cir. 1996), *abrogated in part on other grounds*
    *by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008).......................43

*Armstrong v. Flowers Hosp., Inc.*,
    33 F.3d 1308 (11th Cir. 1994) ..........................................................26

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
    321 F.R.D. 430 (N.D. Ga. 2017) ........................................................45

*Beard v. Kenan Transp. Co.*,
    No. 1:04-CV-2299-BBM, 2005 WL 8154710 (N.D. Ga. Nov. 23,
    2005) ..........................................................................................37

*Brown v. Electrolux Home Prods., Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ........................................................28

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978)..........................................................................40

*Crawford v. Carroll*,
    529 F.3d 961 (11th Cir. 2008) ..........................................................31

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579, 113 S. Ct. 2786 (1993)..................................................2

*Davis v. Town of Lake Park*,
    245 F.3d 1232 (11th Cir. 2001), *overruled on other grounds by*
    *Burlington N & Santa Fe Ry. Co.*, 548 U.S. 53 (2006) ......................................31

*Fitzpatrick v. General Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011) ........................................................39

*General Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................28

*Heaven v. Trust Co. Bank*,
    118 F.3d 735 (11th Cir. 1997) ..............................................28, 39, 45

*Hudson v. Delta Air Lines, Inc.*,
    90 F.3d 451 (11th Cir. 1996) ...........................................................27

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) .........................................................42

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ...................................................40, 43

*Landeros v. Pinnacle Recovery, Inc.*,
    692 F. App'x 608 (11th Cir. 2017) ...................................................28

*Little v. T-Mobile USA, Inc.*,
    691 F.3d 1302 (11th Cir. 2012) ........................................................28

*London v. Wal-Mart Stores, Inc.*,
    340 F.3d 1246 (11th Cir. 2003) ........................................................37

*Messner v. Northshore Univ. Healthsystem*,
    669 F.3d 802 (7th Cir. 2012) ...........................................................29

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ........................................................35

*Reid v. Lockheed Martin Aeronautics Co.*,
    205 F.R.D. 655 (N.D. Ga. 2001) ...............................................41, 43, 44

*Rutstein v. Avis Rent-A-Car Sys.*,
    211 F.3d 1228 (11th Cir. 2000) ........................................................40

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ...........................................................33

Suppl. App. 014

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ....................................................35, 40

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................28, 29, 35

*Young v. United Parcel Service, Inc.*,
  135 S. Ct. 1338 (2015).........................................................26, 27, 33

**Statutes**

42 U.S.C. § 1981a(c).....................................................................44

Family & Medical Leave Act, 29 U.S.C.A. § 2613(a) ............................12

Pregnancy Discrimination Act of 1978, 42 U.S. C § 2000e(k) ...............26

**Other Authorities**

Fed. R. Civ. P. 23(a)...................................................................28, 29

Fed. R. Civ. P. 23(b)(3).................................................................39

Pregnant Workers Fairness Act, H.R. 1065, 117th Congress..................27

## DEFENDANT'S EXHIBIT LIST

| Exhibit No. | Document | Bates Number |
|---|---|---|
| 1 | Excerpts from Kristine Webb iPhone Records | PLS000762 |
| 2 | Deposition transcript excerpts from Janice F. Madden, Ph.D. deposition ("Madden Dep.") | n/a |
| 3 | Deposition transcript excerpts from Cynthia Allen deposition ("Allen Dep.") | n/a |
| 4 | Deposition transcript excerpts from Heather Miller deposition ("Miller Dep.") | n/a |
| 5 | COR Centralized Attendance Updates (January 2014) ("COR Attendance Updates – Jan. 2014") | DEF0002844–51 |
| 6 | Letter from K. Gage to K. Kotagal dated Jan. 11, 2021 | n/a |
| 7 | Rebuttal Report of Janet R. Thornton, Ph.D. | n/a |
| 8 | Allen FMLA Letters | DEF0002596; DEF0002599; DEF0002602–03; DEF0002611 |
| 9 | FMLA Case Manager Training Syllabus ("CM Training Syllabus") | DEF0007885-86 |
| 10 | FMLA Case Manager Pregnancy Guidance ("Pregnancy Guidance") | DEF0007769–70 |
| 11 | FMLA Case Manager Non-Chronic Health Condition Guidance ("Non-Chronic Health Guidance") | DEF0007720 |
| 12 | Sample Approval Letter in the CALM Training Manual | DEF0007680 |
| 13 | Sample Pregnancy Letter in the CALM Training Manual | DEF0007677–78 |
| 14 | Sample Final Denial Letter in the CALM Training Manual | DEF0007695–96 |

| 15 | AT&T Mobility Disability Benefits Plan – 2014 Summary Plan Description ("Summary Plan Description") | DEF009057–105 |
|----|----|----|
| 16 | Integrated Disability Service Center Short Term Disability Step Process ("STD Step Process Guide") | SEDGWICK 000001–26 |
| 17 | Cynthia Allen IDSC File 1 | DEF0000350–518 |
| 18 | Deposition transcript excerpts from Anthony Graves deposition ("Graves Dep.") | n/a |
| 19 | Integrated Disability Service Center Job Accommodations Step Process ("JA Step Process Guide") | SEDGWICK 000077–127 |
| 20 | Kristine Webb IDSC File | DEF0007586-7612 |
| 21 | Defendant's Objections and Responses to Plaintiffs' Third Set of Interrogatories, dated July 2, 2020 | n/a |
| 22 | FMLA Case Manager Training Module ("CM Training Module") | DEF0007995–8024 |
| 23 | Deposition transcript excerpts from Stephanie Davis deposition ("Davis Dep.") | n/a |
| 24 | HROneStop Ticket, dated March 29, 2017 | DEF0001605 |
| 25 | Deposition transcript excerpts from Kristine Webb deposition ("Webb Dep.") | n/a |

## I.      Introduction

Plaintiffs' claims are quintessentially individual, and their Motion for Class Certification falls woefully short of the requirements under Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs rely on rhetoric rather than reality in asking this Court to certify a class. They ignore their own circumstances, disingenuously arguing that workers could not possibly know how to obtain excuses for pregnancy-related absences because the word pregnancy does not appear in the Sales Attendance Guidelines ("SAG").[1] *Both of them had such absences excused.* They ignore the wealth of data that show nearly all of the workers identified as having been pregnant *took advantage of the multiple excuses available under the SAG for pregnancy-related absences*. Plaintiffs present *no evidence* suggesting that non-pregnant workers similar in their inability to work were treated any differently than they were under the SAG, and their expert even says pregnant workers were *not more likely* to be terminated than others.

---

[1] *See, e.g.*, Def.'s Ex. 1 (a series of contemporaneous text messages from Plaintiff Kristine Webb that read: "I'm prego… I'll be missing so much work 🙊… FMLA up the asssssssss… Or accommodation, I'll talk to [my union steward] Cartier and figure it out"). Defendant's Exhibits are cited herein as "Def.'s Ex.__" and are filed concurrently herewith.

To the extent their expert says pregnant workers were disadvantaged in other ways, her opinions have no value. She is completely unfamiliar with Plaintiffs' own work histories and absence excuses,[2] and her results-oriented approach to scientific analysis is useless to the Court. Her opinions do not satisfy the basic requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and its progeny. As significant, when Plaintiffs' witness's proffered analysis of FMLA requests and attendance discipline are recreated, accounting for mistakes their witness concedes, the data show that pregnant workers are treated *more favorably* than other workers.

Fundamentally, Plaintiffs have not satisfied their burden under Rule 23. They have not demonstrated commonality or typicality, much less their adequacy as putative class representatives. Nor have they shown that common issues will predominate, or that a class action is the superior method for resolving this dispute. Discovery in this case has revealed that the issues presented by Plaintiffs' claims are individual, not class issues.

Therefore, for the reasons set forth herein, the Court should deny Plaintiffs' motion for class certification.

---

[2] Def.'s Ex. 2 (Madden Dep.) at 52:24–55:19.

Suppl. App. 019

## II.    Statement of the Facts

### A.    AT&T Mobility Fairly Manages Retail Employee Attendance With A Point System.

Attendance matters. Retail Employees' absences create a hardship for other employees and adversely impact customer service in company-owned retail stores.[3] AT&T Mobility ("AT&T") therefore expects dependability and punctuality from its tens of thousands of customer-facing employees. If scheduled for work, a Retail Employee is reasonably expected to be at work unless she has an acceptable excuse. And as described below, there are many possible acceptable excuses.

From 2011 to the present, AT&T has used variations on a point system to create appropriate and reasonable incentives for Retail Employees to report to work as scheduled. Generally, points are assigned for unexcused absences, late arrivals and early departures from work. A Retail Employee may be fired if she accrues a predetermined number of points set forth in the policy. During the Class Period, a Retail Employee only faced the possibility of termination if she accrued

---

[3] "Retail Employees" consist of the non-exempt, non-management, bargained-for employees who staff AT&T's company-owned retail stores across the United States. Since the putative class period began on April 26, 2017 (the "Class Period"), AT&T has employed more than 39,000 Retail Employees in Retail Sales Consultant and Sales Support Representative jobs across more than 2,300 U.S. retail stores.

eight or more points in a rolling 12-month period. Termination is not automatic, and the situation must be reviewed by multiple levels of management before termination occurs.[4] Attendance-related terminations are rare, however, and as Plaintiffs concede those terminations occur no more frequently for pregnant workers than for others.[5]

Plaintiffs' motion for class certification revolves around the three interim warnings, or steps of progressive discipline, that Retail Employees may receive as they accrue points but before they are faced with the possibility of termination. Those three steps are a Counseling Notice (given after four points), a Written Warning (given after five points), and a Final Written Warning (given after seven points).[6]

None of the three steps of discipline creates a permanent record, however. Points and steps of discipline both expire over time. During the Class Period, points expired after one year, and the steps of discipline expired once the

---

[4] Pls.' Ex. 10 (Progressive Discipline Policy) at DEF0004743.
[5] Pls.' Ex. 46 (Amended Supp. Madden Report) at 4 ("[P]regnant workers were not more likely [than non-pregnant workers or workers whose conditions were recognized by the SAG policy] to be recorded as involuntarily terminated"); Def.'s Ex. 2 (Madden Dep.) at 51:7-11, 283:14-23 (conceding that terminations among the relevant population are rare).
[6] Pls.' Ex. 3 (2015 SAG Policy), ¶ 11.

employee's point total fell below the threshold for that step.[7] For example, if a Retail Employee had received a Counseling Notice for having four points and one of those points expires, her next unexcused absence will lead at most to another Counseling, not a Written Warning. Thus, only employees with persistent attendance problems progress through the three steps towards possible termination.

Importantly, AT&T policy accounts for ways that life events may unexpectedly impact employee attendance, *including pregnancy*. As described below in section II.D., Company policies and benefit plans provide "protection" (aka "excuses") for absences, including pregnancy-related absences. The requirements of those policies and benefit plans apply equally to pregnant and non-pregnant employees. So points and discipline are *not* a foregone conclusion if a Retail Employee has pregnancy-related absences, as Plaintiffs incorrectly suggest. In fact, the evidence shows that pregnancy-related absences *are regularly and routinely excused.* Moreover, whether an absence is excused as pregnancy-related is not determined according to AT&T's attendance policy, but rather according to these other Company policies and benefit plans.

---

[7] *Id*. ("Each attendance occurrence and the associated point value will expire after 12 months of active employment following the attendance occurrence… If one or more points expire and no additional points are received, the current step of discipline deactivates…").

5

**B.    Pregnant Employees Are Treated The Same As Others.**

Effective May 1, 2015, AT&T adopted the Sales Attendance Guidelines ("SAG") on which Plaintiffs base their claims. Among other things, the SAG specifies ways in which Retail Employees may be excused for not coming to work as scheduled. It created new point thresholds for discipline, and it changed the way steps of discipline expire. The SAG applies equally to pregnant and non-pregnant employees.

The SAG identifies thirteen ways an absence may be excused. Whether an absence qualifies for excuse varies, depending upon the form of protection the Retail Employee seeks. Who makes that determination and how it is made also vary, depending upon the excuse sought by the Retail Employee. Points are assigned if no excuse is pursued by the Retail Employee, or if the excuse is denied.

All of the thirteen identified absence excuses are available to pregnant and non-pregnant employees, notwithstanding that the SAG does not mention pregnancy, cancer, back surgery, or any other particular condition that may render an employee unable to work. The list accounts for various ways in which life can affect a Retail Employee's ability to show up to work. For example, it accounts for external factors, including Jury Duty, Court Subpoena, Qualified Bereavement, and Military Leave. All of those account for circumstances when certain civic, family,

6

and military obligations intrude. According to the SAG, and for obvious reasons, the Company may require supporting documentation to validate these excuses.[8]

The list also accounts for circumstances when a Retail Employee's own health, *whatever the condition*, affects her ability to come to work; those are Approved Short-Term Disability, Approved Job Accommodations, and Federal/State/Municipal mandated leaves (*i.e.*, FMLA, ADAAA, etc.), among others.[9] These policies and benefit plans are agnostic to health condition. So, Retail Employees with child, with cancer, with multiple sclerosis, or with any other health condition who are unable to work as scheduled because of those conditions can have their absences excused, provided they follow the applicable process. There is no evidence that the requirements for obtaining these excuses are different for pregnant employees than they are for others similarly unable to come to work.[10]

---

[8] For other obvious reasons, AT&T Mobility "has no paperwork requirement" for "*Company Mandated* Time Off." Plaintiffs' Memorandum in Support of Motion for Class Certification (Dkt # 85-1) ("Pls.' Mem.") at 20.

[9] Retail Employees are not limited to these three and may also use Vacation or seek an approved Leave of Absence for circumstances caused by their own health condition.

[10] *See also* Def.'s Ex. 3 (Allen Dep.) at 20:25–23:11 (conceding that the rules were not applied differently to her).

C.    **The Centralized Attendance Group Tracks Attendance But Does Not Determine Employee Requests For Excuses.**

Starting in 2014, AT&T centralized attendance management with the Centralized Attendance Group ("CAG").[11] Since then, the CAG has been responsible for tracking point and attendance data for Retail Employees.

The CAG relieved local store management of the responsibility for tracking this information, streamlined the accounting of attendance points, and ensured the point system is fairly and consistently administered.[12] It also created a new resource for Retail Employees; Attendance Analysts working in the CAG are available to offer advice on the options available to protect absences under Company policies and benefit plans, so the Retail Employee can avoid accruing points.[13] The CAG does not, however, make determinations regarding excuses for absences under Company policies or benefit plans. Those determinations are made by other groups, as described in section II.D., below.

Attendance Analysts in the CAG ensure a timely and accurate flow of information across different workflow systems that might bear on an employee's

---

[11] Def.'s Ex. 4 (Miller Dep.) at 237:6–9, 247:9–248:15 (explaining that the CAG was first piloted in 2013 and then put into nationwide operation in 2014).
[12] Def.'s Ex. 4 (Miller Dep.) at 69:12–70:15, 88:19–89:5, 128:3–12. *See also* Def.'s Ex. 5 (COR Attendance Updates – Jan. 2014) at DEF0002845.
[13] *See* Pls.' Ex. 3 (2015 SAG Policy), ¶ 11.

8

attendance record.[14] They review a daily "Pending Report," which identifies employees who were not at work as scheduled, and contact local management to confirm that the employee in fact was absent.[15] Attendance Analysts in the CAG also review reports that reflect FMLA, Short-Term Disability Benefit and Job Accommodation requests for time away from work. If the Analyst sees an unexcused absence date for which such a request is pending, the Analyst updates that record in the applicable system to reflect the pending request. That absence date then remains in a pending status and no point is accrued until the appropriate team reaches a determination on the request. Once that happens, the Analyst updates the attendance record to reflect the determination.

Analysts also receive a daily "Mismatch Report."[16] This report lists Retail Employees whose current level of discipline (as recorded in the discipline management system, known as myCoach) does not match the level of discipline indicated under the SAG (according to the employee's then-current point total

---

[14] AT&T's attendance and discipline management systems are "live" workflow management systems. As such, they are designed to provide their users with a dynamic, real-time view into the then-current state of affairs. They are not designed to maintain an historical record of the fluctuation of employee point totals over time.

[15] Def.'s Ex. 4 (Miller Dep.) at 353:2–20.

[16] Def.'s Ex. 4 (Miller Dep.) at 178:14–182:6.

shown in the system known as myWorkLife).[17] Analysts notify local store managers of the discrepancy and recommend that different discipline be administered.[18] Management then decides whether to approve or deny that recommendation, and if approved, when to deliver the next step of discipline to the Retail Employee.[19]

### D.    AT&T Mobility Undisputedly Accommodates Pregnancy-Related Absences.

Pregnancy *only sometimes* prevents employees from coming to work as scheduled. The 2,168 "ever pregnant" Retail Employees identified by Plaintiffs' expert, on average, reported to work approximately 94% of the time they were

---

[17] Plaintiffs' expert's criticism that AT&T does not retain data on accumulated point totals (to allow an expert in litigation to see point values as of specific dates) is grossly misleading. *See* Pls.' Ex. 23 (Madden Report) at 7. AT&T retains historical point transaction data, which it provided to Plaintiffs. In the ordinary course of business, AT&T displays accumulated point totals in real-time via its myWorkLife application. Because myWorkLife is a workflow system, it was designed to flex as an employee's point total changes over time. "Static" records of "historic" point totals are neither created nor stored. But this is a matter of design, not neglect. *See also* Def.'s Ex. 6 (Jan. 11, 2021 letter from K. Gage to K. Kotagal) (explaining same).

[18] As discussed in section II.A., this recommendation could be either to escalate or deescalate the employee's current level of discipline, consistent with the point thresholds set forth in the SAG.

[19] Depending on the level of discipline, multiple levels of approval by management might be necessary before discipline can be administered to a Retail Employee. *See* Pls.' Ex. 10 (Progressive Discipline Policy) at DEF0004743; Def.'s Ex. 4 (Miller Dep.) at 180:10–181:18, 301:20–302:16.

scheduled.[20] Plaintiffs, too, regularly attended work during their pregnancies. The data show that Ms. Allen and Ms. Webb, respectively, reported to work as scheduled approximately 93% and 97% of the time.[21]

So the issue presented by Plaintiffs' claims and their motion for class certification is whether AT&T treated them differently than others similar in their inability to work *when pregnancy caused them to be absent*. The evidence undisputedly demonstrates that AT&T excused Plaintiffs' pregnancy-related absences. The evidence also undisputedly shows that over 96% of the "ever-pregnant" workers identified by Plaintiffs' expert had some form of approved absence identified in the SAG after becoming pregnant.[22] Plaintiffs' Motion for Class Certification completely ignores this evidence, *not to mention the reality that whether a health condition causes an absence is quintessentially an individualized question*.

### 1. Pregnancy-Related Absences Are Excused Under FMLA.

Retail Employees may use FMLA to excuse health-related absences under the SAG. Indeed, both Plaintiffs took advantage of FMLA for pregnancy-related

---

[20] Def.'s Ex. 7 (Thornton Report), ¶ 27.
[21] Def.'s Ex. 7 (Thornton Report), ¶ 27.
[22] Def.'s Ex. 7 (Thornton Report), ¶ 25, Figure 1.

absences. Ms. Allen had 35 pregnancy-related absence dates excused under the SAG due to an approved FMLA Leave; Ms. Webb had two.

"Eligible" Retail Employees may take an FMLA leave of absence ("FMLA Leave") for certain "qualifying events" such as "for a serious health condition that has been certified by a healthcare provider."[23] Under AT&T policy, a "serious health condition" expressly includes "any period of incapacity due to pregnancy and for prenatal care."[24] FMLA Leave can be taken intermittently and for multiple or single day absences, including absences of less than one day. Again, both Plaintiffs secured intermittent FMLA Leave during their pregnancies—with Ms. Webb even obtaining an approved FMLA Leave for an absence of less than three hours.

Retail Employees (pregnant and non-pregnant employees alike) are "eligible" for FMLA Leave once they have attained at least 12 months of service

---

[23] Pls.' Ex. 27 (AT&T's FMLA Policy) at DEF0002067. *See also* Family & Medical Leave Act, 29 U.S.C.A. § 2613(a) ("An employer may require that a request for leave…be supported by a certification issued by the health care provider of the eligible employee… The employee shall provide, in a timely manner, a copy of such certification to the employer."). AT&T also permits family and medical leave as required by state or local law. Given the vast patchwork of leave laws available in the United States, and the fact that state/local leave runs concurrently with federal leave under AT&T policy, the remaining discussion will focus for simplicity on only federal "FMLA Leave."

[24] Pls.' Ex. 27 (AT&T's FMLA Policy) at DEF0002078–79.

and worked 1,250 hours in the 12-month period immediately preceding the absence.[25] The amount of FMLA available under federal law is limited to 12 workweeks of Leave in a 12-month period.[26] Both Ms. Allen and Ms. Webb were FMLA eligible from the moment their pregnancies began (in March 2016 and January 2017, respectively).

Retail Employees must take three steps to initiate a request for FMLA Leave: (1) submit a timely request for leave through AT&T's leave of absence system; (2) contact their health care provider(s) and obtain a completed Certification of Health Care Provider form ("Certification") within twenty days of the request; and (3) respond to any status letters from the Company's FMLA Team.[27] Once the leave request is initiated, the FMLA Team reviews the submitted documentation and determines whether to approve it. Where Plaintiffs completed all three steps, AT&T granted their requests. Plaintiffs had ample opportunity to demonstrate that, on other days, they were unable to report to work due to pregnancy. They failed to do so and therefore received points for those other absences.[28]

_____

[25] *Id.*
[26] *Id.*
[27] *Id.* at DEF0002072–76.
[28] *See, e.g.*, Def.'s Ex. 8 (FMLA letters requesting but never receiving medical documentation from Ms. Allen regarding the reason for her July 16, 2016 absence).

All requests for FMLA Leave are processed by Case Managers on the

FMLA Operations Team ("FMLA Team"). Case Managers receive extensive

training on FMLA regulations, including how to evaluate requests related to

pregnancy.[29] For example, if the Certification states that the employee is pregnant

and will need to be seen for prenatal appointments, Case Managers are instructed

to accept that Certification as sufficient verification for *all* absences due to a

prenatal appointment, up to a total of 4.0 hours per appointment.[30] Case Managers

are similarly advised to "[a]pprove *any* absence that is 4 hours or less *regardless if

it is for illness and/or treatment* provided there is a [Certification] on file for

pregnancy."[31] For absences lasting more than four hours, employees must submit

additional information to support the alleged period of incapacity.[32] Consistent

---

*See also* Def.'s Ex. 2 (Madden Dep.) at 222:19–223:6 (conceding that the
documentation requirement makes sense).

[29] *See* Def.'s Ex. 9 (CM Training Syllabus); Def.'s Ex. 10 (Pregnancy Guidance).

[30] Def.'s Ex. 10 (Pregnancy Guidance).

[31] *Id.* (emphasis added).

[32] *Id.* This same standard of "proof" applies to employees with other conditions,
such as a non-chronic medical condition like cancer. As with pregnancy, the
FMLA Team is trained to assume that *any* absence during a confirmed period of
incapacity due to a condition such as cancer is related to treatment for that
condition, up to a maximum of four hours per day (at which point further
documentation is needed, to show either illness or treatment). *See* Def.'s Ex. 11
(Non-Chronic Health Guidance).

with these procedures, neither Ms. Webb nor Ms. Allen was penalized for an absence during pregnancy of less than four hours.

If the Certification provided to the FMLA Team is complete and provides sufficient evidence of the medical condition claimed, the Case Manager approves the request.[33] If the Certification is incomplete (*e.g.*, missing pages) or insufficient (*e.g.*, does not indicate that the employee was incapacitated on the date(s) for which she is requesting FMLA), the Case Manager informs the employee that further action is required.[34] Failure by the employee to provide this additional information by the indicated due date will result in a final denial.[35] Extensions are routinely granted—the employee need only ask. As discussed in section II.C., information related to the FMLA Team's final determination is fed to the CAG by way of an automated, recurring data feed.

### 2. Pregnancy-Related Absences Are Excused Under AT&T's Short-Term Disability Benefits Plan.

Retail Employees may also use the Company's disability benefits plan to excuse extended health-related absences under the SAG. In fact, the FMLA Team *encourages* employees to apply for disability benefits if they requested FMLA but

---

[33] *See* Def.'s Ex. 12 (Sample Approval Letter).
[34] *See* Def.'s Ex. 13 (Sample Pregnancy Letter).
[35] *See* Def.'s Ex. 14 (Sample Final Denial Letter).

were denied.[36] As shown below, pregnancy-related absences were excused this way for Ms. Allen.

Under the disability benefits plan, eligible Retail Employees may request up to 26 weeks of protected time off for a qualifying disability.[37] A Retail Employee who is "unable to perform the duties of [her job] due to illness (*including pregnancy*)" meets the plan's definition of disability.[38] Claims for short-term disability ("STD") benefits under the Company's disability benefits plan are administered by a third party through a group known as the Integrated Disability Service Center ("IDSC").[39]

To initiate and secure STD benefits under the Company's disability plan, Retail Employees must complete two steps. The Retail Employee must contact the

---

[36] The reverse is also true. Employees whose requests for short-term disability benefits are denied are automatically considered for an FMLA Leave, and encouraged to apply for a job accommodation or Company Leave of Absence. Plf.'s Ex. 32 (Disability Benefits Guide) at DEF0001805; Def.'s Ex. 14 (Sample Final Denial Letter). *See also* Def.'s Ex. 4 (Miller Dep.) at 441:3–21 ("[W]e try to give every opportunity…to the employee, about what options they have…if they're not eligible for FMLA, then, hey, file for a job accommodation. If the job accommodation didn't work, okay, let's go the route of a leave of absence…").
[37] *See* Def.'s Ex. 15 (Summary Plan Description) at DEF0009062–66.
[38] *Id.* at DEF0009062 (emphasis added).
[39] Pls.' Ex. 32 (Disability Benefits Guide) at DEF0001804. Note that the third party who manages the IDSC (Sedgwick Claims Management Services, Inc.) is not a party to this litigation.

16

IDSC within sixty days of her first absence to request that a claim be opened.[40] Once a claim is opened, the Retail Employee must provide the IDSC with medical evidence of a disability, as defined by the benefit plan, within the required timeframe.[41] Once again, evidence that a Retail Employee is "unable to perform the duties of [her job] *due to... pregnancy*" would satisfy this second requirement. Thus, the Retail Employee must show the IDSC that the absence is pregnancy-related.

Once an STD claim is opened, it is assigned to an IDSC Disability Specialist for review and determination. IDSC Specialists follow a relatively standard set of steps before reaching their determination. First, the Specialist determines if the employee is entitled to plan benefits.[42] Next, the Specialist performs a medical review, whereby she determines if the medical documentation provided by the employee's health care provider is relevant.[43] To be relevant, the document must include at minimum the name of a medical provider, the employee's medical diagnoses, and the expected date(s) "off work."[44]

---

[40] *Id.* (explaining that employees may contact the IDSC via a toll-free number, Monday through Friday).
[41] *Id*.
[42] Def.'s Ex. 16 (STD Step Process Guide) at SEDGWICK 000004.
[43] *Id.* at SEDGWICK 000011.
[44] *Id*.

Where Ms. Allen completed this two-step process, and showed that her absence was pregnancy-related, the IDSC approved her claim for benefits and her absence was excused from attendance discipline. For example, after missing more than a week of work due to complications with her 2014 pregnancy, Ms. Allen contacted the IDSC and applied for STD benefits. Ms. Allen followed the IDSC's instructions and submitted "copies of [her] medical records, specifically regarding the days of this period of absence."[45] Upon receipt and review of these records, the IDSC approved her request for STD benefits and the absences were excused.[46]

In 2016, however, Ms. Allen was denied an STD excuse for absences. She failed to appear for work as scheduled and then failed show that those absences were pregnancy-related. Ms. Allen missed several days of work in April/May 2016. Ms. Allen's medical records merely confirmed that, as of June 2016, she was approximately three months pregnant.[47] But they did not provide any explanation as to *how* Ms. Allen's pregnancy had rendered her unable to perform her job duties

---

[45] Def.'s Ex. 17 (Allen IDSC File 1) at DEF00000352.
[46] *Id.* at DEF00000372.
[47] *See* Pls.' Ex. 33 (Allen IDSC File 2) at DEF0000519 (indicating that as of June 7, 2016, Ms. Allen was pregnant with an estimated due date of December 5, 2016).

from April 22 through May 9.[48] Having no evidence that her pregnancy prevented her from coming to work, the IDSC denied Ms. Allen's request for STD.[49]

Once the IDSC Specialist reaches a determination, she documents her rationale and notifies the employee.[50] As a final step, and as discussed further in section II.C., information related to the IDSC's approval or denial of STD benefits is fed back to the CAG.[51] The CAG then ensures that the IDSC's decision is coded correctly in AT&T's timekeeping system.

### 3.    Pregnancy-Related Absences Can Be Excused Under Job Accommodation.

Retail Employees may also request a job accommodation in the form of time off work to excuse health-related absences under the SAG.[52] Unlike STD benefits (which apply only to absences of eight consecutive days or longer), job accommodations per AT&T policy can involve "time off work of any duration."[53] In addition, Retail Employees who are not yet eligible for FMLA, or who have

---

[48] *See id*. at DEF0000532-41 ("The medical information provided for review does not contain any abnormal objective findings that would support an inability to perform the essential moderate functions of her job.").

[49] *Id*. at DEF0000545-47. Ms. Allen was never "pointed" or otherwise disciplined for these absences, however. *See* Pls.' Ex. 40 (Allen Termination Notice).

[50] Def.'s Ex. 16 (STD Step Process Guide) at SEDGWICK 000016–17, 20.

[51] Def.'s Ex. 4 (Miller Dep.) at 50:4–51:17.

[52] Pls.' Ex. 32 (Disability Benefits Guide) at DEF0001808.

[53] *Id.* at DEF0001804, 1808.

exhausted their annual 12-week allotment, are eligible to request a job accommodation for time off work.[54] Thus, job accommodations are available to Retail Employees in need of excused time off for a health-related reason, including pregnancy, but who may not necessarily qualify for such time under other Company policies or benefit plans.[55]

To initiate a request for a job accommodation, Retail Employees need only contact the IDSC.[56] Once the request has been opened, an IDSC Job Accommodation Specialist provides the Retail Employee with a medical evaluation form for her medical provider to complete. If a completed evaluation form is submitted to the IDSC by the requested due date, and the information in that form supports the requested accommodation, the IDSC Specialist certifies the employee's request.[57] Retail Employees are reminded of their due date for submitting the evaluation form and, at the same time, reminded that they are welcome to seek an extension.[58]

---

[54] *Id.* at DEF0001810.
[55] *See* Def.'s Ex. 7 (Thornton Report), ¶ 25, Figure 1 (showing that 9% of ever-pregnant workers, identified by Dr. Madden and for whom Dr. Madden assigned pregnancy dates, had an approved job accommodation for time off).
[56] Pls.' Ex. 32 (Disability Benefits Guide) at DEF0001808.
[57] Def.'s Ex. 18 (Graves Dep.) at 39:20–43:17.
[58] *See* Def.'s Ex. 19 (JA Step Process Guide) at SEDGWICK 000087.

Ms. Webb attempted, but ultimately failed, to follow these basic procedures for absences in 2017. On March 24, 2017, Ms. Webb contacted the IDSC to request the following accommodation: "time off work 1/27/2017 and 2/26/2017."[59] The IDSC logged Ms. Webb's request and sent her copies of the medical evaluation form to complete and return by April 10.[60] Ms. Webb failed to submit any documentation. Nor did she request an extension for more time, despite having received explicit instructions that she could do so.[61] Without any evidence that her absence was pregnancy-related (or even health-related), the IDSC closed Ms. Webb's request.[62]

Once the IDSC Specialist decides whether to certify a requested accommodation (based on medical information provided), their next and final step is to pass the request to local store management for review.[63] From there, it is up to management to determine if the department can accommodate the Retail Employee as requested. In Ms. Webb's case, the IDSC informed her store manager that she had requested an accommodation for time off, but that medical information in

---

[59] Def.'s Ex. 20 (Webb IDSC File) at DEF0007593.
[60] *Id.* at DEF0007600–12.
[61] *Id.* at DEF0007604.
[62] *Id.* at DEF0007590.
[63] Def.'s Ex. 19 (JA Step Process Guide) at SEDGWICK 000090, 101–03.

21

support of that request was not provided.[64] Ms. Webb's store manager reviewed

this information and confirmed his agreement with the IDSC's decision to close

Ms. Webb's request.[65]

Information related to the employee's job accommodation request is fed

from the IDSC to the CAG.[66] The CAG then ensures that the final accommodation

decision is correctly coded in the timekeeping system, as discussed in section II.C..

### 4.    AT&T Mobility Helps Retail Employees Navigate These Processes.

Retail Employees have a wealth of resources available to them should they

need guidance on the process for obtaining an excused absence under the SAG.

These resources are both electronic and human, and many are available to

employees on demand at any time. For example, all Retail Employees have access

to policy and benefits information on HROneStop—an internal intranet site—at

any time. From the HROneStop homepage, employees can search for any human

resources-related topic of their choosing, including "disability" or "pregnancy" or

---

[64] Def.'s Ex. 20 (Webb IDSC File) at DEF0007592.
[65] *Id.* ("Supervisor review completed… Agree with closure."); *Id.* at DEF0007595–96 ("Being that these absences where [sic] in the past with no notice, the department could not accommodate these absences.")
[66] Def.'s Ex. 4 (Miller Dep.) at 50:4–51:17.

"FMLA."[67] Such a search would then generate a listing of information, guides,

trainings, and other resources related to that inquiry. The Company's FMLA Guide

as well as its Disability Benefits Guide are two such resources available to Retail

Employees, at any time, on HROneStop. As discussed above, these resources

describe the various policies and benefit plans available to excuse health-related

absences, including absences due to pregnancy.[68]

Retail Employees can also speak with a Company, union, or third-party

representative for help, as Ms. Allen and Ms. Webb both did.[69] Customer Care

Managers are available via an online chat box or a toll-free phone number to

answer questions related to any of AT&T's human resources policies or practices,

---

[67] *See* Def.'s Ex. 21 (Def.'s Response to Pls.' Third Set of Interrogatories) at No. 6;
Def.'s Ex. 22 (CM Training Module) at DEF0008004 (demonstrating the
employee-facing version of HR OneStop). *See also* Def.'s Ex. 23 (Davis Dep.) at
267:22–25, 268:5–23; Def.'s Ex. 4 (Miller Dep.) at 290:11–21.

[68] Pls.' Ex. 27 (AT&T's FMLA Policy) at DEF0002078–79 (explaining that under
AT&T policy, FMLA may be used to protect "any period of incapacity due to
pregnancy and for prenatal care"); Pls.' Ex. 32 (Disability Benefits Guide) at
DEF0001806 (explaining that short-term disability benefits, including time off
work, are available to employees who are unable to perform their job duties "due
to illness (including pregnancy)").

[69] Def.'s Ex. 24 (HROneStop Ticket) (showing that Ms. Allen contacted an
HROneStop representative to discuss questions regarding the Company's FMLA
policy); Def.'s Ex. 3 (Allen Dep.) at 63:11–64:6 (admitting same); Pls.' Ex. 31 at
Ex. K (Webb FMLA File) at DEF0002315 (showing that Ms. Webb contacted the
FMLA Team to request an extension on her pending FMLA request, which was
granted); Def.'s Ex. 25 (Webb Dep.) at 24:2-21, 78:8-11 (showing that Ms. Webb
discussed leave options with her union steward).

23

including the process for requesting and obtaining an excused absence due to pregnancy under the SAG.[70] Similarly, the IDSC maintains a toll-free phone number, which employees can call for any questions related to short-term disability and job accommodations.[71] As bargained-for employees, union stewards are also available to answer employment-related questions from Retail Employees. Lastly, Retail Employees are welcome and indeed invited to speak with their local store manager for assistance with excusing an unscheduled absence.[72]

### E.    Plaintiffs Fail to Show AT&T Treated Other Workers Differently.

Plaintiffs have not identified any other Retail Employees who were not pregnant but were similar in their inability to work and who were treated more favorably under the SAG. Moreover, the substantial amounts of data produced in discovery show the opposite—*i.e.*, pregnant Retail Employees are treated *more*

---

[70] *See* Def.'s Ex. 21 (Def.'s Response to Pls.' Third Set of Interrogatories) at No. 6; *see also* Def.'s Ex. 3 (Allen Dep.) at 63:4–24.

[71] Pls.' Ex. 32 (Disability Benefits Guide) at DEF0001804 (listing IDSC toll-free phone numbers under "Where to Get More Information").

[72] Def.'s Ex. 4 (Miller Dep.) at 139:5–18 ("They can ask their store manager if they don't understand a specific part of the guidelines… It should be just as easy as asking one of the people that is around them."); Def.'s Ex. 3 (Allen Dep.) at 37:9–20 ("So with filing an FMLA claim, I had to…report the absence, report the description of why I was reporting the absence, and then also…calling in if the system wasn't working or speaking to my manager.").

*favorably* than others on the two metrics analyzed by Plaintiffs' expert,

Dr. Madden: FMLA requests and attendance discipline.[73]

As more fully described in AT&T's Motion to Exclude, Dr. Madden

conducted no analysis of AT&T's treatment of pregnant Retail Employees

compared to others who were similar in their inability to work. Dr. Madden also

ignored Plaintiffs' own experiences, which show that pregnancy-related absences

are excused.

## III.    Argument

### A.    Plaintiffs' Claims and Their Burden.

Plaintiffs Cynthia Allen and Kristine Webb ("Plaintiffs") allege Title VII

claims for disparate impact and disparate treatment because of pregnancy.[74]

Specifically, they allege that AT&T Mobility LLC ("AT&T") treats female Retail

Employees[75] with absences for pregnancy, childbirth, or related medical conditions

different than other employees through application of the Sales Attendance

Guidelines ("SAG"). They seek to represent female Retail Employees whose

---

[73] *See* Def.'s Ex. 7 (Thornton Report) at §§ V. and VII.
[74] Pls.' Second Amended Complaint, ¶¶ 76–80 (First Cause of Action), 81–84 (Second Cause of Action).
[75] "Retail Employees" consist of the non-exempt, non-managerial, bargained-for employees who staff AT&T's Retail Stores across the United States.

pregnancy-related absences were not excused under the SAG between April 26, 2017 and the present (the "Class Period").[76]

To establish disparate impact under Title VII, as amended by the Pregnancy Discrimination Act ("PDA"), the plaintiff must first identify the specific employment practice that allegedly has a disproportionate impact.[77] Next, the plaintiff must establish causation by offering statistical evidence sufficient to show that the practice in question has resulted in prohibited discrimination.[78] As will be shown, Plaintiffs have identified no specific employment practice. They also offer *zero* statistical proof that pregnant Retail Employees are treated differently than others in similar circumstances under the SAG.

To establish disparate treatment under Title VII, as amended by the PDA, the plaintiff must establish that the employer intended to discriminate against pregnant employees. More specifically, and consistent with the Supreme Court's ruling in *Young*, the plaintiff must establish that the employer treated pregnant employees differently than "persons not so affected but similar in their ability or inability to work."[79]

---

[76] Pls.' Second Amended Complaint, ¶¶ 11, 72–73.

[77] *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314–15 (11th Cir. 1994).

[78] *Id.*

[79] Pregnancy Discrimination Act of 1978, 42 U.S. C § 2000e(k). AT&T is not required to grant *preferential* treatment for pregnant workers under the SAG under

To resolve whether the PDA has been violated here the Court must resolve a multitude of fact-intensive inquiries unique to each individual in the putative class: Was the Retail Employee absent? What was the reason for her absence? Did she ask for that absence to be excused? Under which policy or benefit plan did she seek that excuse? Who determined whether to grant or decline her request? Were excuses granted to non-pregnant employees similarly unable to work? If her excuse was declined, was she disciplined? Did that point lead to discipline? Did that discipline preclude a promotion or transfer? The list goes on. In this context, Plaintiffs cannot meet the requirements for class certification.[80]

### B.    The Requirements of Class Certification

In order to win class certification under Rule 23, Plaintiffs must satisfy all four requirements of Rule 23(a), namely: (1) numerosity, (2) commonality,

---

the PDA. In fact, the Supreme Court expressly considered and rejected this argument in *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1350 (2015) ("We doubt that Congress intended to grant pregnant workers an unconditional most-favored-nation status. The language of the statute does not require that unqualified reading."). Congress is entitled to change the law, and may very well do so at some point in the future. *See* Pregnant Workers Fairness Act, H.R. 1065, 117th Congress (reintroduced in February 2021). But until the legislature acts, neither Plaintiffs nor this Court can stretch the PDA beyond its established meaning.

[80] *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456-57 (11th Cir. 1996).

(3) typicality, and (4) adequacy of representation.[81] Plaintiffs must also satisfy at least one of the three requirements set forth in Rule 23(b).[82] In the Eleventh Circuit, "the presumption is against class certification."[83] "[I]f the district court has reservations about whether the Rule 23 requirements have been satisfied," therefore, "it should refuse to grant class certification."[84]

Importantly, "Rule 23 does not set forth a mere pleading standard."[85] Rather, "[a] party seeking class certification must affirmatively demonstrate [her] compliance with the Rule—that is, [she] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."[86]

"Frequently th[e] 'rigorous analysis' [required at the class certification stage] will entail some overlap with the merits of the plaintiff's underlying claim."[87] Where an issue affects class certification, "a court may not simply

---

[81] Fed. R. Civ. P. 23(a); *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal citations omitted).
[82] *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997).
[83] *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).
[84] *Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 611 (11th Cir. 2017).
[85] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).
[86] *Id*.
[87] *Id*. at 350–51 (internal citations omitted).

assume the truth of the matters as asserted by the plaintiff."[88] As shown above,

matters asserted by Plaintiffs in this case are not grounded in the evidence.

Plaintiffs have not met their burden of persuasion. Therefore, the Court

should deny Plaintiffs' Motion for Class Certification.

### C.    Plaintiffs Have Not Established Commonality.

A class may be certified only if "there are questions of law or fact common

to the class."[89] In *Wal-Mart*, the Supreme Court held that "[w]hat matters to class

certification…is not the raising of common 'questions'" as Plaintiffs do here "but

rather, the capacity of a class-wide proceeding to generate common *answers* apt to

drive the resolution of the litigation."[90] Thus, Plaintiffs' claims "must depend upon

a common contention…of such a nature that it is capable of classwide resolution—

which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke."[91] A class-wide

proceeding would not generate "common answers" to any of the "common

questions" Plaintiffs purport to identify here.

---

[88] *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012).
[89] Fed. R. Civ. P. 23(a)(2).
[90] *Wal-Mart*, 564 U.S. at 350 (citation omitted) (emphasis in original). *See also* Pls.' Mem. at 32 (identifying three questions purportedly common to the class).
[91] *Id*. at 350.

Plaintiffs' argument that commonality is established because the SAG does not specifically reference pregnancy[92] is belied by their own experience and that of the vast majority of ever-pregnant workers identified by their expert. As applied, the SAG undisputedly excuses pregnancy-related absences, as discussed in section II.D., above.

Instead, Plaintiffs claim that they and other Retail Employees *should* have been granted excuses for *other* absences. Yet they cite no evidence that any of their unexcused absences were pregnancy-related. Nor do they cite any evidence that other employees had unexcused pregnancy-related absences. Whether absences were pregnancy-related, and whether AT&T excused absences of non-pregnant Retail Employees similar in their inability to work, are among the questions that remain to be decided. Neither of those questions could possibly be resolved with common proof on a classwide basis. Only if those questions are answered in Plaintiffs' favor would the Court have to consider whether any discipline was meted out and, if so, whether it resulted in an adverse employment action.

The question of whether any discipline resulted in an adverse employment action is not a question with common answers, either. Claimants suffer an adverse employment action only where they are subjected to (1) an "ultimate employment

---

[92] *See* Pls.' Mem. at 25.

decision" such as termination, or (2) something short of termination that nonetheless results in "a serious and material change in the terms, conditions, or privilege of employment" such as an adverse change in compensation.[93] Here, terminations for attendance reasons are rare, and Retail Employees are not disqualified from applying, transferring or promoting to another internal job opportunity just because they are on a step of discipline.[94] Plaintiffs' own experience demonstrates this.[95] Further, the data show that a higher percentage of ever-pregnant workers were promoted or transferred within one year of written discipline than other workers, and a higher percentage of ever-pregnant workers received a pay increase within one year of a written discipline than other

---

[93] *See Crawford v. Carroll*, 529 F.3d 961, 970–71 (11th Cir. 2008); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001), *overruled on other grounds by Burlington N & Santa Fe Ry. Co.*, 548 U.S. 53 (2006).

[94] Pls.' Ex. 3 (2015 SAG Policy), ¶ 13 ("Employees *may* be disqualified for consideration for internal job opportunities while on a step of discipline for attendance."); *see also* Def.'s Ex. 4 (Miller Dep.) at 133:3–19 (explaining that discipline might have an impact on transfers or promotions, but that it would depend on the position). Attendance history is simply one performance factor, among many, that management considers before agreeing to "release" a Retail Employee to pursue other job opportunities. Pls.' Ex. 12 (Releasability Guidelines) at DEF0002039.

[95] In 2016, AT&T permitted Ms. Allen to transfer from New York to Nevada despite her egregiously poor attendance record. (In the year leading up to Plaintiff's transfer, Ms. Allen had missed at least seventeen days of work without excuse.) Ms. Webb never applied for an internal transfer or promotion and thus was not impacted, either. Def. Ex. 25 (Webb Dep.) at 33:11–14 ("No, I never applied for any different jobs.").

Suppl. App. 048

workers.[96] Thus, the Court cannot decide *as a matter of law* that in all instances all attendance discipline (defined as the three "steps" up to but excluding termination) is an adverse employment action within the meaning of Title VII, the PDA, or otherwise.

Even if their own experiences did not undermine the central thesis of their argument, Plaintiffs still fail to show that pregnant Retail Employees were somehow treated differently than others similar in their inability to work under the SAG.[97] Despite extensive discovery, they fail to identify similarly situated non-pregnant Retail Employees who were granted excuses.[98]

Further, Plaintiffs provide *no evidence* that non-pregnant Retail Employees in similar circumstances are granted more favorable treatment than pregnant Retail

---

[96] Def.'s Ex. 7 (Thornton Report), ¶ 86, Figure 5. Also, Plaintiffs' expert erroneously testified that she did not have data regarding promotions or transfers available to her. She did. *See* Def.'s Ex. 2 (Madden Dep.) at 237:13–25.

[97] Plaintiffs' argument that there is a unique administrative "burden" for pregnant Retail Employees is baseless and therefore cannot aid them in establishing commonality. *See* Pls.' Mem. at 18–21. Pregnant workers are provided with ample time to obtain excuses for pregnancy-related absences under the SAG. Resources are available in person, online, and by phone to guide pregnant workers through their respective request process. And AT&T's documentation requirements for absences associated with pregnancy are not more onerous than the requirements for other debilitating health conditions, such as cancer. All this facilitates a pregnant Retail Employee's ability to seek an excuse, and avoid discipline, under the SAG.

[98] *See, e.g.*, Def.'s Ex. 3 (Allen Dep.) at 21:2–23:22 (Named Plaintiff unable to recall any person granted more favorable treatment than she under the SAG).

Employees under the SAG. Plaintiffs' own expert fails to draw *any* comparisons relevant to this issue.[99] Even if the Court considers her comparisons relevant, the data show ever-pregnant Retail Employees had *fewer* FMLA denials and *less* discipline than other Retail Employees, once appropriate adjustments are made to Plaintiffs' expert's analysis.[100]

These failures are fatal to Plaintiffs' attempt to establish commonality. In *Young*, the plaintiff identified three categories of comparators along with specific evidence to show how each set received more favorable treatment than she.[101] In *Scott v. Family Dollar Stores, Inc.*, another case Plaintiffs rely on,[102] the Court did not even answer the question of commonality.[103] In any event, the plaintiffs in *Scott* offered statistics in support of their allegation that four company-wide employment practices collectively influenced a disparity between their pay and the pay of their identified comparators.[104] But unlike this precedent, Plaintiffs have not

---

[99] *See* Defendant's Memorandum of Law in support of its Motion to Exclude the Opinions of Janice F. Madden, Ph.D.

[100] *See* Def.'s Ex. 7 (Thornton Report) at §§ V. and VII. For greater explanation on the nature and magnitude of Plaintiffs' expert's errors, *see* Defendant's Memorandum of Law in support of its Motion to Exclude the Opinions of Janice F. Madden, Ph.D., filed in tandem with this brief.

[101] *Young*, 135 S. Ct. at 1347.

[102] *See* Pls.' Mem. at 26–29.

[103] *Scott*, 733 F.3d 105, 117 (4th Cir. 2013) ("We do not now rule…on whether certification of the putative class will ultimately be warranted.").

[104] *Id.* at 116–17.

Suppl. App. 050

identified similarly situated comparators. Nor have they shown evidence of any

pattern of adverse treatment.

AT&T did not create the SAG to increase employee attrition as Plaintiffs

argue.[105] To the contrary, the 2015 SAG was not expected to increase employee

attrition, except "possibly" among the population of employees who had been

abusing the prior system.[106] As compellingly shown above, AT&T does not

consider employees whose pregnancies prevent them from working to be abusing

the system: those absences are excused under the SAG. Plaintiffs' expert agrees:

pregnant employees are *no more likely than others* to be terminated under the

SAG.[107]

---

[105] *See* Pls.' Ex. 6 at DEF0003638 (explaining that the 2015 SAG was created in an
effort to reduce employee absenteeism, decrease "gaming" of the existing
guidelines, drive more consistent application of the guidelines across the country,
and align attendance guidelines across the AT&T enterprise). Plaintiffs have no
evidence to support their assertion and, even if they did, there is nothing to suggest
that any effort to increase attrition among workers with attendance problems
affected *pregnant* employees differently.

[106] *See* Pls.' Ex. 21 at DEF0002887.

[107] Pls.' Ex. 46 (Supp. Madden Rep.) at 3, 14–15 ("[P]regnant workers were not
more likely to be recorded as involuntarily terminated.").

### D.    Plaintiffs Have Not Established Typicality.

The evidence that dooms Plaintiffs' commonality argument also demonstrates why they cannot establish typicality.[108] Typicality focuses on "the individual characteristics of the named plaintiff[s] in relation to the class."[109] Specifically, the typicality inquiry under Rule 23(a) "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."[110] To satisfy that inquiry, Plaintiffs must show that their class representatives "possess the same interest and suffer the same injury as the class members."[111] Plaintiffs have made no such showing.

Plaintiffs both secured several excuses for pregnancy-related absences, which belies their central theory of commonality *i.e*., that the SAG does not specifically mention pregnancy. As discussed in section II.D., above, Ms. Webb and Ms. Allen both knew how to obtain excuses for a pregnancy-related absence under the SAG. Whether Ms. Webb or Ms. Allen failed to *act* on that knowledge— or whether they had other absences they *wished* to have excused—has nothing to

---

[108] *See Wal-Mart*, 564 U.S. at 349 n.5 (explaining that the commonality and typicality requirements of Rule 23(a) "tend to merge"); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).
[109] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (citations omitted).
[110] *Id.*
[111] *Id.*

do with whether the word "pregnancy" appears in the SAG. Moreover, neither of them points to any co-workers similar in the inability to work who were granted excuses under similar circumstances. These experiences and characteristics simply do not comport with a putative class of individuals who allegedly were not granted excuses for absences due to pregnancy.

Neither Ms. Webb nor Ms. Allen pursued (or was denied) a promotion while employed as a Retail Employee. Neither received a pay cut or demotion, and neither was denied a request to transfer between locations. On these facts, Ms. Allen and Ms. Webb cannot claim to be typical of a class who claim their employment was adversely affected by discipline imposed under SAG. Further still, the fact that Ms. Webb *voluntarily* resigned takes her outside of the class she seeks to represent. AT&T never terminated her employment for attendance-related reasons, or otherwise.

Having shown no sufficient nexus between the claims of the named representatives and those of the class at large, Plaintiffs fail to meet their burden with respect to typicality.

### E.    Plaintiffs Are Not Adequate Class Representatives.

Rule 23(a)(4) provides that a named plaintiff is entitled to represent a class only if she "will fairly and adequately protect the interests of the class." As with

the other requirements of Rule 23(a), the party seeking class certification bears the burden of establishing adequacy; Plaintiffs are not entitled to any presumption of adequacy.[112] The Court is likewise bound to "undertake a stringent…examination of the adequacy of representation by the named class representative."[113]

Both Ms. Allen and Ms. Webb missed work. They now claim that these absences were pregnancy-related, and that the refusal to excuse them was discriminatory. But neither the SAG nor the CAG are responsible for these denials. Ms. Allen and Ms. Webb's own negligence, indifference, or unwillingness to follow company policy resulted in their failure to obtain an excuse under the SAG for their absences, assuming *arguendo* that those absences were pregnancy-related. Neither Plaintiff has presented *any evidence* (other than their own statements) that unexcused absences were pregnancy-related.[114] If Plaintiffs are not diligent enough to pursue their own requests for an excused absence, how could they possibly be fit to prosecute this action adequately on behalf of a class?[115]

---

[112] *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253–54 (11th Cir. 2003) (citation omitted).

[113] *Id*. at 1254 (citation omitted).

[114] The PDA does not mandate pregnancy leave. Nor does it require employers (or Courts) to assume that all absences during pregnancy are pregnancy-related. As noted at II.D. above, the evidence in this case suggests what common sense dictates—women can and do regularly attend work while pregnant.

[115] *See, e.g.*, *Beard v. Kenan Transp. Co.*, No. 1:04-CV-2299-BBM, 2005 WL 8154710, at *14 (N.D. Ga. Nov. 23, 2005) (denying class certification after

For example, Ms. Webb says she obtained a doctor's note describing the reason for her visit to an Emergency Room on January 27, 2017, but never submitted that note to the FMLA Team reviewing her request.[116] As a result, her request to excuse that absence was denied. Additionally, both Plaintiffs failed to follow up on the reminders sent to them for additional medical information. When Ms. Webb requested a job accommodation to cover her January 27, 2017 absence, the IDSC sent her three written reminders to submit medical documentation.[117] Ms. Webb never responded. Similarly, when Ms. Allen requested FMLA to cover her July 16, 2016 absence, the FMLA Team sent her two written reminders to submit medical documentation.[118] Ms. Allen did not respond.[119]

---

determining that the named plaintiff's proclivity for falsifying documents rendered her inadequate under Rule 23(a)(4) to prosecute a Title VII action on behalf of absent class members).

[116] Def.'s Ex. 25 (Webb Dep.) at 129:14–19, 173:9–15. The note was not produced in discovery.

[117] Def.'s Ex. 20 (Webb IDSC File) at DEF0007597, 599, 601–04. The IDSC also called Ms. Webb, who did not answer or return their call. *See id.* at DEF0007588.

[118] Def.'s Ex. 8 (Allen FMLA Letters) at DEF0002596, 2603.

[119] To the extent Plaintiffs argue that Ms. Allen cannot be faulted because she did not receive these reminders, they only weaken their position and accentuate Ms. Allen's persistent lack of diligence: Ms. Allen failed to keep AT&T apprised of changes to her home address and, as a consequence, claims that she did not receive notice, reminders, and other information from the FMLA Team reviewing her requests. Def.'s Ex. 3 (Allen Dep.) at 115:20–118:19.

Taken in their totality, the named plaintiffs' persistent lack of diligence in following or following-through on company policies (that applied equally to everyone) shows that they would not serve as diligent class representatives.

### F.    Plaintiffs Do Not Meet Rule 23(b)(3)'s Requirements.

Rule 23(b)(3) permits class certification only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[120] Here, Plaintiffs claims are fraught with individualized issues that simply cannot be resolved on a common or classwide basis. Nor is a class action proceeding superior; even the bifurcated approach that Plaintiffs propose would unfairly prejudice AT&T.

### 1.    Individual Issues Predominate.

To assess Plaintiffs' compliance with Rule 23(b)(3), the Court must first look to Plaintiffs' allegations and determine whether individual or collective issues predominate.[121] "Whether an issue predominates can only be determined after

---

[120] Fed. R. Civ. P. 23(b)(3) (emphasis added). *See also Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011).

[121] *See Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 n.6, 738 (11th Cir. 1997) (rejecting class certification in part because class members' arguments would "require the court to engage in multiple separate factual determinations").

considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."[122] "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."[123] The predominance inquiry under Rule 23(b)(3) is "far more demanding" than Rule 23(a)'s commonality requirement and must be analyzed under its own separate and rigorous inquiry.[124]

After two and a half years of litigation and discovery, Plaintiffs have failed to identify a credible theory for proving discrimination on a common, class-wide basis. They offer no statistical model that compares the relevant population to others similar in their ability or inability to work. They offer no evidence of AT&T's intent. And they offer no evidence of a common employment practice that treats pregnant Retail Employees different from others similar in their inability to work. All Plaintiffs can muster is the unsupported and grossly insufficient theory

---

[122] *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1234–36 (11th Cir. 2000). *See also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978) ("The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.") (citations omitted).
[123] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (citation omitted).
[124] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–24 (1997); *Vega*, 564 F.3d at 1268–70.

Suppl. App. 057

that some of their unexcused absences were pregnancy-related and should have been excused.

Even if this inquiry was sufficient to achieve commonality, which it is not, the answer to each class members' question ("*was I disfavored?*") must still begin with a litany of individualized inquiries: Was the employee absent? Was there an inability to come to work? Was that inability related to pregnancy? Did the employee inform AT&T of that inability? Did she seek to excuse the absence? These individual issues have to be answered in order to absolve AT&T of its liability under Title VII. But these questions cannot be resolved with class-wide proof. Where individualized issues so prominently predominate over the issue arguably common to the class, a class proceeding is not proper.[125]

Plaintiffs further allege that the imposition of attendance points could qualify as an adverse employment action (short of termination) because it limits the availability of transfers or promotions for putative class members. Even if that

---

[125] *See, e.g.*, *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 684–85 (N.D. Ga. 2001) (denying class certification where plaintiffs failed to meet the requirements of Rule 23(b)(3)) ("Claims of discrimination, in employment or elsewhere, depend heavily on the specific circumstances and conditions in which the victim finds himself or herself… Under such circumstances…a defendant's pattern or practice of discrimination will not always predominate over the individual, case-specific questions relevant to each plaintiff's claim, nor will the class mechanism envisioned by Rule 23(b)(3) readily constitute a superior method of adjudication.")

were true, which it is not,[126] resolving this issue would necessarily require the

Court to assess the facts and circumstances unique to each individual in the class.

For example, whether any putative class member suffered an adverse action would

depend on whether she was interested in transfer or promotion, whether there were

even opportunities for transfer or promotion during the period of time that she was

on a step of discipline, and whether local management could plausibly

accommodate a flux in headcount at the time of her request. Claims specific to

promotion would also require an inquiry into the qualifications of other candidates,

among other things. Rule 23(b)(3) cannot permit certification where such

individualized and fact-intensive inquiries predominate.[127]

---

[126] Under the SAG, a Retail Employee *may* be disqualified for internal job opportunities while on an active step of discipline for attendance. Pls.' Ex. 3 (2015 SAG Policy), ¶ 13. But attendance discipline is not dispositive; other factors unrelated to attendance contribute to whether a Retail Employee is permitted to transfer jobs. *See, e.g.*, Pls.' Ex. 12 (AT&T General Releasability Guidelines) at § 2.0 ("Inherent in these guidelines is the expectation that employee movement must meet the needs of both the employee and the business."), § 4.0 ("Employees should expect to meet the minimum requirements of their current position before being considered releasable for a new position.").

[127] *See, e.g.*, *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (declining to certify a putative class under Rule 23(b)(3) because the plaintiffs' claims would have "require[d] distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination").

### 2.    A Class Proceeding Is Not Superior

A class action is not the superior method for fairly or efficiently adjudicating the controversy at issue. Rather, the attempted adjudication of Plaintiffs' claims on a classwide basis—and by one jury—"would be overly cumbersome and would result in litigation characterized by confusion and incoherency."[128] It presents, at most, only the *appearance* of economies; it would not actually preserve the time, effort, or resources of this Court.[129]

As already discussed with respect to commonality and predominance, there can be no common answers to common issues across the putative class. The multitude of fact-specific inquiries needed to resolve the putative class members' claims of discrimination will necessarily lead this Court into a series of individualized hearings. Where the resolution of an "overarching common issue breaks down into an unmanageable variety of individual legal and factual issues," Rule 23(b)(3) cannot be satisfied.[130]

---

[128] *Reid*, 205 F.R.D. at 686–87.

[129] *See Klay*, 382 F.3d at 1270 (noting that *substantial* economies of time, effort, and expense for the litigants as well as the court is one of the main reasons why it is desirable to litigate multiple parties' claims in a single forum).

[130] *Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996) (citation omitted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

This Court cannot certify a class action by pushing individual questions into a second phase of proceedings, as Plaintiffs propose, in any event.[131] Doing so would infringe AT&T's right under the Seventh Amendment to have its liability determined by a *single* jury.[132] AT&T's alleged liability to any given individual will necessarily depend on resolution of individualized issues, as described above. AT&T is entitled to have such individual factual issues resolved by a jury. If the Court were to permit Plaintiffs to litigate liability on a class-wide basis as they propose, setting individualized issues aside for a second proceeding, the jury in that second proceeding would by definition be reexamining the findings of the first jury. This result is simply untenable.[133]

As this Court has recognized before: "[t]he true problem with certifying Plaintiffs' discrimination claims under Rule 23(b)(3) concerns not merely a question of relief but a question of liability itself."[134]

---

[131] *See* Pls.' Mem. at 39–41.

[132] *See* 42 U.S.C. § 1981a(c) (establishing AT&T's right to demand a jury trial where, as here, either compensatory or punitive damages are sought).

[133] *See Reid*, 205 F.R.D. at 685–86; *see also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410, 419–20 (5th Cir. 1998) ("In order to manage the case, the district court faced the likelihood of bifurcated proceedings before multiple juries. This result in turn increased the probability that successive juries would pass on issues decided by prior ones, introducing potential Seventh Amendment problems and further decreasing the superiority of the class action device.").

[134] *Reid*, 205 F.R.D. at 684.

### G.    It Would Be Inequitable to Proceed Under Rule 23(c)(4).

As this Court has declared, Rule 23(c)(4) is merely a "housekeeping rule" that allows courts to sever discrete issues before trial.[135] It is not, as Plaintiffs contend, a mechanism for securing class certification where one of Rule 23(b)'s requirements has not been met.[136] Moreover, the Court cannot engage in issue certification where, as here, common issues fail to predominate over individual issues overall.[137] Courts, including this Court, "have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement"[138] and the result should be no different here.

## IV.    Conclusion

For the reasons stated above, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Class Certification.

---

[135] *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 321 F.R.D. 430, 447 (N.D. Ga. 2017).

[136] As already discussed, Plaintiffs must satisfy all four requirements of Rule 23(a) *and at least one of the three requirements set forth in Rule 23(b)* in order to meet their burden of proof. *Heaven*, 118 F.3d at 737.

[137] Defendant acknowledges a difference of opinion on this issue between Circuits, while also recognizing that the Eleventh Circuit has yet to opine on the matter. *See In re Atlas*, 321 F.R.D. at 447 n.132. (summarizing same).

[138] *In re Atlas*, 321 F.R.D. at 447.

Dated:  March 31, 2021                   AT&T Mobility Services LLC

                               By:  _____
                                    Kenneth W. Gage (*pro hac vice*)
                                    PAUL HASTINGS LLP
                                    200 Park Avenue, 30th Floor
                                    New York, New York 10166
                                    Tel:  (212) 318-6000
                                    kennethgage@paulhastings.com

                                    Christine L. Cedar (*pro hac vice*)
                                    PAUL HASTINGS LLP
                                    2050 M Street N.W.
                                    Washington, D.C. 20036
                                    Tel: (202) 551-1700
                                    christinecedar@paulhastings.com

                                    Alex J. Maturi (*pro hac vice*)
                                    PAUL HASTINGS LLP
                                    71 South Wacker Drive, 45th Floor
                                    Chicago, Illinois 60606
                                    Tel:  (312) 499-6000
                                    alexmaturi@paulhastings.com

                                    Sheldon W. Snipe
                                    AVP Senior Legal Counsel
                                    AT&T Services, Inc.
                                    675 West Peachtree Street, NW
                                    Suite 4300
                                    Atlanta, Georgia 30308
                                    Tel:  (404) 893-7953
                                    ss5526@att.com

46

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to LR 5.1B and 7.1D of the Northern District of Georgia, that the foregoing DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION CERTIFICATION complies with the font and point selections approved by the Court in LR 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

Kenneth W. Gage (*pro hac vice*)

47

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 31 day of March, 2021, I have electronically

filed the foregoing DEFENDANT'S MEMORANDUM IN OPPOSITION TO

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION with the Clerk of the

Court using the CM/ECF System. Notification of this filing will automatically be

sent via electronic mail to the following attorneys of record:

Joseph M. Sellers (*pro hac vice*)
Kalpana Kotagal (*pro hac vice*)
Harini Srinivasan (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, Suite 500
Washington, D.C. 20005
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
hsrinivasan@cohenmilstein.com

Gillian L. Thomas (*pro hac vice*)
American Civil Liberties Union Foundation-NY
125 Broad Street, 18th Floor
New York, New York 10004
gthomas@aclu.org

Sean Young
American Civil Liberties Union Foundation of Georgia, Inc.
P.O. Box 77208
1100 Spring Street, N.W.
Suite 640
Atlanta, Georgia  30357
syoung@acluga.org

_____
Kenneth W. Gage (*pro hac vice*)

1

# TAB 3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CYNTHIA ALLEN and KRISTINE
WEBB,

           Plaintiffs,

     v.

AT&T MOBILITY SERVICES LLC
a/k/a/ AT&T MOBILITY LLC,

           Defendant.

Civil No. 1:18-cv-3730-WMR

## <u>MOTION TO EXTEND TIME</u>

On December 20, 2022, this Court directed the Clerk of Court to administratively close this case, and directed the parties to "file a dismissal or other filing disposing of this case upon finalization of the settlement within thirty days." Dkt. 159.

The parties have a fully negotiated settlement agreement prepared, but AT&T needs until January 27, 2023 to finalize the settlement so that the parties can file a proper stipulation with the Court. Undersigned counsel for AT&T as advised counsel for the plaintiffs of the circumstances requiring the additional time, and counsel advised that the plaintiffs object to this request but do not object to an extension until January 25, 2023.

Therefore, AT&T respectfully requests that this Court extend the deadline for the parties to file a dismissal until January 27, 2023.


Dated:  January 19, 2023

Respectfully submitted,

*/s/ Kenneth W. Gage*
Kenneth W. Gage (*pro hac vice*)
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000
kennethgage@paulhastings.com

Christine L. Cedar (*pro hac vice*)
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700
christinecedar@paulhastings.com

Alex J. Maturi (*pro hac vice*)
Paul Hastings LLP
71 S. Wacker Drive, Suite 4500
Chicago, IL 60606
Tel: (312) 499-6000
alexmaturi@paulhastings.com

Sheldon W. Snipe
AVP Senior Legal Counsel
AT&T Services, Inc.
675 W. Peachtree Street, NW, Suite 4300
Atlanta, GA 30308
Tel: (404) 927-3516
ss5526@att.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2023 I electronically filed AT&T's Motion to Extend Time with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record.

Dated:   January 19, 2023                    /s/ Kenneth W. Gage
                                             Kenneth W. Gage (*pro hac vice*)

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CYNTHIA ALLEN and KRISTINE WEBB,

      Plaintiffs,

    v.

AT&T MOBILITY SERVICES LLC

a/k/a/ AT&T MOBILITY LLC,

      Defendant.

Civil No. 1:18-cv-3730-WMR

## [PROPOSED] ORDER

It is hereby ORDERED that the parties' have until January 27, 2023 to file a dismissal upon finalization of the settlement, or to move to reopen the case.

SO ORDERED, this _____ day of _____.

_____
The Honorable William M. Ray, II,
United States District Judge

# TAB 4

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 15, 2023

Appeal Number:  23-10572-HH
Case Style:  Amanda Curlee v. AT&T Mobility Services, LLC
District Court Docket No:  1:18-cv-03730-WMR

NOTICE OF APPEAL FILED: <u>February 15, 2023</u>

After review of the district court docket entries, order and/or judgment appealed from, and the notice of appeal, it appears that this court may lack jurisdiction over this appeal. If it is determined that this court is without jurisdiction, this appeal will be dismissed.

The parties are requested to simultaneously advise the court in writing within fourteen (14) days from the date of this letter of their position regarding the jurisdictional question(s) set forth on the attached page. Counsel must submit their response electronically, and do not need to provide paper copies. The responses must include a Certificate of Interested Persons and Corporate Disclosure Statement as described in Fed.R.App.P. 26.1 and the corresponding circuit rules. Requests for extensions of time to file a response are disfavored.

After fourteen (14) days, this court will consider any response(s) filed and any portion of the record that may be required to resolve the jurisdictional issue(s). Please note that the issuance of a jurisdictional question does not stay the time for filing appellant's briefs otherwise provided by 11th Cir. R. 31-1.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| New / Before Briefing Cases: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| Cases in Briefing / After Opinion: | 404-335-6130 | CM/ECF Help Desk: | 404-335-6125 |
| Cases Set for Oral Argument: | 404-335-6141 | | |

Enclosure(s)

No. 23-10572-HH

# JURISDICTIONAL QUESTIONS

Please address whether the January 23, 2023 stipulation of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) was valid and effective to dismiss the claims against Defendant AT&T Mobility Services LLC, given that the stipulation appears to contain signatures for the plaintiffs and only one of the two defendants who appeared in this action. *See* Fed. R. Civ. P. 41(a)(1)(a)(ii) (providing that a plaintiff may voluntarily dismiss an action without a court order by filing "a stipulation of dismissal signed by *all parties who have appeared*" (emphasis added)); *Esteva v. UBS Fin. Servs. Inc. (In re Esteva)*, --- F.4th ---, No. 21-13580, slip op. at 17-21 (11th Cir. Feb. 16, 2023) (defining "action" under Rule 41(a) as referring to the whole case); *see also Hardnett v. Equifax Info. Servs., Ltd. Liab. Co.*, No. 21-13195, slip op. at 4-5 (11th Cir. Feb. 17, 2023) (unpublished) (holding that a stipulation of dismissal under Rule 41(a)(1)(A)(ii) was not valid because it was not signed by all parties who had appeared in the case).

Assuming that the January 23, 2023 stipulation of dismissal was valid, please address whether the district court had jurisdiction to consider and grant the putative class member's motion to intervene after the case was rendered final by the January 23, 2023 joint stipulation of voluntary dismissal. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (holding that a putative class member could appeal the denial of a class certification by intervention, after entry of a judgment in favor of the named plaintiff, but before the statutory time for appeal had run); *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272 (11th Cir. 2012) (indicating that a Rule 41(a)(1)(A)(ii) stipulated dismissal broadly extinguishes the district court's jurisdiction); *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1326 n.2 (11th Cir. 2017) ("Because we conclude the would-be class members did not file their appeal in a timely manner, we do not address the question whether a stipulated dismissal strips the district court of jurisdiction to hear a motion to intervene.").

# TAB 5

NO. 23-10572-H

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

AMANDA CURLEE,
Intervenor-Appellant,

vs.

AT&T MOBILITY SERVICES, LLC a/k/a
AT&T MOBILITY LLC,
Defendant-Appellee.

Intervenor-Appellant Appeals an Order Denying
Motion for Class Certification
by the United States District Court for the Northern District of Georgia
Case No. 1:18-cv-03730-WMR
(Hon. William M. Ray, II)

**APPELLEE'S RESPONSE TO JURISDICTIONAL QUESTIONS**

Kenneth W. Gage
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
kennethgage@paulhastings.com

Christine L. Cedar
PAUL HASTINGS LLP
2050 M Street N.W.
Washington, D.C. 20036
(202) 551-1700
christinecedar@paulhastings.com

*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

APPELLEE AT&T MOBILITY LLC'S CERTIFICATE OF INTERESTED
 PERSONS AND CORPORATE DISCLOSURE STATEMENT .............C-1

SUMMARY OF RESPONSE TO JURISDICTIONAL QUESTIONS ...................1

INTRODUCTION ............................................................................1

BACKGROUND ............................................................................3

 The Underlying Action ..............................................................3

 The Motion to Intervene ............................................................5

ARGUMENT ...............................................................................6

I. YES. THE STIPULATION OF DISMISSAL WAS VALID AND
 EFFECTIVE. ...........................................................................6

 A. AT&T Services was no longer a party and never "appeared" for
  purposes of Rule 41(a)(1)...................................................7

 B. Rule 41(a)(1)(A)(ii) permits the plaintiff voluntarily to dismiss
  an action where the intent of the parties is manifest to the court.........9

II. NO. THE DISTRICT COURT DID NOT HAVE JURISDICTION TO
 CONSIDER AND GRANT CURLEE'S MOTION TO INTERVENE. .....12

 A. The filing of the stipulation of dismissal deprived the district
  court of jurisdiction to consider and grant Curlee's motion. .............13

 B. *United Airlines, Inc. v. McDonald* does not support a finding of
  jurisdiction. .....................................................................16

 C. The holding of *In re Brewer* that a district court may grant post-
  dismissal motions to intervene is inconsistent with *Anago* and
  incorrect. ........................................................................17

CONCLUSION ...........................................................................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
 TYPEFACE REQUIREMENTS, AND TYPE-STYLE
 REQUIREMENTS ...................................................................22

CERTIFICATE OF SERVICE ..........................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Allen & Webb v. AT&T Mobility Services LLC*,
   1:18-cv-03730-WMR (N.D. Ga. Aug. 3, 2018) ..................................................1

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974) ...............................................................................19

*Anago Franchising, Inc. v. Shaz, LLC*,
   677 F.3d 1272 (11th Cir. 2012) ...............................................................*passim*

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) .................................................................................5

*Black v. Cent. Motor Lines, Inc.*,
   500 F.2d 407 (4th Cir. 1974) .................................................................14

*Boran v. United Migrant Opportunity Servs., Inc.*,
   99 F. App'x 64 (7th Cir. 2004) .............................................................10

*In re Brewer*,
   863 F.3d 861 (D.C. Cir. 2017)...............................................................*passim*

*Brictson Mfg. Co. v. Woodrough*,
   284 F. 484 (8th Cir. 1922) .....................................................................14

*Canatella v. California*,
   404 F.3d 1106 (9th Cir. 2005) ...............................................................14

*Chiles v. Thornburgh*,
   865 F.2d 1197 (11th Cir. 1989) .............................................................14

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)......................................................................19, 20

*Conkling v. Turner*,
   138 F.3d 577 (5th Cir. 1998) .................................................................10

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
   445 U.S. 326 (1980)...............................................................................19

Suppl. App. 074

*Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*,
　675 F.3d 149 (2d Cir. 2012) .................................................................14

*Dukes v. Wal-Mart Stores, Inc.*,
　No. 01-cv-02252-CRB, 2016 WL 4269093 (N.D. Cal. Aug. 15, 2016) ...................................................................................15

*Eitel v. McCool*,
　782 F.2d 1470 (9th Cir. 1986) ...........................................................10

*Fort Sill Apache Tribe of Okla. v. United States*,
　No. Civ-08-0541-F, 2008 WL 2891654 (W.D. Okla. July 23, 2008) ...............15

*Fuller v. Volk*,
　351 F.2d 323 (3d Cir. 1965) ...............................................................14

*In re Furlong*,
　885 F.2d 815 (11th Cir. 1989) ...........................................................10

*Gardiner v. A.H. Robins Co., Inc.*,
　747 F.2d 1180 (8th Cir. 1984) .............................................................9

*GMAC Com. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*,
　213 F.R.D. 150 (S.D.N.Y. 2003) ........................................................15

*Hardnett v. Equifax Info. Servs., LLC*,
　No. 21-13195, 2023 WL 2056285 (11th Cir. Feb. 17, 2023)..............................7

*Hoefling v. City of Miami*,
　811 F.3d 1271 (11th Cir. 2016) ...........................................................9

*Hofheimer v. McIntee*,
　179 F.2d 789 (7th Cir. 1950) ...............................................................14

*Homesite Ins. Co. of Midwest v. Robards*,
　No. 3:13-cv-515-TAV-CCS, 2014 WL 359823 (E.D. Tenn. Feb. 3, 2014) .................................................................................................15

*Jones v. Gould*,
　141 F. 698 (C.C.S.D. Ohio 1905), *aff'd*, 149 F. 153 (6th Cir. 1906) .................8

*Jou v. Kimberly-Clark Corp.*,
   No. 13-cv-03075-JSC, 2015 WL 4537533 (N.D. Cal. July 27,
   2015) ..................................................................................................15

*Kendrick v. Kendrick*,
   16 F.2d 744 (5th Cir. 1926) ...............................................................14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994).....................................................................*passim*

*Love v. Wal-Mart Stores, Inc.*,
   865 F.3d 1322 (11th Cir. 2017) .........................................................17

*Mut. Produce, Inc. v. Penn Cent. Transp. Co.*,
   119 F.R.D. 619 (D. Mass. 1988).........................................................15

*Odle v. Flores*,
   899 F.3d 342 (5th Cir. 2017) .............................................................17

*Oswalt v. Scripto, Inc.*,
   616 F.2d 191 (5th Cir. 1980) .............................................................10

*Peacock v. Thomas*,
   516 U.S. 349 (1996)......................................................................15, 16

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)..............................................................................17

*Pipeliners Local Union No. 798 v. Ellerd*,
   503 F.2d 1193 (10th Cir. 1974) .........................................................10

*Reagan v. Fox Navigation, LLC*,
   No. 302CV627CFD, 2005 WL 2001177 (D. Conn. Aug. 17, 2005).................15

*Role v. Eureka Lodge No., 434*,
   402 F.3d 314 (2d Cir. 2005) ..............................................................10

*Salem Pointe Cap., LLC v. Bep Rarity Bay LLC*,
   854 F. App'x 688 (6th Cir. 2021)........................................................14

*Shores v. Sklar*,
   885 F.2d 760 (11th Cir. 1989) ......................................................12, 16

Suppl. App. 076

*Silber v. Airbnb, Inc.*,
    No. 1:18-cv-01884-RGA, 2019 WL 3997098 (D. Del. Aug. 23,
    2019) ........................................................................................................15

*SmallBizPros, Inc. v. MacDonald*,
    618 F.3d 458 (5th Cir. 2010) (per curiam) ...........................................13

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977).............................................................12, 16, 17

*United States v. Florida*,
    938 F.3d 1221 (11th Cir. 2019), *reh'g denied sub nom. United
    States v. Sec'y Florida Agency for Health Care Admin.*, 21 F.4th
    730 (11th Cir. 2021), *and cert. denied sub nom. Florida v. United
    States*, 143 S. Ct. 89 (2022) ..................................................................16

*United States v. Ford*,
    650 F.2d 1141 (9th Cir. 1981) ................................................................14

*In re Wolf*,
    842 F.2d 464 (D.C. Cir. 1988) .................................................................9

**Statutes**

28 U.S.C. § 2072(b) ..................................................................................19

**Other Authorities**

9 Fed. Prac. & Proc. Civ. § 2362 (4th ed.)..................................................7

Federal Rule of Civil Procedure 41 ......................................................7, 8

8 Moore's Federal Practice – Civil § 41.34 ...............................................9

No. 23-10572-H
*Curlee v. AT&T Mobility Services, LLC*

## APPELLEE AT&T MOBILITY LLC'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned counsel hereby certifies that the following is a full and complete list of known attorneys, persons, associated persons, firms, partnerships, and corporations that have an interest in the outcome of this appeal:

1.    American Civil Liberties Union Foundation of Georgia, Inc. (counsel for Intervenor-Appellant)

2.    American Civil Liberties Union, Women's Rights Project (counsel for Intervenor-Appellant)

3.    AT&T Inc. (NYSE: T) (corporate affiliate of AT&T Mobility Services LLC)

4.    AT&T Mobility Services LLC (Defendant-Appellee)

5.    AT&T NCWS Holdings, Inc. (corporate owner of New Cingular Wireless Services, Inc.)

6.    AT&T Teleholdings, Inc. (corporate owner of SBC Telecom, Inc.)

7.    BellSouth Mobile Data, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

8.    Calvo-Friedman, Jennesa (counsel for Intervenor-Appellant)

No. 23-10572-H
*Curlee v. AT&T Mobility Services, LLC*

9.    Cedar, Christine (counsel for Defendant-Appellee)

10.    Cohen Milstein Sellers & Toll, PLLC (counsel for Intervenor-Appellant)

11.    Cricket Holdco Inc. (corporate owner of AT&T Mobility Services LLC)

12.    Curlee, Amanda (Intervenor-Appellant)

13.    Gage, Kenneth W. (counsel for Defendant-Appellee)

14.    Isaacson, Cory (counsel for Intervenor-Appellant)

15.    Kotagal, Kalpana (counsel for Intervenor-Appellant)

16.    Leap Wireless International, Inc. (corporate owner of Cricket Holdco Inc.)

17.    Lopez-Delgado, Andrés M. (counsel for Intervenor-Appellant)

18.    LWI Holdco, Inc. (corporate owner of Leap Wireless International, Inc.)

19.    Maturi, Alex J. (counsel for Defendant-Appellee)

20.    New Cingular Wireless Services, Inc. (corporate owner of LWI Holdco, Inc.)

21.    Paul Hastings LLP (counsel for Defendant-Appellee)

No. 23-10572-H
*Curlee v. AT&T Mobility Services, LLC*

22.    Ray, William M., II (United States District Court Judge for the
        Northern District of Georgia)

23.    SBC Telecom, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

24.    Sellers, Joseph M. (counsel for Intervenor-Appellant)

25.    Snipe, Sheldon W. (counsel for Defendant-Appellee)

26.    Srinivasan, Harini (counsel for Intervenor-Appellant)

27.    Tabacco Mar, Ria (counsel for Intervenor-Appellant)

28.    Thomas, Gillian L. (counsel for Intervenor-Appellant)

## SUMMARY OF RESPONSE TO JURISDICTIONAL QUESTIONS

The record before the district court manifestly demonstrates the parties' intent to dismiss the action on January 23, 2023, and the signature of AT&T Services, which nearly four years ago moved to dismiss for lack of jurisdiction and was then removed from the case by the plaintiff by amendment of the pleadings, was not required for the Rule 41(a)(1)(A)(ii) stipulation of dismissal to be effective. This Court's decision in *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272 (11th Cir. 2012), dictates that the action was terminated and the district court lost jurisdiction. Moreover, a contrary holding would run afoul of the Rules Enabling Act, 28 U.S.C. § 2072.

## INTRODUCTION

The parties to the underlying action, *Allen and Webb v. AT&T Mobility Services LLC*, 1:18-cv-03730-WMR (N.D. Ga. Aug. 3, 2018), agreed in a confidential settlement to dismiss the action with prejudice. (Stipulation of Voluntary Dismissal, ECF 162.) On December 20, 2022, the district court administratively closed the action and directed the parties to make a "filing disposing of the case …." (Order, ECF 159.) On January 23, 2023, the plaintiffs, Cynthia Allen and Kristine Webb did just that. They filed a stipulation pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure dismissing the action "with prejudice." (ECF 162.) The next day Appellant Amanda Curlee filed a motion to

intervene in the district court, pursuant to Rule 24 of the Federal Rules of Civil Procedure.

The January 23, 2023 stipulation of dismissal was signed by counsel for all of the parties who ever brought claims, or were ever named as defendants in the action. A separate signature by AT&T Services was unnecessary for two reasons; first, AT&T Services never answered or moved for summary judgment but only appeared specially to seek dismissal due to lack of personal jurisdiction; and second, Allen and Webb removed AT&T Services from the case before personal jurisdiction was determined by amendment of the pleadings. The district court record demonstrates unambiguously that all parties agreed the action was terminated on January 23, 2023.

The January 23, 2023 stipulation of dismissal was effective upon filing. *Anago*, 677 F.3d at 1278. Curlee concedes this. (Mot. to Intervene, ECF 163 at 1.) The district court lost "all power over determinations of the merits" of the case, *Anago*, at 1279, and there was no longer a justiciable case into which Curlee could intervene.

Therefore, the Court should hold that the district court lacked jurisdiction to consider Curlee's motion to intervene and dismiss the appeal.

# BACKGROUND

## *The Underlying Action*

Allen commenced the action against AT&T Mobility Services LLC ("AT&T Mobility") and AT&T Services, Inc. ("AT&T Services") by filing a complaint in the district court on August 8, 2018 alleging, inter alia, putative class claims under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"). (Compl., ECF 1.) Allen filed her First Amended Complaint on January 25, 2019. (First Am. Compl., ECF 21.)

On February 8, 2019, AT&T Services specially appeared and moved to dismiss the First Amended Complaint for lack of personal jurisdiction. (Mot. to Dismiss, ECF 26.)  AT&T Mobility filed an answer on February 19, 2019. (Answer, ECF 27.) AT&T Services and AT&T Mobility were represented by the same counsel. (*Pro Hac Vice* Appl. & Order, ECF 8, 13.)

Before the district court decided the motion to dismiss, AT&T Services was removed from the action. On March 1, 2019, AT&T Mobility and AT&T Services filed a Joint Stipulation of Dismissal of AT&T Services, Inc. pursuant to Rule 41(a)(1)(A)(ii), signed by all of the parties. (Stipulation of Dismissal, ECF 32.) Allen agreed to dismiss all claims in the First Amended Complaint against Defendant AT&T Services without prejudice. (*Id.*) Then, on June 14, 2019, Allen filed the Second Amended Complaint, adding Webb as a plaintiff and naming only AT&T

Suppl. App. 083

Mobility as defendant. (Second Am. Compl., ECF 50.)  AT&T Mobility filed its answer to the Second Amended Complaint on July 26, 2019. (Answer, ECF 53.)

The parties engaged in discovery, which ended in or around July 2020. Allen and Webb moved for class certification of their PDA claims against AT&T Mobility pursuant to Rule 23 of the Federal Rules of Civil Procedure. On March 21, 2022, the district court denied Plaintiffs' motion for class certification. (Order, ECF 134.) Allen and Webb no longer were putative class representatives as a result. Settlement negotiations between the parties followed. (*See* Joint Mot. Requesting Settlement Conf., ECF 150; Order, ECF 151 (referring case to settlement conference); and Min. Entry, ECF 158 (affirming that conference occurred).)

The district court directed the clerk to "administratively close" the case on December 20, 2022, and directed the parties to "file a dismissal or other filing disposing of this case …." (Order, ECF 159.) On January 23, 2023, Allen's and Webb's counsel ended the action. She filed a stipulation dismissing with prejudice all of the claims against AT&T Mobility with the district court, pursuant to Rule 41(a)(1)(A)(ii). The stipulation of dismissal was signed by counsel for plaintiffs Webb and Allen and by counsel for AT&T Mobility. (Stipulation of Dismissal, ECF 162.)

### *The Motion to Intervene*

One day after the action terminated, Appellant Amanda Curlee filed a motion to intervene in the district court pursuant to Rule 24 of the Federal Rules of Civil Procedure. (Mot. to Intervene, ECF 163.) She urged the district court to "rule on an expedited basis" because her time to appeal was running from the January 23, 2023 stipulated dismissal, which she concedes was self-executing and "terminated" Allen and Webb's ability to appeal the denial of class certification. (*Id.* at 1, 6.)

Curlee was aware of the underlying action earlier, however, and could have sought to intervene before the action terminated. According to her complaint in intervention, Curlee submitted a charge of discrimination to the EEOC one week earlier, on January 17, 2023, alleging claims similar to those asserted by Allen and Webb. (ECF 163-1 at 9-10, 22.)

The district court granted Curlee's motion to intervene on February 13, 2023. (Order, ECF 166.) Curlee filed a notice of appeal, and this Court *sua sponte* questioned whether it has jurisdiction over the appeal. (Jurisdictional Questions, Doc. 18.) *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (observing "[w]hen the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for purposes of correcting the error of the lower court in entertaining the suit." (citations omitted).)

## ARGUMENT

This Response addresses the Court's March 15, 2023 notice directing the parties to answer two questions:

(1) "whether the January 23, 2023 stipulation of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) was valid and effective to dismiss the claims against Defendant AT&T Mobility Services LLC, given that the stipulation appears to contain signatures for the plaintiffs and only one of the two defendants who appeared in this action"; and

(2) "[a]ssuming that the January 23, 2023 stipulation of dismissal was valid, … whether the district court had jurisdiction to consider and grant the putative class member's motion to intervene after the case was rendered final by the January 23, 2023 joint stipulation of voluntary dismissal."

## I.    Yes. The stipulation of dismissal was valid and effective.

Allen and Webb were the only plaintiffs and AT&T Mobility was the only defendant before the district court when the January 23, 2023 stipulation was filed. AT&T Services previously appeared specially to contest personal jurisdiction but was then removed from the case by Allen and Webb with the filing of the Second Amended Complaint. AT&T Services' signature was not required on the January 23, 2023 stipulation. Further, the record before the district court demonstrates clearly

the intent of all parties—Allen, Webb, AT&T Mobility and AT&T Services—that the action be terminated.

Therefore, this Court should hold that the January 23, 2023 stipulation of dismissal was valid and effective when filed.

### A.    AT&T Services was no longer a party and never "appeared" for purposes of Rule 41(a)(1).

"The purpose of Federal Rule of Civil Procedure 41(a)(1) is to permit the plaintiff to dismiss an action voluntarily when no other party will be prejudiced." 9 Fed. Prac. & Proc. Civ. § 2362 (4th ed.) (citing cases). The right of a plaintiff to dismiss, which was "far-reaching at common law," is limited by "safeguards" built into Rule 41 "to ensure that the dismissal is truly voluntary." *Id.* (citations omitted.) Those safeguards were adequately satisfied here.

The words "all parties who have appeared" in Rule 41(a)(1)(A)(ii) should not be interpreted to include a former party who has specially appeared in the case only to contest personal jurisdiction and who was removed by amendment years before the stipulation was filed. This Court has never interpreted the words in that manner.[1] Nor should it. Such an interpretation would be inconsistent with the structure, history and purpose of the rule.

---

[1] This Court's recent unpublished decision in *Hardnett v. Equifax Info. Servs., LLC*, No. 21-13195, 2023 WL 2056285, at *1–2 (11th Cir. Feb. 17, 2023), does not dictate a contrary result. In that case the defendant at issue answered the complaint and the record did not clearly reflect that all parties intended the case to be terminated.

In its original form, Rule 41(a)(1) permitted plaintiffs to withdraw an action without court order before the defendant answered, or by stipulation signed by all parties who "appear[ed] generally." *See* Fed. R. Civ. P. 41 Advisory Committee Notes (1946); *cf Jones v. Gould*, 141 F. 698, 698–99 (C.C.S.D. Ohio 1905) (recognizing the distinction between an appearance specially to contest personal jurisdiction and a general appearance that places the party before the court), *aff'd*, 149 F. 153 (6th Cir. 1906). This indicated that the consent of a defendant who only specially appeared to contest personal jurisdiction was unnecessary.

The 1946 Amendments to Rule 41(a)(1)(A) expanded safeguards for defendants but did not limit a plaintiff's right to dismiss unilaterally against a defendant who had only contested personal jurisdiction. The amendment gave service of a motion for summary judgment, which can come before an answer, the same preclusive effect as an answer. Fed. R. Civ. P. 41 Advisory Committee Notes (1946). The word "generally" was removed from Rule 41(a)(1)(A)(ii) explicitly "to avoid confusion and to conform with the elimination of the need for special appearances by original Rule 12(b)." Fed. R. Civ. P. 41 Advisory Committee Notes (1946). Nothing in the Notes of Advisory Committee or the case law suggests that removal of the word "generally" was intended to require consent of a defendant like AT&T Services that only specially appeared to contest the district court's jurisdiction over it. (Mot. to Dismiss, ECF 26.)

This conclusion is further supported by the fact that Rule 15 permits plaintiffs to drop parties, too, as if they had never been named. Allen and Webb filed the Second Amended Complaint and removed AT&T Services from the case before the district court determined personal jurisdiction. (Second Am. Compl., ECF 50.) As a result, the prior allegations against AT&T Services "became a legal nullity." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (reversing district court for considering documents attached to a prior complaint on a Rule 12(b)(6) motion directed to an amended complaint omitting those attachments). Interpreting Rule 41(a)(1)(A)(ii) to require a former party's (i.e. AT&T Services') signature to effect dismissal of claims against the remaining defendant (i.e. AT&T Mobility) would undermine plaintiffs' right under Rules 15 and 41(a)(1), and would serve no legitimate purpose.

**B.    Rule 41(a)(1)(A)(ii) permits the plaintiff voluntarily to dismiss an action where the intent of the parties is manifest to the court.**

The plaintiffs' right under Rule 41(a)(1)(A)(ii) to dismiss the action by stipulation has been referred to as "absolute," 8 Moore's Federal Practice – Civil § 41.34, n. 4 (citing cases), and "unconditional." *In re Wolf*, 842 F.2d 464, 466 (D.C. Cir. 1988) (granting writ of mandamus and directing district court to vacate order imposing a condition on the parties' stipulation of dismissal) (citing *Gardiner v. A.H. Robins Co., Inc.*, 747 F.2d 1180, 1190 (8th Cir. 1984).) On the record before the

district court, there is no reason to deprive Allen and Webb of the right to terminate the action against AT&T Mobility.

This Court and others across the country have observed that a stipulation of voluntary dismissal can be effective where the parties' intent is manifest, even in the absence of strict compliance with the Rule. *See In re Furlong*, 885 F.2d 815, 817–18 (11th Cir. 1989) (agreeing that voluntary dismissal without a signed stipulation is possible, provided "the spirit of the rule" is otherwise satisfied) (citing *Oswalt v. Scripto*, *Inc*., 616 F.2d 191, 194–95 (5th Cir. 1980) (additional citation omitted)); *see also Role v. Eureka Lodge No., 434*, 402 F.3d 314 (2d Cir. 2005) (upholding as enforceable an oral stipulation of dismissal, even though it was never reduced to writing or signed); *Boran v. United Migrant Opportunity Servs., Inc.*, 99 F. App'x 64, 66–67 (7th Cir. 2004) ("[L]iteral compliance with the [Rule 41(a)(1)(A)(ii)] stipulation requirement has not been required where the agreement of all parties is apparent." (citation omitted)); *Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998) (relaxing the written stipulation requirement when the parties' agreement was "unequivocal and in the record" (citation omitted)); *Eitel v. McCool*, 782 F.2d 1470, 1472–73 (9th Cir. 1986) (holding that an unqualified oral stipulation of dismissal made in open court satisfied Rule 41(a)(1)(A)(ii), even where no formal stipulation was signed by the parties); *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1199 (10th Cir. 1974) (accepting as valid and effective an oral stipulation made in

10

open court, "even though no formal stipulation of dismissal was signed by all of the parties to the action").

Here, there can be no doubt that the parties intended to terminate the action against AT&T Mobility, and that non-party AT&T Services was aware of the parties' intent and consented. The January 23, 2023 stipulation was signed by two attorneys (one who had appeared in this case at all times for the plaintiffs and one who had appeared in this case at all times for the defendants). (Stipulation of Dismissal, ECF 32, 162.) Moreover, one of the attorneys appearing for the defendants, Sheldon W. Snipe, is listed in the 2023 stipulation as "AVP Senior Legal Counsel AT&T Services, Inc." (ECF 162.)

No party will be prejudiced if this Court finds that the January 23, 2023 stipulation terminated the action with prejudice as to AT&T Mobility. Even if AT&T Mobility and AT&T Services had not been jointly represented, which they were, there is no conceivable prejudice to any party or to AT&T Services from the fact that the action was being terminated against AT&T Mobility with prejudice. Allen and Webb previously manifested their intent to drop AT&T Services without prejudice, and AT&T Services and AT&T Mobility agreed. Notably, none of the parties ever named in this case can assert any prejudice from the termination of the underlying action.

Indeed, a contrary conclusion would defeat the parties' clear intentions.

11

## II. No. The district court did not have jurisdiction to consider and grant Curlee's motion to intervene.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As the party asserting jurisdiction, Curlee bears the burden of establishing that it exists. *Id.* She cannot do so.

By dismissing the action as they did, Allen and Webb waived their right to appeal the denial of class certification. *See Shores v. Sklar*, 885 F.2d 760, 762 (11th Cir. 1989) (holding that a plaintiff who consents to judgment without reserving the right to appeal waives their right to appeal the denial of class certification). The filing of the stipulation of dismissal also deprived the district court of jurisdiction over the action. Therefore, at the time Curlee filed her motion to intervene, there was no action pending in the district court and no reservation of jurisdiction for any purpose.

An existing action is a precondition for intervention. Absent a reservation of jurisdiction, there is none after the filing of a Rule 41(a)(1)(A)(ii) stipulation. The Supreme Court's decision in *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), is not to the contrary, and the D.C. Circuit's decision in *In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017), holding that a district court may grant post-dismissal motions to intervene, is incorrect.

Therefore, this Court should hold that the district court did not have jurisdiction to consider and grant Curlee's motion to intervene.

**A.    The filing of the stipulation of dismissal deprived the district court of jurisdiction to consider and grant Curlee's motion.**

This Court's decision in *Anago* compels the conclusion that the district court lacked jurisdiction to consider and grant Curlee's post-dismissal motion to intervene.

The district court in that case signed a consent judgment 24 days after the parties filed a Rule 41(a)(1)(A)(ii) stipulation of dismissal. Thereafter, the district court conducted further proceedings that prompted an appeal. Like here, this Court *sua sponte* questioned the district court's jurisdiction. The question presented in *Anago* was specific, "whether a district court order entered after the filing of a Rule 41(a)(1)(A)(ii) stipulation *can have any effect*." 677 F.3d at 1279 (emphasis added).

The Court resolved what it described as "tension" between the principle that the stipulation of dismissal "strips the district court of jurisdiction," and the Supreme Court's decision in *Kokkonen* to give effect to a post-dismissal order. *Id. Anago* correctly took a narrow view of jurisdiction, placing the burden on the parties to establish that jurisdiction exists after the stipulation is filed.

This Court reversed the district court in *Anago* and explained that "[a] district court *loses all power* over determinations of the merits of a case when it is voluntarily dismissed." *Id.* (citing *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (5th Cir. 2010) (per curiam) (emphasis added)). Addressing the particulars of the case, the Court explained that to retain jurisdiction over a settlement after the filing of a stipulation of dismissal, either (1) the court must issue the order retaining

13

jurisdiction under *Kokkonen* prior to the filing of the stipulation, or (2) the parties must condition the effectiveness of the stipulation on the court retaining jurisdiction. *Id.* at 1280.

Here, the district court issued no order retaining jurisdiction before the stipulation was filed. Nor did Allen and Webb condition the effectiveness of the stipulation on the court retaining jurisdiction for any purpose. As a result, there was no action pending in the district court when Curlee filed her motion to intervene. *Cf. Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989) (observing that "[i]ntervention under Rule 24 presumes that there is a justiciable case into which an individual wants to intervene.").[2] Therefore, *Anago* compels the conclusion that the district court's order granting Curlee's motion to intervene was invalid.[3]

_____

[2] The Second Circuit similarly observed that "intervention will not be permitted to breathe life into a 'nonexistent' law suit[,]" adding that "this rule is so deeply entrenched in our jurisprudence that it is an axiomatic principle of federal jurisdiction in every circuit to have addressed the question." *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149, 160–61 (2d Cir. 2012) ((quoting *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965), and citing *Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950); *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005); *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974); *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926); *Brictson Mfg. Co. v. Woodrough*, 284 F. 484, 487 (8th Cir. 1922).) *See also Salem Pointe Cap., LLC v. Bep Rarity Bay LLC*, 854 F. App'x 688, 706–07 (6th Cir. 2021) (finding a valid stipulation of dismissal "deprived the district court of jurisdiction to consider the motion to intervene"); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) ("Since there is no longer any action in which appellants can intervene, judicial consideration of the [motion to intervene] would be fruitless.").

[3] District courts around the country have concluded that there is no jurisdiction to consider a motion to intervene following the filing of a stipulation of dismissal. *See*

Even if *Anago* did not compel this result, which it does, Curlee's post-dismissal motion to intervene does not fall into either of the two scenarios described by the Supreme Court in *Kokkonen*: (1) to permit resolution of claims that are "in varying respects and degrees, factually interdependent"; or (2) to enable the court to function and "effectuate its decrees." 511 U.S. 375, 378–80 (1994).

*Peacock v. Thomas*, 516 U.S. 349 (1996), precludes Curlee's reliance on the first scenario, where the Court stated that "the ability to resolve simultaneously

---

*Silber v. Airbnb, Inc.*, No. 1:18-cv-01884-RGA, 2019 WL 3997098, at *1 (D. Del. Aug. 23, 2019) ("'[O]nce a case is dismissed pursuant to Rule 41(a)(1)(A)(ii), a motion to intervene is rendered a nullity.") (citing *Fort Sill Apache Tribe of Okla. v. United States*, No. Civ-08-0541-F, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008)); *Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-02252-CRB, 2016 WL 4269093, at *1 (N.D. Cal. Aug. 15, 2016) ("Because this action automatically terminated upon the filing of the Rule 41(a)(1)(A)(ii) notice, the Court lacks jurisdiction to adjudicate the Proposed Intervenors' Motion to Intervene."); *Jou v. Kimberly-Clark Corp.*, No. 13-cv-03075-JSC, 2015 WL 4537533, at *1–2 (N.D. Cal. July 27, 2015) (finding no jurisdiction to entertain motion to intervene once Rule 41(a)(1) dismissal is filed); *Homesite Ins. Co. of Midwest v. Robards*, No. 3:13-cv-515-TAV-CCS, 2014 WL 359823, at *2 (E.D. Tenn. Feb. 3, 2014) ("The Court lacks jurisdiction over motions to intervene . . . because 'there is no "case or controversy" pending in light of the dismissal'" filed nine days prior to motion to intervene.) (citation omitted)); *Reagan v. Fox Navigation, LLC*, No. 302CV627CFD, 2005 WL 2001177, at *1 (D. Conn. Aug. 17, 2005) ("[C]ourts have ruled that once the parties have filed a Rule 41(a)(1)[A](ii) stipulation of dismissal, there is no longer a pending case or controversy into which a non-party may intervene." (citation omitted)); *GMAC Com. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 213 F.R.D. 150, 150–51 (S.D.N.Y. 2003) (denying motion to intervene because "there is no 'case or controversy' pending in light of the [Rule 41(a)(1)(ii)] dismissal" (citation omitted)); *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 620–21 (D. Mass. 1988) ("Because the stipulations of dismissal were effective when filed, there is no action in which to intervene and the motions to intervene are moot.").

factually intertwined issues vanished" once the original action terminated. *Id.* at 355. The second scenario is unavailable, too. Curlee is not seeking to effectuate a district court decree. Instead, she seeks the reversal of one.

Neither Allen nor Webb can proceed with the action to challenge the district court's class certification decision. *See Shores*, *supra*. It would be an anomalous application of jurisdictional principles for this Court to hold that a district court has jurisdiction allow a non-party to do so, after the action terminated.

**B.     *United Airlines, Inc. v. McDonald* does not support a finding of jurisdiction.**

In its notice posing the jurisdictional questions, the Court cited *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) ("*McDonald*"). Respectfully, *McDonald* did not address the question presented here. Nor does it support a finding of jurisdiction over Curlee's motion to intervene.

The Supreme Court granted certiorari in *McDonald* to resolve a different issue: whether the motion to intervene "was 'timely' under Rule 24" of the Federal Rules of Civil Procedure. 432 U.S. at 387, 391. In a five to three decision, the Court held that McDonald's motion was timely under Rule 24. Neither the parties nor the Court in *McDonald* raised the question presented here, which is whether a district court has *jurisdiction* to decide such a motion after a stipulation of dismissal is filed. Therefore, this Court writes on a clean slate. *See United States v. Florida*, 938 F.3d 1221, 1226 n.4 (11th Cir. 2019) ("We do not consider the Supreme Court's silence

on an issue that was not presented dispositive."), *reh'g denied sub nom. United States v. Sec'y Florida Agency for Health Care Admin.*, 21 F.4th 730 (11th Cir. 2021), *and cert. denied sub nom. Florida v. United States*, 143 S. Ct. 89 (2022).

### C.    The holding of *In re Brewer* that a district court may grant post-dismissal motions to intervene is inconsistent with *Anago* and incorrect.

In *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1326 n. 2 (11th Cir. 2017), this Court declined to answer the specific question presented here. It acknowledged, however, the D.C. Circuit's holding in *In re Brewer* that a district court has jurisdiction to grant a post-dismissal motion to intervene by putative class members. Respectfully, that court's conclusion is inconsistent with *Kokkonen* and *Anago* for the reasons described above, as well as the conclusion of district courts across the country as noted in footnote 3 *supra*. It is wrong for three other reasons, too.[4]

First, *In re Brewer* incorrectly attributed a jurisdictional holding to the Supreme Court's decision in *McDonald*. *See In re Brewer*, 863 F.3d at 868 (referring to the jurisdictional question and citing *McDonald* for the proposition that intervention by putative class members after a court dismissal "is certainly available"). This reads too much into the Supreme Court's decision, especially given the Supreme Court's explicit statement that it was interpreting Rule 24 of the Federal Rules of Civil Procedure. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

---

[4] The Fifth Circuit's decision in *Odle v. Flores*, 899 F.3d 342 (5th Cir. 2017), also cited in *Love*, is incorrect for the reasons described herein.

89, 119 (1984) ("When questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (citations omitted).)

Second, *In re Brewer* ignores the Supreme Court's more recent admonition, *in a case presenting a jurisdictional question* that "[i]t is to be presumed that a cause lies outside" federal court jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted). Instead of placing the burden on the proposed intervenor, the court in *In re Brewer* presumed jurisdiction for a non-party and considered whether the Rule 41(a)(1)(A)(ii) stipulation had the effect of eliminating it. *In re Brewer*, 863 F.3d at 868–70. In *Anago,* this Court reasoned otherwise—that is, the filing of the stipulation of dismissal eliminated jurisdiction, and, in order to preserve any post-dismissal jurisdiction, the parties and the court needed affirmatively to do so. *Anago*, 677 F.3d at 1279–80. It would be incongruous to apply the opposite reasoning, especially for a non-party who sat on her rights for years.

Third, the court in *In re Brewer* identified no particular basis for finding jurisdiction after an action terminated. Instead, it argued that "depriv[ing] the court of jurisdiction … 'would frustrate the objectives of class actions' and 'waste … judicial resources by stimulating successive suits' 'contrary to sound judicial

administration.'" 863 F.3d at 870 (quoting *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338–39 (1980)). This reasoning runs afoul of the Rules Enabling Act, as well as the Supreme Court's reasoning in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).

The Rules Enabling Act provides that the Federal Rules of Civil Procedure shall not be interpreted to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Curlee concedes that she has no substantive right to pursue her claims absent intervention under Rule 24 of the Federal Rules of Civil Procedure. (Mot. to Intervene, ECF 163 at 10.) She could have filed her own action before or after class certification was denied. She could have sought to intervene in this case before the action terminated. She did none of those things. So she cannot rely on Rule 24 to revive a terminated action. *Cf. China Agritech, Inc.*, 138 S. Ct. at 1809-1810 (rejecting the argument that Rule 23 of the Federal Rules of Civil Procedure can provide a basis to revive time-barred class claims).

In *China Agritech, Inc.*, the Supreme Court considered and rejected policy arguments similar to those supporting the D.C. Circuit's decision in *In re Brewer*. The respondent Resh filed a third class action, outside the statute of limitations, ostensibly to represent the same class others attempted to certify in two prior cases. Resh argued that he should be permitted to do so because tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), extended the statute of

limitations. "[D]eclining to toll the limitation period for successive class suits," Resh argued, "will lead to a 'needless multiplicity' of protective class-action filings." 138 S. Ct. at 1810.

Writing for a unanimous Court, Justice Ginsburg rejected this policy argument. The Court explained:

> The plaintiff who seeks to preserve the ability to lead the class … has every reason to file a class action early, and little reason to wait in the wings, giving another plaintiff first shot at representation. … Indeed, multiple filings may aid a district court in determining, early on, whether class treatment is warranted, and if so, which of the contenders would be the best representative.

*Id.* at 1810–11.

Like the plaintiff in that case, Curlee's purpose for pursuing this matter is ostensibly to represent the putative class under Rule 23 of the Federal Rules of Civil Procedure, four years after the original action was filed. (ECF 163 at 1, 10, 12.) As the Supreme Court explained in *China Agritech, Inc.*, however, efficiency "favors early assertion of competing class representative claims." 138 S. Ct. at 1807. For that reason, the Supreme Court explained that Rule 23 could not, consistent with the

Rules Enabling Act, be used to revive class claims. Similar here, Rule 24 should not be interpreted to give rise to jurisdiction where none otherwise exists.

Therefore, this Court should not follow the holding of *In re Brewer* and instead should apply *Anago* and dismiss Curlee's appeal for lack of jurisdiction.

## CONCLUSION

For the reasons explained above, this Court should hold that (a) the January 23, 2023 stipulation of dismissal was valid and effective to dismiss the claims against AT&T Mobility, and (b) the district court did not have jurisdiction to consider and grant Curlee's motion to intervene after the case was rendered final by the January 23, 2023 stipulation of dismissal.

Dated: March 29, 2023

Respectfully submitted,

Kenneth W. Gage
PAUL HASTINGS LLP
200 Park Avenue, 30th Floor
New York, New York 10166
Tel: (212) 318-6000
kennethgage@paulhastings.com

Christine L. Cedar
PAUL HASTINGS LLP
2050 M Street N.W.
Washington, D.C. 20036
Tel: (202) 551-1700
christinecedar@paulhastings.com

*Attorneys for Appellee*
*AT&T Mobility LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B):

This document contains 5,111 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

This document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14pt Times New Roman font.

Dated:    March 29, 2023

_____

Kenneth W. Gage

*Attorney for Appellee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 29th day of March, 2023, I have electronically filed the foregoing APPELLEE AT&T MOBILITY LLC'S RESPONSE TO JURISDICTIONAL QUESTIONS with the Clerk of the Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all attorneys of record.

Kenneth W. Gage

*Attorney for Appellee*

# TAB 6

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

AMANDA CURLEE,

Plaintiff-Intervenor,

v.                                                          No. 23-10572-HH

AT&T MOBILITY SERVICES LLC
a/k/a/ AT&T MOBILITY LLC,

Defendant.

## APPELLANT'S RESPONSE TO JURISDICTIONAL QUESTIONS

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Intervenor-Appellant Amanda Curlee (the plaintiff-intervenor in *Allen v. AT&T Mobility Services LLC*, N.D. Ga. Case No. 1:18-cv-03730-WMR) is an individual with no corporate affiliations.

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned hereby discloses the following list of known persons, associated persons, firms, partnerships, and corporations that have an interest in the outcome of this appeal:

1. Ray, William M., II (United States District Court Judge for the Northern District of Georgia)

2. American Civil Liberties Union Foundation of Georgia, Inc. (counsel for Intervenor-Appellant)

3. American Civil Liberties Union, Women's Rights Project (counsel for Intervenor-Appellant)

4. AT&T Inc., (T) (corporate affiliate of AT&T Mobility Services LLC)

5. AT&T Mobility Services LLC (Defendant-Appellee)

6. AT&T NCWS Holdings, Inc. (corporate owner of New Cingular Wireless Services, Inc.)

7. AT&T Teleholdings, Inc. (corporate owner of SBC Telecom, Inc.)

i

8. BellSouth Mobile Data, Inc. (corporate owner of SBC Telecom, Inc.)

9. Calvo-Friedman, Jennesa (counsel for Intervenor-Appellant)

10. Cedar, Christine (counsel for Defendant)

11. Cohen Milstein Sellers & Toll PLLC (counsel for Intervenor-Appellant)

12. Cricket Holdco Inc. (corporate owner of AT&T Mobility Services LLC)

13. Curlee, Amanda (Intervenor-Appellant)

14. Gage, Kenneth W. (counsel for Defendant)

15. Isaacson, Cory (counsel for Intervenor-Appellant)

16. Kotagal, Kalpana (counsel for Intervenor-Appellant)

17. Leap Wireless International, Inc. (corporate owner of Cricket Holdco Inc.)

18. López-Delgado, Andrés M. (counsel for Intervenor-Appellant)

19. LWI Holdco (corporate owner of Leap Wireless International, Inc.)

20. Maturi, Alex J. (counsel for Defendant)

21. New Cingular Wireless Services, Inc. (corporate owner of LWI Holdco)

22. Paul Hastings LLP (counsel for Defendant)

23. SBC Telecom, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

24. Sellers, Joseph M. (counsel for Intervenor-Appellant)

25. Snipe, Sheldon W. (counsel for Defendant)

26. Srinivasan, Harini (counsel for Intervenor-Appellant)

27. Tabacco Mar, Ria (counsel for Intervenor-Appellant)

**28.** Thomas, Gillian L. (counsel for Intervenor-Appellant)

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ...................................................................i

TABLE OF AUTHORITIES ...................................................................vi

RESPONSE TO JURISDICTIONAL QUESTIONS ................................1

INTRODUCTION......................................................................................1

BACKGROUND .......................................................................................5

ARGUMENT .............................................................................................8

I.    The stipulated dismissal was valid without signature from AT&T

Services, Inc., which never appeared as a party..................................8

II.   The district court had jurisdiction to hear Curlee's motion to

intervene after final judgment. ...........................................................11

  A.    Putative class members may intervene after final judgment to

  appeal the denial of class certification under *United Airlines, Inc. v.*

  *McDonald.* .......................................................................................12

  B.    The district court had jurisdiction to hear Curlee's *McDonald*

  motion after final judgment through voluntary stipulated

  dismissal..........................................................................................15

iv

C.   The concurring opinion in *Love* explains why district court jurisdiction over *McDonald* motions is consistent with Eleventh Circuit precedent. ............................................................... 18

D.   Other circuits have expressly recognized district court jurisdiction over *McDonald* motions following a voluntary stipulated dismissal. ....................................................... 23

CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*In re Esteva*, 60 F.4th 664 (11th 2023)....................................................10

*Shores v. Sklar*, 885 F.2d 760 (11th Cir. 1989)......................................21

*Odle v. Flores*, 899 F.3d 342 (5th Cir. 2017)..........................................23

*Anago Franchising, Inc. v. Shaz, LLC*,

    677 F.3d 1272 (11th Cir. 2012)................................................... passim

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).........................................18

*Armstrong v. Martin Marietta Corp.*,

    138 F.3d 1374 (11th Cir. 1998)....................................................20, 21

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)..................10

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,

    142 S. Ct. 1002 (2022).............................................................3, 12, 18

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) ...................3, 14, 15

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .........................15

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,

    445 U.S. 326 (1980)......................................................................14, 17

*Hardnett v. Equifax Information Services, LLC, et al.*, No. 21-13195,

    2023 WL 2056285 (11th Cir. Feb. 17, 2023).........................................8

Suppl. App. 110

*Harrison v. Prather*, 404 F.2d 267 (5th Cir. 1968) .................................. 9

*In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017) .................................... 18, 24

*Kokkonen v. Guardian Life Insurance Co. of America*,

    511 U.S. 375 (1994)....................................................................... passim

*Love v. Wal-Mart Stores, Inc.*,

    865 F.3d 1322 (11th Cir. 2017)............................................. 4, 11, 19, 20

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,

    939 F.3d 1145 (11th Cir. 2019)............................................................ 16

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)......................................... 14

*Odle v. Wal-Mart Stores, Inc.*, No. 3:11-CV-02954-O,

    2016 WL 10459787 (N.D. Tex. Mar. 17, 2016)................................... 23

*Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*,

    718 F. App'x 786 (11th Cir. 2017)......................................................... 9

*PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299 (11th Cir. 2016).........16

*Rice v. Ford Motor Co.*, 88 F.3d 914, 916 (11th Cir. 1996) .................... 16

*Romasanta v. United Airlines, Inc.*, 537 F.2d 915 (7th Cir. 1976).........13

*State of Alaska v. Suburban Propane Gas Corp.*,

    123 F.3d 1317 (9th Cir. 1997)............................................................. 24

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ..................... 3, 14

vii

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) ............... passim

*Wrightsell v. Cook Cnty., Ill.*, 599 F.3d 781 (7th Cir. 2010) ...................24

*Yesh Music v. Lakewood Church*, 727 F.3d 356 (5th Cir. 2013).............16

**Rules**

Federal Rule of Civil Procedure 12 .........................................................9

Federal Rule of Civil Procedure 23(f) .....................................................6

Federal Rule of Civil Procedure Rule 24 .................................................7

Fed. R. Civ. P. 41(a)(1)(i)........................................................................16

Federal Rule of Civil Procedure 41(a)(1)(A)(ii).............................. passim

Federal Rule of Civil Procedure 60(b)....................................................16

## RESPONSE TO JURISDICTIONAL QUESTIONS

On March 15, 2023, the Court asked the parties to answer two jurisdictional questions:

1. "[W]hether the January 23, 2023 stipulation of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) was valid and effective to dismiss the claims against Defendant AT&T Mobility Services LLC, given that the stipulation appears to contain signatures for the plaintiffs and only one of the two defendants who appeared in this action"; and

2. "[W]hether the district court had jurisdiction to consider and grant the putative class member's motion to intervene after the case was rendered final by the January 23, 2023 joint stipulation of voluntary dismissal."

The answer to both questions is "yes."

## INTRODUCTION

This Court has jurisdiction over this appeal because the January 23, 2023, stipulated dismissal was valid and effective to dismiss all claims against AT&T Mobility Services, LLC, ("AT&T Mobility") the only defendant that appeared as a party in the case, and the district

1

court had jurisdiction after that dismissal to consider and grant a putative class member's motion to intervene for the purpose of appealing the denial of class certification.

First, the January 23, 2023 stipulation of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) complied with the text of the rule and this Court's recent precedent because it was signed by all parties who appeared in the case. AT&T Services, Inc. was named as a defendant in the plaintiffs' complaint, but rather than appear it moved *solely* to contest personal jurisdiction and was voluntarily dismissed by stipulated dismissal on March 1, 2019 without ever becoming a party to the action. Therefore, the signature of AT&T Services, Inc. was not required on the stipulation dismissing all claims against AT&T Mobility.

Second, the right of "a putative class member [to] intervene, for the purpose of appealing the denial of a class certification motion, after the named plaintiffs' claims have been satisfied and judgment entered in their favor" has become a bedrock principle of the Supreme Court's jurisdictional jurisprudence since *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 385 (1977) was decided nearly a half century ago. *See U.S.*

*Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980) (citing *McDonald*, 432 U.S. at 385); *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022) (reaffirming *McDonald*). Accordingly, a district court has jurisdiction to effectuate the right of putative class members to intervene and appeal the denial of class certification after final judgment has been entered on the individual claims of the named plaintiffs, even though it no longer has plenary jurisdiction over the case.

That the final judgment on the individual claims of the named plaintiffs in this case took the form of a stipulation of voluntary dismissal does not eliminate the district court's jurisdiction to ensure "effective review after final judgment at the behest of . . . intervening class members" through the procedure approved of in *McDonald. See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). Indeed, the availability for putative class members to make a *McDonald* motion in district court is an essential ingredient to the Supreme Court's determination that, for an order denying class certification, an appeal from final judgment is sufficiently effective.

3

As Judge Anderson recognized in his concurrence in *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322 (11th Cir. 2017), this Court's decision in *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272 (11th Cir. 2012), despite its broad dicta, is not to the contrary. *Anago* considered the district court's jurisdiction to enforce a settlement agreement between franchisor and its former subfranchisor that was not made part of a court order. Although the parties stipulated to dismissal, that case did not involve the class action context. Because that settlement agreement was "merely a private contract" and "ha[d] nothing to do with the underlying case," *id.* at 1281 (quotation marks omitted), its enforcement was outside of the district court's jurisdiction recognized in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 378, 382 (1994). In contrast, a putative class member's motion to intervene falls squarely within the jurisdiction a district court enjoys after final judgment: it both facilitates "the disposition by a single court" of the claims of putative class members that are "factually interdependent" with the named plaintiffs, and it allows the district court "to function successfully" and meet its obligations to protect absent class members. *Kokkonen*, 511 U.S. at 378.

4

Finally, several circuit courts that have considered the issue have expressly recognized that, following a stipulated dismissal, the district court has jurisdiction to consider a motion to intervene from a putative class plaintiff for the purpose of appealing the denial of class certification.

Because the answer to both of this Court's jurisdictional questions is "yes," this appeal is properly before this Court.

## BACKGROUND

This case was filed as a putative class action in 2018 against AT&T Mobility and AT&T Services, Inc. The two named plaintiffs who originated the case alleged that AT&T Mobility, their former employer, discriminated against them and other pregnant sales associates through its point-based 2015 Sales Attendance Guidelines ("SAG") policy, and associated attendance and discipline policies.

AT&T Services, Inc. responded to the complaint by contesting personal jurisdiction. ECF No. 26.[1] In contrast, AT&T Mobility filed an answer. ECF No. 27. On March 1, 2019, before AT&T Services, Inc. appeared as a party, the named plaintiffs and AT&T Mobility filed a

_____

[1] All ECF cites are to the district court docket.

5

joint stipulation dismissing all claims against AT&T Services, Inc.

pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 32.

The named plaintiffs continued litigating the case as a putative

class action against AT&T Mobility for four years. On March 21, 2022,

the district court denied class certification. ECF No. 134. The named

plaintiffs sought interlocutory review of that decision pursuant to

Federal Rule of Civil Procedure 23(f), ECF No. 138, which this Court

declined, ECF No. 142. On January 23, 2023, the two named plaintiffs

and AT&T Mobility signed and entered a stipulated dismissal of all

claims against AT&T Mobility. ECF No. 162. That extinguished the

named plaintiffs' ability to appeal the denial of class certification, which

they otherwise would have retained had they continued litigating their

claims through summary judgment or trial.

Intervenor-plaintiff Amanda Curlee, Appellant here, was a

member of the putative class because she was pregnant while employed

by AT&T Mobility and was denied excused absences and disciplined for

accruing attendance "points" under the SAG policy for pregnancy-

related absences during the class period. As a putative class member,

Curlee had reasonably relied upon the named plaintiffs to protect her

interests as a member of the class. This held true until the named plaintiffs settled their individual claims and gave up their right to appeal the denial of class certification. Just one day after the stipulation of voluntary dismissal was entered with the district court, Curlee filed her motion to intervene for the purpose of appealing the denial of class certification. ECF No. 163. Thus, she acted immediately after the named plaintiffs could no longer adequately protect her interests as a class member.

The district court recognized precedent establishes that absent putative class members may intervene at the conclusion of litigation for the purpose of appealing a denial of class certification. ECF No. 166 at 3-4. The court thus considered Curlee's motion to intervene and granted it on February 13, 2023, finding that she satisfied all requirements for intervention as of right pursuant to Federal Rule of Civil Procedure Rule 24(a)(2) and permissive intervention pursuant to Rule 24(b). ECF No. 166 at 4-7.

On February 15, 2023, Curlee filed her Notice of Appeal, ECF 167, well before 30 days had elapsed from the filing of the stipulated dismissal on January 23, 2023, ECF No. 162. On March 15, 2023, the

Court asked the parties to answer two jurisdictional questions regarding the validity of the January 23, 2023 stipulation of voluntary dismissal and the district court's jurisdiction following that dismissal to consider and grant Curlee's motion to intervene to appeal the earlier denial of class certification.

## ARGUMENT

For the reasons that follow, the January 23, 2023 stipulation was valid and effective, and the district court had jurisdiction to consider and grant Curlee's motion to intervene. Thus, Curlee's appeal is properly before this Court.

## I. The stipulated dismissal was valid without signature from AT&T Services, Inc., which never appeared as a party.

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) requires "a stipulation of dismissal" to be "signed by all *parties* who have *appeared.*" *Hardnett v. Equifax Information Services, LLC*, *et al.*, No. 21-13195, 2023 WL 2056285, at *1 (11th Cir. Feb. 17, 2023) (quoting Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). The January 23, 2023, stipulation of voluntary dismissal under Rule 41(a)(1)(A)(ii) was valid and effective because it was signed by all "parties" that ever "appeared" in this case. AT&T Services, Inc. never appeared. AT&T Services, Inc.

8

responded to the complaint solely by contesting personal jurisdiction under Rule 12(b)(2), ECF No. 26, and thus never appeared as a party before it was dismissed from the case on March 1, 2019, ECF No. 32. In contrast, AT&T Mobility filed an answer, ECF No. 27, and appeared as a defendant. Thus, the January 23, 2023, stipulation of voluntary dismissal under Rule 41(a)(1)(A)(ii), signed by named plaintiffs Cynthia Allen and Kristine Webb and AT&T Mobility, was signed by all "parties" that ever "appeared" in this case, in compliance with the text of the federal rule and *Hardnett*, 2023 WL 2056285, at *1.

A defendant may contest personal jurisdiction under Rule 12(b)(2) without appearing as a party in the action. *See Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 718 F. App'x 786, 791 (11th Cir. 2017) ("[N]othing in Rule 12 contemplates that an attorney's entry of a notice of appearance on a defendant's behalf amounts to a waiver of a Rule 12 defense."); *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968) ("All objections to jurisdiction and process may be set up in a motion or answer without waiving any of them" and where "no facts appear which would give this court in personam jurisdiction as to [defendant], . . . he

9

is not properly before the court").[2] That is precisely what AT&T Services, Inc. did when it responded to the complaint by filing a motion "*solely* for the purpose of contesting personal jurisdiction," and did "not concede that th[e] [district] [c]ourt ha[d] jurisdiction over it." ECF No. 26 at 1 n.1 (emphasis added). In other words, AT&T Services never appeared as a party.

Named plaintiffs Cynthia Allen and Kristine Webb and defendant AT&T Mobility (which, unlike AT&T Services, Inc., did not contest personal jurisdiction and instead filed its answer) filed a Joint Stipulation of Dismissal of AT&T Services, Inc. pursuant to Rule 41(a)(1)(A)(ii). In *In re Esteva*, this Court recognized that Rule 41(a)(1)(A)(ii) "allow[s] plaintiffs to voluntarily dismiss less than the entire action so long as they dismiss a defendant in its entirety (i.e., they dismiss all of the claims brought against that defendant)." 60 F.4th 664, 677 (11th Cir. 2023). Thus, the March 1, 2019 Joint Stipulation of Dismissal effectively removed AT&T Services, Inc. from the entire action before that entity had ever appeared as a party. As a result,

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.)

AT&T Services, Inc. is not a "party" that has "appeared" in this case, and its signature was not required to effectively dismiss the action.

## II. The district court had jurisdiction to hear Curlee's motion to intervene after final judgment.

(A) Supreme Court precedent establishes that putative class members have a right to intervene to appeal an earlier denial of class certification after final judgment has resolved the named plaintiffs' individual claims. (B) The jurisdiction of the district court to effectuate the putative class members' right to appeal and to manage its proceedings exists when the final judgment is achieved through a voluntary stipulated dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (C) That is consistent with this Court's precedent, as explained by Judge Anderson's concurring opinion in *Love v. Wal-Mart Stores, Inc.,* 865 F.3d 1322 (11th Cir. 2017). In particular, the holding of *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272 (11th Cir. 2012) is not to the contrary as it concerned the jurisdiction to enforce a settlement agreement, which is "merely a private contract" that "ha[s] nothing to do" with the underlying case, *id.* at 1281, while here, the order denying class certification is part of the underlying case over which the district court indisputably has jurisdiction. (D) The

11

jurisdiction of a district court to consider a motion to intervene from a putative class plaintiff for the purpose of appealing the denial of class certification following a stipulated dismissal has also been expressly recognized by several circuit courts.

A. Putative class members may intervene after final judgment to appeal the denial of class certification under *United Airlines, Inc. v. McDonald.*

The right of a putative class member to intervene to appeal the denial of class certification after final judgment is rendered on the named plaintiffs' individual claims is well-established in Supreme Court jurisprudence. The Supreme Court first established that a putative class member could move to intervene in district court following final judgment "for the purpose of appealing the District Court's adverse class determination order" in *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390 (1977). The Court has reaffirmed this decision many times, most recently just last year in *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1014 (2022) (relying on the *McDonald* Court's holding that where "a member of a putative plaintiff class moved to intervene for the purpose of appealing the District Court's denial of class certification" that motion "was timely

12

because it was filed soon after the movant learned that the class representatives would not appeal").

The *McDonald* rule arose in the following procedural context. First, the district court denied the named plaintiffs' motion for class certification. 432 U.S. at 388. The named plaintiffs sought an interlocutory appeal, which was denied. Almost three years later, the district court "issued a final order incorporating a settlement providing for reinstatement and backpay awards to the plaintiffs." *Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 917 (7th Cir. 1976), *aff'd sub nom. McDonald*, 432 U.S. 385. Eighteen days after a judgment of dismissal was entered, a putative class member moved to intervene, seeking to appeal the district court's denial of class certification. *McDonald*, 432 U.S. at 390. The district court denied the putative plaintiff's motion to intervene, the circuit court reversed, and the Supreme Court affirmed the circuit court's decision. According to the Supreme Court, "[t]he critical fact" supporting intervention was that "that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation." *Id.* at 394.

13

The right of "a putative class member [to] intervene, for the
purpose of appealing the denial of a class certification motion, after the
named plaintiffs' claims have been satisfied and judgment entered in
their favor" has become a bedrock principle of the Supreme Court's
jurisdictional jurisprudence since *McDonald* was decided nearly a half
century ago. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980)
(citing *McDonald*, 432 U.S. 385). Indeed, the *McDonald* rule is the basis
for the Supreme Court's conclusion that "an order denying class
certification is subject to effective review after final judgment at the
behest of the named plaintiff or *intervening class members*." *Coopers &
Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (emphasis added) (citing
*McDonald*, 432 U.S. 385); *see Microsoft Corp. v. Baker,* 582 U.S. 23, 34
(2017) (relying on foregoing quote from *Livesay*, 437 U.S. at 469); *see
also Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326,
337-38 (1980) (characterizing "appealability of the class certification
question after final judgment on the merits," with citation to *McDonald*
as "an important ingredient of our ruling in *Livesay*").

Putative class members cannot seek "effective review after final
judgment" of an order denying class certification unless the district

court has jurisdiction to consider their request to do so. *See Livesay*, 437 U.S. at 469. Thus, however the final judgment of the named plaintiffs' individual claims is achieved, including through stipulated dismissal, district courts have jurisdiction for putative class members to employ the procedure recognized in *McDonald*.

B. The district court had jurisdiction to hear Curlee's *McDonald* motion after final judgment through voluntary stipulated dismissal.

District courts routinely exercise jurisdiction after final judgment, including following a voluntary stipulated dismissal. Jurisdiction over a putative class member's motion to intervene for the purpose of appeal is just one example. Examples of the other numerous issues over which district courts retain jurisdiction include those that are collateral to the merits,[3] to grant relief from judgment pursuant to Federal Rule of Civil

---

[3] *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 389-95 (1990) (holding district court was not divested of jurisdiction after the plaintiff had "filed a notice of voluntary dismissal of the complaint" because "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending" and a Rule 11 sanction finding that "petitioner's prefiling inquiry was grossly inadequate" was such a "collateral issue").

Procedure 60(b),[4] to confirm an arbitration award,[5] and to enforce a settlement agreement made part of a court order.[6] The district court's jurisdiction after final judgment includes the jurisdiction to consider a putative class member's motion to intervene for the purpose of appealing the denial of class certification.

District courts have jurisdiction following a final judgment pursuant to Rule 41(a)(1)(A)(ii) for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and

---

[4] *See Rice v. Ford Motor Co.*, 88 F.3d 914, 916, 918 (11th Cir. 1996) (concluding "we have jurisdiction to decide whether the district court erred in denying relief" for a Rule 60(b) motion filed by defendant after plaintiffs "filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(i)"); *see also Yesh Music v. Lakewood Church*, 727 F.3d 356, 361 (5th Cir. 2013) (reviewing circuit case law and concluding the Third, Fourth, Sixth, Seventh, Ninth, Tenth all allow for Rule 60(b) relief following a stipulated dismissal).

[5] *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1313 (11th Cir. 2016); *see also Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.,* 939 F.3d 1145, 1155 (11th Cir. 2019) ("The district court properly determined that it had ancillary jurisdiction over the motion to enforce the [arbitral] summonses.").

[6] *Kokkonen*, 511 U.S. at 380-81 (explaining if "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal" district court would have jurisdiction over a breach of the agreement); *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012) (explaining for a district court to have jurisdiction to enforce a settlement agreement after the parties file a stipulation pursuant to Rule 41(a)(1)(A)(ii), which "becomes effective upon filing," the district court must issue an order doing so prior to the filing of the stipulation or the parties must condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction).

16

(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994). The interests that the Supreme Court identified in *Roper*, "to be considered when questions touching on justiciability are presented in the class-action context," 445 U.S. 326 (1980), here support both purposes of jurisdiction recognized in *Kokkonen*, even after named plaintiffs settle their individual claims.

First, *Roper* recognized that "rights of putative class members as potential intervenors" exist and are a "separate consideration, distinct from the[] private interests" of named plaintiffs in their individual claims. 445 U.S. at 331. These rights cannot be settled by the named plaintiffs. As the claims of the putative class members are "factually interdependent" with the named plaintiffs, jurisdiction exists to "permit disposition by a single court." *Kokkonen*, 511 U.S. at 379. Second, *Roper* specifically noted that the *district court* has an interest and responsibility to "protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it." 445 U.S. at 331. Thus, jurisdiction exists to "to enable a court to function

17

successfully" and "manage its proceedings" in accordance with this interest. *Kokkonen*, 511 U.S. at 380. Neither of these interests disappear because the named plaintiffs voluntarily dismiss their individual claims.

Nor does Rule 41 itself "speak in jurisdictional terms." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510-16 (2006), and the Supreme Court has admonished federal courts not to "read a statute or rule to impose a jurisdictional requirement unless its language clearly does so," *Cameron*, 142 S. Ct. at 1009. *See In re Brewer*, 863 F.3d 861, 869 (D.C. Cir. 2017) (analyzing the text of Rule 41).

In sum, district courts have jurisdiction necessary to ensure that putative class members have the opportunity to seek effective review of an order denying class certification after final judgment. That includes when final judgment is effected through a voluntary stipulated dismissal of the named plaintiffs' individual claims.

C. The concurring opinion in *Love* explains why district court jurisdiction over *McDonald* motions is consistent with Eleventh Circuit precedent.

This court's decision in *Love* left open the question of whether a putative class member's motion to intervene for purposes of appealing

18

the denial of class certification is a matter within the district court's

jurisdiction after final judgment pursuant to stipulated dismissal. 865

F.3d at 1326 n.2. Judge Anderson concurred in the *Love* Court's holding

that the putative class member's appeal in that case was not timely

filed and wrote separately to explain that he joined the Court's opinion

> on the understanding that putative class members who move
> to intervene and file a notice of appeal within the thirty-day
> time to appeal from the final judgment effected by a Federal
> Rule of Civil Procedure 41(a)(1)(A)(ii) joint stipulation are not
> foreclosed from exercising their conditional right to intervene
> after final judgment for the purpose of appealing the district
> court's previous denial of class certification, as contemplated
> by the Supreme Court in *United Airlines, Inc. v. McDonald*,
> 432 U.S. 385 (1977).

*Id.* at 1327 (Anderson, J., concurring specially).

Judge Anderson recognized that this Court's decision in *Anago*

677 F.3d 1272, "contains broad dicta suggesting that a Rule

41(a)(1)(A)(ii) stipulated dismissal always extinguishes district court

jurisdiction," but explained both that *Anago* is "distinguishable because

it lacked the class action context present in this case" and that, because

the *Anago* dicta is inconsistent with numerous well-established

precedents, it "cannot be taken literally." *Love*, 865 F.3d at 1327.

Moreover, Judge Anderson noted that the approach outlined in his

19

concurrence "resolved" the tension between the *"Anago* dicta" and *McDonald*. *Id.* at 1328. Indeed, as a matter of logic, to effectuate the right of appeal recognized by the Supreme Court in *McDonald*, the district court must have jurisdiction to entertain the putative class member's motion to intervene after final judgment.

The *Love* concurrence is consistent with *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir. 1998), and not inconsistent with *Anago*. In *Armstrong,* this Court held that statutes of limitations, which are tolled for members of the putative class, resume running after a district court makes a class certification decision. 138 F.3d at 1390. The majority critiqued the alternative rule—that the statute of limitations period would be tolled through final judgment—for failing to delineate how it would operate where, as "happens in perhaps the greatest number of class actions, the named plaintiffs (along with, perhaps, members of a partially-certified class) settle their claims after denial of certification." *Id.* at 1390. The court wondered whether, under the alternative rule the limitations period would remain tolled while "disappointed putative class members seek to intervene, as in *United*

20

*Airlines,* for the purpose of appeal." *Id.* The Eleventh Circuit arrived at its tolling rule in part to "avoid these problems." *Id.*[7]

This result is consistent with *Anago.* In *Anago*, the question presented was whether a district court had jurisdiction to enforce the terms of a settlement agreement after the parties entered a stipulation of dismissal pursuant to Rule 41(a)(1)(A), which included their agreement that the court reserve jurisdiction to enforce the settlement terms. *Anago*, 677 F.3d at 1280. Because the "[s]tipulation did not condition its effectiveness on the issuance of an order by the district court retaining jurisdiction, and the court did not issue such an order prior to the dismissal of the case," the answer was no—the district court did not have jurisdiction in that particular situation. *Id.* at 1281.

---

[7] The *Love* concurrence is also consistent with *Shores v. Sklar*, in which this Court held that a plaintiff's acceptance of an offer of judgment together with "consent to an entry of judgment, given without reservation of a right to appeal, bars a subsequent appeal of the order denying class certification." 885 F.2d 760, 762 (11th Cir. 1989) (en banc). Four judges concurred specially to note that they did not "interpret the majority opinion as preventing interested members of the putative class from intervening under Rule 24 and appealing the district court's denial of class certification." *Id.* at 765–66 (Johnson, J., specially concurring). The concurrence explained that "[u]ntil today, the putative class members in this case could reasonably have presumed that their interests were adequately and properly represented," so the "logic of *McDonald* authorizes affected members of the putative class to make the proper motions below to intervene and appeal." *Id.* at 765–66.

21

*Anago's* holding, then, was a straightforward application of the Supreme Court's instruction in *Kokkonen* that an issue does not fall within the district court's jurisdiction where it "is more than just a continuation or renewal of the dismissed suit," and thus "is for state courts unless there is some independent basis for federal jurisdiction." 511 U.S. at 378. *See Anago*, 677 F.3d at 1281 ("Settlement agreements are contracts and thus may be adjudicated in courts with jurisdiction over the contract. . . . When the settlement agreement is not made part of a court order, it is merely a private contract arising out of a case in federal court and "'ha[s] nothing to do with'" the underlying case.") (quoting *Kokkonen*, 511 U.S. at 380)).

Understood in its context, *Anago* concerns only the jurisdiction of a district court to consider a claim it would not otherwise have jurisdiction over (breach of contract) based solely on the fact that the dispute that gave rise to the creation of the contract (the settlement agreement) was previously—but no longer is—in federal court. In contrast, a motion for class certification is part of the case the district court has jurisdiction to manage. *See Kokkonen*, 511 U.S. at 379-80.

22

D. Other circuits have expressly recognized district court
jurisdiction over *McDonald* motions following a voluntary
stipulated dismissal.

The Fifth, Seventh, Ninth, and D.C. Circuits have expressly recognized that following a stipulated dismissal, the district court has jurisdiction to consider a motion to intervene from a putative class plaintiff for the purpose of appealing a denial of class certification.

In *Odle v. Flores*, the Fifth Circuit held that "[t]he district court has jurisdiction to consider the would-be intervenors' motion" in "a case involving would-be plaintiff-intervenors who filed their motion to intervene after the district court had already entered a Rule 41(a)(1) stipulated dismissal of the plaintiffs' claims." 899 F.3d 342, 343 (5th Cir. 2017). The Fifth Circuit reversed the district court, which had wrongly concluded that the "jurisdictional nature of Rule 41(a)(1)(A)(ii) dismissals distinguish stipulations of dismissal from appealable final judgments in cases such as *McDonald*." *Odle v. Wal-Mart Stores, Inc.*, No. 3:11-CV-02954-O, 2016 WL 10459787, at *2 (N.D. Tex. Mar. 17, 2016), *vacated and remanded sub nom. Odle v. Flores*, 899 F.3d 342 (5th Cir. 2017).

23

The Seventh Circuit too has instructed that "a class member who
. . . would like to appeal the denial of certification" must do so by
"ask[ing] the *district court* for permission to intervene in the case."
*Wrightsell v. Cook Cnty., Ill.*, 599 F.3d 781, 784–85 (7th Cir. 2010)
(emphasis added).

The Ninth Circuit has also held that district courts have
jurisdiction to hear a putative class member's post-settlement motion to
intervene. *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d
1317, 1319, 1321 (9th Cir. 1997).

Finally, the D.C. Circuit has also confronted this question and held
that a district court has jurisdiction to consider a motion to intervene
following a stipulated dismissal. *In re Brewer*, 863 F.3d 861. The court
of appeals explained that "a stipulated dismissal, aside from its
immediate effectiveness, is no different in jurisdictional effect from a
dismissal by court order" and after a dismissal by court order
"intervention [in the district court] for the purpose of appealing a denial
of class certification is certainly available." *Id.* at 869 (citing *McDonald*,
432 U.S. at 392-94).

24

## CONCLUSION

For the foregoing reasons, the answer to both of the Court's jurisdictional questions is "yes." Accordingly, this Court has jurisdiction to consider the merits of Curlee's appeal.

Dated March 29, 2023                    Respectfully submitted,

                                        */s/ Kalpana Kotagal*
                                        Joseph M. Sellers
                                        Kalpana Kotagal
                                        Harini Srinivasan
                                        Cohen Milstein Sellers & Toll PLLC
                                        1100 New York Ave. NW, Ste. 500
                                        Washington, DC 20005
                                        Tel: (202) 408-4600
                                        jsellers@cohenmilstein.com
                                        kkotagal@cohenmilstein.com
                                        hsrinivasan@cohenmilstein.com

                                        Gillian L. Thomas
                                        Jennesa Calvo-Friedman
                                        Ria Tabacco Mar
                                        American Civil Liberties Union
                                        Women's Rights Project
                                        125 Broad Street, 18th Floor
                                        New York, New York 10004
                                        Tel: (212) 284-7356
                                        gthomas@aclu.org
                                        jcalvo-friedman@aclu.org
                                        rmar@aclu.org

                                        Cory Isaacson
                                        Andrés M. López-Delgado
                                        American Civil Liberties Union

25

Foundation of Georgia, Inc.
P.O. Box 570738
1100 Spring Street, NW
Suite 640
Atlanta, Georgia 30357
Tel: (404) 594-2723
CIsaacson@acluga.org
ADelgado@acluga.org

*Counsel for Appellant*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing document complies with the volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 4,921 words, excluding parts exempted by Fed. R. App. P. 32(f).

This document also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27 and 32(a) and 11th Circuit Rule 27-1.

Dated March 29, 2023                    */s/ Kalpana Kotagal*
                                        Kalpana Kotagal
                                        *Counsel for Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on March 29, 2023.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished using the appellate CM/ECF system.


Dated March 29, 2023                 */s/ Kalpana Kotagal*
                                     Kalpana Kotagal
                                     *Counsel for Appellant*

**TAB 7**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10572

_____

CYNTHIA ALLEN, et al.,

Plaintiffs,

AMANDA CURLEE,

Intervenor Plaintiff-Appellant,

*versus*

AT&T MOBILITY SERVICES, LLC,
a.k.a. AT&T Mobility LLC,

Defendant-Appellee,

AT&T SERVICES, INC.,

2                        Order of the Court                    23-10572

                                                            Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-03730-WMR

_____

ORDER:

On its own motion, the Court directs supplemental briefing as follows:

Assume that the issues raised in the previous jurisdictional question—the validity of the Rule 41 stipulations and the district court's jurisdiction to grant the motion to intervene—are resolved in favor of jurisdiction. The parties are directed to file supplemental briefs, not to exceed fifteen double-spaced pages, addressing whether there is a final judgment considering that the district court has not ruled on the merits of Appellant's claims. *See* 28 U.S.C. § 1291 (requiring a final judgment); *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) (finding lack of finality in similar circumstances); *Martinez v. Flowers Foods, Inc.*, 720 F. App'x 415 (9th Cir. 2018) (dismissing intervenors' appeal based on *Microsoft*); *Bobbitt v. Milberg LLP*, 723 F. App'x 413 (9th Cir. 2018) (same); *cf. In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017) (allowing intervention; declining to consider class-certification issues; and remanding for further proceedings).

23-10572                Order of the Court                3

Parties should file their briefs within twenty-one days of the entry of this order.

DAVID J. SMITH
Clerk of the United States Court of
Appeals for the Eleventh Circuit

ENTERED FOR THE COURT - BY DIRECTION

# TAB 8

23-10572

# United States Court of Appeals

*for the*

# Eleventh Circuit

———— ◆ ————

AMANDA CURLEE,

*Intervenor-Appellant,*

– v. –

AT&T MOBILITY SERVICES, LLC, a.k.a. AT&T Mobility LLC,

*Defendant-Appellee.*

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:18-cv-03730-WMR
(Hon. William M. Ray II, U.S. District Judge)

# AT&T MOBILITY'S RESPONSE TO SUPPLEMENTAL JURISDICTIONAL QUESTION

KENNETH GAGE
PAUL HASTINGS, LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000

*Counsel for Defendant-Appellee*

Amanda Curlee v. AT&T Mobility Services, LLC, 23-10572

**APPELLEE AT&T MOBILITY SERVICES, LLC'S**
**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Appellee AT&T Mobility Services, LLC incorporates by reference the

Certificate of Interested Persons and Corporate Disclosure Statement filed in the

above-captioned appeal at Doc. No. 22, C-1 to C-3.[1]

---

[1] Citations to "Doc. No." refer to filings on this Court's docket. Citations to "ECF No." refer to filings on the district court's docket.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

SUMMARY OF RESPONSE..................................................................................3

BACKGROUND .....................................................................................................4

LEGAL STANDARD..............................................................................................5

ARGUMENT ..........................................................................................................6

    A.    Voluntary Dismissal Following An Appellate Court's Refusal To Allow A Rule 23(f) Appeal Does Not Support Jurisdiction Under § 1291. .................................................................................6

    B.    The Decision On Curlee's Motion To Intervene Is Not A Final Judgment. ....................................................................................10

CONCLUSION .....................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Baines v. City of Atlanta, Ga.*,
   No. 22-12611, 2023 WL 7151188 (11th Cir. Oct. 31, 2023) .............5, 10, 11, 12

*Bobbitt v. Milberg LLP*,
   723 F. App'x 413 (9th Cir. 2018) .....................................................................2, 8

*In re Brewer*,
   863 F.3d 861 (D.C. Cir. 2017) ...............................................................2, 3, 9, 10

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
   729 F.3d 239 (3d Cir. 2013) ...............................................................................9

*China Agritech, Inc. v. Resh*,
   584 U.S. 732 (2018) .....................................................................................2, 12

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978) .........................................................................................3, 5

*In re Esseks*,
   No. 23-13524, 2024 WL 358119 (11th Cir. Jan. 31, 2024) ....................5, 11, 12

*Hall v. Flournoy*,
   975 F.3d 1269 (11th Cir. 2020) .........................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .....................................................................................2, 12

*Love v. Wal-Mart Stores, Inc.*,
   865 F.3d 1322 (11th Cir. 2017) .......................................................................11

*Martinez v. Flowers Foods, Inc.*,
   720 F. App'x 415 (9th Cir. 2018) ....................................................................2, 8

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017) ................................................................................*passim*

*Positano Place at Naples I Condo. Assoc., Inc. v. Empire Indem. Ins.
   Co.*,
   84 F.4th 1241 (11th Cir. 2023) ....................................................................5, 11

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977)............................................................................12

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
   No. 21-10305, 2022 WL 16729151 (11th Cir. Nov. 7, 2022)............................11

**Statutes**

28 U.S.C. § 1291 ..........................................................................2, 5

**Other Authorities**

Fed. R. Civ. P. 24(a)......................................................................10

## INTRODUCTION

This appeal concerns a putative class action, shorn of its representative nature when the district court denied class certification in March 2022. Instead of litigating their claims to final judgment, the original named plaintiffs, Cynthia Allen and Kristine Webb, voluntarily dismissed their claims after this Court refused to allow a Rule 23(f) interlocutory appeal of the district court's order denying class certification.

Intervenor-Appellant Amanda Curlee claims that she would have been a class member if Allen's and Webb's motion had been granted. She concedes that her own claims are time-barred but for Allen's EEOC charge. (ECF No. 163 at 7, 10.) Therefore, she seeks to revive the putative class action Allen and Webb ended. Apparently believing Curlee could do so by seeking interlocutory review of the class certification decision, the district court allowed her to intervene after the dismissal.

These procedural machinations raise significant jurisdictional questions. At this Court's request, the parties have already briefed two:

(1)    Whether the stipulation of dismissal was valid and effective (both parties agree the answer is "yes");

(2)    Whether the district court had jurisdiction to grant Curlee's motion to intervene (AT&T said "no," and Curlee said "yes").

(Doc. Nos. 22 and 23.)

1

Responding to the second question, Curlee ignored that the case was shorn of its representative nature long before she appeared. She argued that she should still have the right to intervene and seek appellate review of an interlocutory order to revive her own time-barred claims, despite the fact that they have never been litigated. (ECF No. 163 at 7, 10.) Curlee's position on the district court's jurisdiction ignores the Supreme Court's admonitions that (a) "[f]ederal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and (b) "[t]he plaintiff who seeks to preserve the ability to lead the class … has every reason to file a class action early, and little reason to wait in the wings, giving another plaintiff first shot at representation." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 747 (2018).

On April 1, 2024, this Court asked:

Assum[ing] that the issues raised in the previous jurisdictional question . . . are resolved in favor of jurisdiction . . . whether there is a final judgment considering that the district court has not ruled on the merits of Appellant's claims. *See* 28 U.S.C. § 1291 (requiring a final judgment); *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) (finding lack of finality in similar circumstances); *Martinez v. Flowers Foods, Inc.*, 720 F. App'x 415 (9th Cir. 2018) (dismissing intervenors' appeal based on *Microsoft*); *Bobbitt v. Milberg LLP*, 723 F. App'x 413 (9th Cir. 2018) (same); *cf. In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017) (allowing intervention; declining to consider class certification issues; and remanding for further proceedings).

(Doc. No. 50.)

## SUMMARY OF RESPONSE

No. Assuming the district court had jurisdiction to allow Curlee to intervene (which it did not (*see* Doc. No. 22)), there is no final judgment to support jurisdiction under 28 U.S.C. § 1291.

The objective of Curlee's appeal is to revive a putative class action that has not gone to final judgment. Long ago, the Supreme Court held that such orders "are 'inherently interlocutory' … hence not immediately reviewable under 28 U.S.C. § 1291, …." *Microsoft Corp. v. Baker*, 582 U.S. 23, 26 (2017) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 470 (1978).) Under the Supreme Court's decision in *Microsoft v. Baker*, the voluntary dismissal by Allen and Webb does not qualify as a final judgment under § 1291. It should not qualify for Curlee either.

Appellee AT&T Mobility Services, LLC ("AT&T Mobility") never responded to Curlee's allegations. Her claims have not been subject to discovery, much less decided on the merits. Aside from granting her motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, the district court has decided nothing concerning Curlee's claims.

*In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017), cited in this Court's order requesting briefing, does not suggest otherwise. There, the intervenor sought appellate review of the denial of class certification under Rule 23(f)—not § 1291.

Therefore, none of the concerns animating the Supreme Court's decision in *Microsoft* were present in that case.

There is no final judgment on which Curlee can invoke this Court's jurisdiction.

## BACKGROUND

On March 21, 2022, the district court denied Plaintiffs Allen's and Webb's motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. (ECF No. 134.) Allen and Webb petitioned for interlocutory review of that decision pursuant to Rule 23(f). (ECF No. 138.) This Court denied that petition. (ECF No. 142.) Settlement negotiations among the parties followed. (*See* ECF No. 151 (referring case to settlement conference) and ECF No. 158 (affirming that settlement conference occurred).)

On December 20, 2022, the district court directed the clerk to "administratively close" the case, and directed the parties to "file a dismissal or other filing disposing of this case . . . ." (ECF No. 159.) On January 23, 2023, Allen and Webb ended the action by filing a stipulation dismissing with prejudice all of their claims against AT&T Mobility, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. (ECF No. 162.)

Curlee moved to intervene in the district court the next day, pursuant to Rule 24 of the Federal Rules of Civil Procedure. (ECF No. 163.) The district court granted

Curlee's motion to intervene on February 13, 2023, without considering whether it had jurisdiction to do so. (ECF No. 166.) Two days later, Curlee filed a notice of appeal. (ECF No. 167.)

On April 1, 2024, this Court *sua sponte* requested briefing on the jurisdictional issue addressed in this supplemental brief. (Doc. No. 50.)

## LEGAL STANDARD

Congress granted this Court jurisdiction to review "all *final* decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291 (emphasis added). "Conversely, as a court of limited jurisdiction," this Court is "generally *barred* from entertaining appeals of non-final orders because [it] has no congressional grant to do so." *Hall v. Flournoy*, 975 F.3d 1269, 1274 (11th Cir. 2020) (emphasis added). An order denying class certification is "inherently interlocutory." *Coopers & Lybrand*, 437 U.S. at 470.

This Court properly understands a "final decision" as one that ends the litigation and "leaves nothing for the court to do but execute its judgment." *Baines v. City of Atlanta, Ga.*, No. 22-12611, 2023 WL 7151188, at *2 (11th Cir. Oct. 31, 2023) (citation omitted). There is no § 1291 finality when, as Curlee plainly hopes, further proceedings are required on substantive matters. *Positano Place at Naples I Condo. Assoc., Inc. v. Empire Indem. Ins. Co.*, 84 F.4th 1241, 1248 (11th Cir. 2023); *In re Esseks*, No. 23-13524, 2024 WL 358119, at *1 (11th Cir. Jan. 31, 2024)

(dismissing appeal for lack of jurisdiction where district court anticipated "further proceedings").

Aside from determining that Curlee satisfied the procedural requirements of Rule 24, there have been no proceedings in the district court on her claims. Therefore, substantive proceedings would be required if Curlee is properly a party to the case (which she is not).

## ARGUMENT

### A.    Voluntary Dismissal Following An Appellate Court's Refusal To Allow A Rule 23(f) Appeal Does Not Support Jurisdiction Under § 1291.

Under *Microsoft v. Baker*, this Court lacks jurisdiction under § 1291 to review an order denying class certification where, as here, the named plaintiffs have voluntarily dismissed their claims with prejudice after failing to convince the appellate court to review the interlocutory order. 582 U.S. 23 (2017).

In *Microsoft*, the Supreme Court faced the questionable "tactic" of named plaintiffs voluntarily dismissing their claims with prejudice following denial of class certification, in an "[a]ttempt[] to secure appeal as of right" by manufacturing a "final decision" under § 1291. *Id*. at 24. This is, according to the Supreme Court, an improper end-run around the requirements of Federal Rule of Civil Procedure 23(f), which grants appellate courts the "unfettered discretion" whether to *permit* such an appeal. *Id*. at 31.

As the Supreme Court observed, the drafters of Rule 23(f) specifically "*declined* to . . . provide for appeal as a matter of right" of adverse class certification orders. *Id*. at 31–32 (emphasis added). "'A right to appeal would lead to abuse' on the part of plaintiffs and defendants alike . . . 'increasing delay and expense' over 'routine class certification decisions' unworthy of immediate appeal." *Id*. at 32. Thus, attempting to manufacture a "final decision" under § 1291 via voluntary dismissal "seriously undermine[s]" the discretion that Rule 23(f) confers to federal courts of appeal. *Id*. at 25. Indeed, if plaintiffs could pursue this tactic, "the decision whether an immediate appeal will lie resides exclusively with the plaintiff; she need only dismiss her claims with prejudice, whereupon she may appeal the district court's order denying class certification." *Id*. at 37. § 1291, the Supreme Court held, "does not countenance jurisdiction by these means." *Id*. at 36.

The Supreme Court also observed that this "voluntary-dismissal tactic . . . invites protracted litigation and piecemeal appeals," because a party could "exercise that option more than once, stopping and starting the district court proceedings with repeated interlocutory appeals" challenging the denial of class certification on different grounds each time. *Id*. at 37–38. In *Microsoft*, for example, "[t]he Ninth Circuit reviewed and rejected only the District Court's application of comity as a basis for striking [the] class allegations." *Id*. at 38. "The appeals court declined to reach Microsoft's other arguments against class certification." *Id*. Thus, the district

court was free "to deny class certification on a different ground, and respondents would be free, under their theory, to force appellate review of any new order [again] denying certification . . . ." *Id.* Rule 23(f)'s "provision for discretionary review," though, "s[eeks] to prevent such disruption and delay." *Id.*

A case decided by the Ninth Circuit, *Bobbitt v. Milberg LLP*, is directly on point. 723 F. App'x 413 (9th Cir. 2018). There, a plaintiff moved to voluntarily dismiss his individual claims following the denial of class certification, but in his motion stated that "[i]f the Court grants dismissal, a member of the putative class is prepared to seek intervention for the limited purpose of appealing the class-certification denial." (Motion to Dismiss, No. 4:09-cv-00629-RCC (D. Ariz. Mar. 1, 2013) ECF No. 240 at 3.) The district court, as here, granted the putative class member's motion to intervene. (Order, *Id.* at ECF No. 256.) The appeal followed. (Notice of Appeal, *Id.* at ECF No. 257.)

Applying *Microsoft*, the Ninth Circuit held that it had no jurisdiction of the appeal, because § 1291 "does not establish jurisdiction over an appeal from a denial of class certification where the named plaintiffs have stipulated to the dismissal with prejudice of their individual claims in order to obtain a final judgment." 723 F. App'x at 414–15; *see also Martinez v. Flowers Foods, Inc.*, 720 F. App'x 415 (9th Cir. 2018) (under *Microsoft*, dismissing proposed intervenor's appeal of the denial of class certification for lack of jurisdiction, following plaintiffs' stipulation of

dismissal with prejudice); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242, 245 (3d Cir. 2013) (dismissing appeal of order denying collective action certification for lack of jurisdiction, because in that context, voluntary dismissals of claims "constitute impermissible attempts to manufacture finality").

In re Brewer*, 863 F.3d 861 (D.C. Cir. 2017), cited in this Court's order requesting briefing, does not dictate otherwise. There, the intervenor sought appellate review of the denial of class certification under Rule 23(f)—not § 1291. The *Brewer* intervenor did not "precipitat[e] an immediate appeal of class certification despite a prior denial of interlocutory review," a tactic that "clashe[s] with the purposes and history of both 28 U.S.C. § 1291 and Rule 23(f) and undermine[s] the usefulness of the latter provision." *Id*. at 871 (citing *Microsoft*, 582 U.S. at 36–39). None of the concerns animating the Supreme Court's decision in *Microsoft* were present. *See id*. ("the statutory issue in *Microsoft* is not present in this case").[2]

Here, conversely, this Court has *already* denied a Rule 23(f) appeal of the order denying Allen's and Webb's motion for class certification. (ECF No. 142.) Curlee's attempted second-bite-at-the-apple raises precisely the concerns the

---

[2] For the reasons previously articulated in Appellee's Response to Jurisdictional Questions (Doc. No. 22), the D.C. Circuit's conclusion in *In re Brewer* that the district court had jurisdiction following the filing of a stipulation of dismissal was incorrect.

Supreme Court articulated in *Microsoft* by generating "repeated interlocutory appeals" challenging the denial of class certification. 582 U.S. at 36–38. Even the *Brewer* court recognized that Curlee's tactic of intervention and appeal under § 1291 following an unsuccessful Rule 23(f) appeal was "opportunistic[]" and a display of "questionable tactics." 863 F.3d at 871.

**B.    The Decision On Curlee's Motion To Intervene Is Not A Final Judgment.**

Curlee presents a variation on the tactic rejected in *Microsoft*. She was not a named plaintiff at the time the district court denied class certification. Her claims have not be subject to discovery. Curlee admits that her claims are otherwise untimely. The district court did not consider whether she can satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Nothing has been decided concerning Curlee's claims, except the procedural issue of whether she satisfied the requirements of Rule 24 of the Federal Rules of Civil Procedure. That is not a final judgment.

A motion to intervene, by its very nature, prevents finality. Indeed, to prevail, the movant must convince the district court that "*disposing of the action* may as a practical matter impair or impede the movant's ability to protect its interest[s] . . . ." Fed. R. Civ. P. 24(a) (emphasis added). A district court that *grants* a motion to intervene therefore *declines* to dispose of the action, in anticipation of further

proceedings. This is the opposite of § 1291 finality. *See Baines*, 2023 WL 7151188, at *2; *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 21-10305, 2022 WL 16729151, at *3 (11th Cir. Nov. 7, 2022); *Positano Place at Naples I Condo. Assoc., Inc.*, 84 F.4th at 1248; *In re Esseks*, 2024 WL 358119, at *1.

In granting Curlee's motion to intervene, however, the district court anticipated that Curlee could obtain the interlocutory review of its class certification decision that this Court refused Allen and Webb. Granting the motion, the district court stated, would preserve Curlee's "ability to protect her and the other putative class members' interests *in this case*" by pursuing reversal of the denial of class certification. (ECF No. 166 at 6 (emphasis added).) As described above, however, *Microsoft* requires that Curlee first litigate her claim to final judgment before she can appeal a class certification decision.[3]

Curlee has not done so. Under ordinary principles of § 1291 finality, there is no appealable final judgment. *See Baines*, 2023 WL 7151188, at *2 (a "final decision is typically one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment" (citation omitted)); *Positano Place at Naples I*

_____

[3] In *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1326 n. 2 (11th Cir. 2017), this Court declined to decide whether, under circumstances presented here, the district court has jurisdiction to consider a Rule 24 motion. To avoid continued uncertainty on an important issue, it should decide both jurisdictional questions presented in this appeal.

*Condo. Assoc., Inc.*, 84 F.4th at 1248 (no § 1291 finality "[w]hen a district court anticipates that further proceedings on substantive matters may be required" (citation omitted)); *In re Esseks*, 2024 WL 358119, at *1 (dismissing appeal for lack of jurisdiction where district court anticipated "further proceedings"); *Baines*, 2023 WL 7151188, at *2 (a "final decision" is "one by which a district court disassociates itself from a case" (citation omitted)).

## CONCLUSION

For the reasons set forth in AT&T Mobility's Response to Jurisdictional Questions (Doc. No. 22), this Court should hold that the district court lacked jurisdiction to consider Curlee's motion to intervene. Her attempt to revive untimely class claims is contrary to the Supreme Court's holding in *Kokkonen* and its reasoning in *China Agritech, Inc.*

If this Court finds that the district court had jurisdiction to grant Curlee's motion to intervene, however, then it should dismiss Curlee's appeal for lack of jurisdiction under § 1291 because there is no final judgment as to Curlee. Her reliance on *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), is misplaced.

Dated: April 22, 2024                    Respectfully submitted,


                                        */s/ Kenneth W. Gage*
                                        Kenneth W. Gage
                                        PAUL HASTINGS LLP
                                        200 Park Avenue, 30th Floor

New York, NY 10166
(212) 318-6000
kennethgage@paulhastings.com

*Counsel for Defendant-Appellee*
*AT&T Mobility Services, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 2,672 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.


*/s/ Kenneth W. Gage*
Kenneth W. Gage

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2024, 4 copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

On this same date, a copy of the brief was served on all counsel of record via CM/ECF.

*/s/ Kenneth W. Gage*
Kenneth W. Gage

# TAB 9

No. 23-10572

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

Amanda Curlee
*Intervenor Plaintiff-Appellant*

v.

AT&T Mobility Services, LLC
*Defendant-Appellee*

---

Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division

No. 1:18-cv-03730-WMR

---

# INTERVENOR PLAINTIFF-APPELLANT'S
# SUPPLEMENTAL BRIEF ON JURISDICTION

---

Joseph M. Sellers
Harini Srinivasan
Cohen Milstein Sellers & Toll
PLLC
1100 New York Ave., N.W.
Fifth Floor
Washington, D.C.  20005
Tel.:  (202) 408-4600

Gillian L. Thomas
Jennesa Calvo-Friedman
Ria Tabacco Mar
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.:  (212) 549-2500

Cory Isaacson
Andres M. Lopez-Delgado

American Civil Liberties
Foundation of Georgia, Inc.
1100 Spring St., N.W., Suite 640
Atlanta, GA 30357
Tel.:  (404) 594-2723

*Attorneys for Intervenor Plaintiff-
Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Intervenor Plaintiff-Appellant Amanda Curlee (the plaintiff-intervenor in *Allen v. AT&T Mobility Services LLC*, N.D. Ga. Case No. 1:18-cv-03730-WMR) is an individual with no corporate affiliations.

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned hereby discloses the following list of known persons, associated persons, firms, partnerships, and corporations that have an interest in the outcome of this appeal:

1. Ray, William M., II (United States District Court Judge for the Northern District of Georgia)

2. American Civil Liberties Union Foundation of Georgia, Inc. (counsel for Intervenor Plaintiff-Appellant)

3. American Civil Liberties Union, Women's Rights Project (counsel for Intervenor Plaintiff-Appellant)

4. AT&T Inc., (T) (corporate affiliate of AT&T Mobility Services LLC)

5. AT&T Mobility Services LLC (Defendant-Appellee)

6. AT&T NCWS Holdings, Inc. (corporate owner of New Cingular Wireless Services, Inc.)

7. AT&T Teleholdings, Inc. (corporate owner of SBC Telecom, Inc.)

8. BellSouth Mobile Data, Inc. (corporate owner of SBC Telecom, Inc.)

9. Calvo-Friedman, Jennesa (counsel for Intervenor Plaintiff-Appellant)

10. Cedar, Christine (counsel for Defendant)

11. Cohen Milstein Sellers & Toll PLLC (counsel for Intervenor

    Plaintiff-Appellant)

12. Cricket Holdco Inc. (corporate owner of AT&T Mobility Services

    LLC)

13. Curlee, Amanda (Intervenor Plaintiff-Appellant)

14. Gage, Kenneth W. (counsel for Defendant)

15. Isaacson, Cory (counsel for Intervenor Plaintiff-Appellant)

16. Leap Wireless International, Inc. (corporate owner of Cricket Holdco

    Inc.)

17. López-Delgado, Andrés M. (counsel for Intervenor Plaintiff-

    Appellant)

18. LWI Holdco (corporate owner of Leap Wireless International, Inc.)

19. Maturi, Alex J. (counsel for Defendant)

20. New Cingular Wireless Services, Inc. (corporate owner of LWI

    Holdco)

21. Paul Hastings LLP (counsel for Defendant)

22. SBC Telecom, Inc. (corporate owner of AT&T NCWS Holdings, Inc.)

23. Sellers, Joseph M. (counsel for Intervenor Plaintiff-Appellant)

24. Snipe, Sheldon W. (counsel for Defendant)

25. Srinivasan, Harini (counsel for Intervenor Plaintiff-Appellant)

26. Tabacco Mar, Ria (counsel for Intervenor Plaintiff-Appellant)

27. Thomas, Gillian L. (counsel for Intervenor Plaintiff-Appellant)

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 3

ARGUMENT .................................................................................. 4

I.    This Court Has Jurisdiction to Hear this Appeal Because the
      Named Plaintiffs' Voluntary Stipulation of Dismissal Was a
      Final Judgment ..................................................................... 4

      A.    The Supreme Court in *McDonald* Approved the
            Procedural Path Followed by Intervenor-Appellant
            Here ............................................................................. 5

      B.    *Microsoft v. Baker* Did Not Alter The Procedural Path
            To Appeal The Supreme Court in *McDonald* Endorsed
            and Therefore Does Not Affect This Court's
            Jurisdiction to Hear Curlee's Appeal ...................... 8

II.   The Practical Considerations Disfavoring Appellate
      Jurisdiction in *Baker* Have No Bearing Here. .............. 12

III.  The Ninth Circuit's Two Unpublished Orders Do Not
      Undermine *McDonald* Intervention ............................. 14

      CONCLUSION ................................................................. 15

i

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Bobbitt v. Milberg LLP,*
    723 F. App'x 413 (9th Cir. 2018) ........................................................ 15

*In re Brewer,*
    863 F.3d 861, 871 (D.C. Cir. 2017) ........................................... 2, 11, 14

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
    595 U.S. 267 (2022) ................................................................................ 6

*Catlin v. United States,*
    324 U.S. 229 (1945) ................................................................................ 4

*Citibank, N.A. v. Data Lease Fin. Corp.,*
    904 F.2d 1498 (11th Cir. 1990) ............................................................ 4

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) .................................................................... 1, 7, 10

*CSX Transp., Inc. v. City of Garden City,*
    235 F.3d 1325 (11th Cir. 2000) ............................................................ 4

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980) .................................................................... 1, 8, 13

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013) .................................................................................. 7

*Martinez v. Flowers Foods, Inc.,*
    720 F. App'x 415 (9th Cir. 2018) ........................................................ 15

*Microsoft Corp. v. Baker,*
    582 U.S. 23 (2017) .......................................................................... *passim*

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980) ................................................................. 1, 7, 8, 13

Suppl. App. 170

# TABLE OF AUTHORITIES

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977)..................................................................*passim*

## STATUTES

28 U.S.C. § 1291..............................................................................*passim*

iii

## INTRODUCTION

After the named plaintiffs to this action settled and dismissed their individual claims with prejudice, Amanda Curlee intervened to seek appellate review of the denial of class certification to ensure that she and more than 2,000 putative class members could seek a remedy for AT&T's pregnancy discrimination. As the dismissal terminated the named plaintiffs' claims entirely, leaving them with no remaining interest in this litigation, the order of dismissal was a final order pursuant to 28 U.S.C. § 1291. Therefore, this Court has jurisdiction to entertain Curlee's appeal.

In *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), the Supreme Court endorsed class member intervention to appeal a class certification denial under the same procedure Curlee followed in this case. Since then, the Court's appellate standing jurisprudence in class actions has continued to approve that procedure. *See, e.g., U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980); *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978).

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017), did not disturb

1

*McDonald*'s viability. *Baker* simply concluded that, when used to manufacture finality, the named plaintiffs' reservation of their *own* class claims vitiated the finality required by 28 U.S.C. § 1291 of the dismissal. *Baker*, 582 U.S. at 27. That holding is inapplicable here, where a previously uninvolved class member seeks intervention to secure class certification of *her* claims and those of the other absent members of the putative *class*.

Indeed, on facts analogous to those here, the D.C. Circuit in *In re Brewer* correctly distinguished *Baker* and approved application of *McDonald* to the exercise of jurisdiction over the intervenors' appeal. 863 F.3d 861, 871 (D.C. Cir. 2017). In contrast, the Ninth Circuit's two summary orders relying on *Baker* to refuse appellate jurisdiction to absent class member intervenors fail to reckon with the critical factual distinction between the lack of finality in *Baker* and intervening class members' appeals from truly final dismissals. Accordingly, these orders, which are not even precedential in the Ninth Circuit, should have no bearing on the outcome here.

As Curlee followed the procedural path endorsed by *McDonald* after the named plaintiffs dismissed their claims with prejudice, with no

2

reservation of rights, this Court has jurisdiction over her appeal of the order denying class certification.

## BACKGROUND

Cynthia Allen and Kristine Webb brought a putative class action against AT&T Mobility to challenge discrimination against them and other pregnant sales associates through the company's point-based 2015 Sales Attendance Guidelines ("SAG") policy, and associated attendance and discipline policies. The district court denied certification. ECF No. 134. Allen and Webb sought interlocutory review of that decision pursuant to Federal Rule of Civil Procedure 23(f), ECF No. 138, which this Court declined, ECF No. 142. Thereafter, the district court referred the case to a magistrate judge for mediation, resulting in the settlement and ultimate dismissal with prejudice of the claims of Allen and Webb. ECF No. 162. That dismissal extinguished Allen's and Webb's interest in the case, foreclosing their right to a direct appeal of the order denying class certification and, should that appeal be successful, their entitlement to any relief potentially secured for the class.

After Allen and Webb settled and dismissed their claims, Amanda Curlee, an unnamed member of the putative class not previously involved

in the action, moved to intervene in the district court to appeal the denial of class certification, as *McDonald,* 432 U.S. 385 permits. The district court granted the motion, and Curlee filed a timely appeal.

On April 1, 2024, the Court ordered supplemental briefing on whether there is a final judgment from which Curlee can appeal the denial of class certification.

## ARGUMENT

### I.    This Court Has Jurisdiction to Hear this Appeal Because the Named Plaintiffs' Voluntary Stipulation of Dismissal Was a Final Judgment

It is well-settled that a final judgment, from which an appeal may be taken, is one that ends the litigation on the merits for the parties before the court. *See* 28 U.S.C. § 1291; *Catlin v. United States*, 324 U.S. 229, 233 (1945) (a decision is "final" for purposes of Section 1291 if it "leaves nothing for the court to do but execute the judgment"); *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000).

A voluntary stipulation of dismissal that terminates the plaintiffs' claims in their entirety, with no reservation, is a final judgment. *See Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501–02 (11th Cir. 1990). The stipulation of dismissal with prejudice of the claims of

4

named plaintiffs Allen and Webb pursuant to Rule 41(a)(1)(A)(ii) terminated completely their interests in this case, with no reservation of their rights. If class certification is ultimately granted, they will not be members of the class and will not benefit from any relief that the class may obtain. *See* ECF No. 162 (the stipulation of voluntary dismissal entered by Allen and Webb states: "all of Plaintiffs' claims against AT&T are dismissed with prejudice from the action"). Accordingly, the dismissal of the claims of Allen and Webb qualified as a final, appealable order under 28 U.S.C. § 1291.

A. The Supreme Court in *McDonald* Approved the Procedural Path Followed by Intervenor-Appellant Here

The Supreme Court has repeatedly held that absent members of a putative class seeking review of class certification denials have an interest entirely distinct from that of named plaintiffs who have waived their right to challenge the denial of class certification upon settlement and dismissal of their individual claims.

In *McDonald*, the district court struck the complaint's class allegations – the equivalent of denying class certification – leaving only the named plaintiffs' individual claims. 432 U.S. at 388. After settlement of those individual claims, the district court entered a final judgment of

5

dismissal with prejudice. *Id.* at 389. A putative class member moved to intervene to appeal the class determination order. *Id.* The district court granted the motion, and the court of appeals reversed the denial of class certification. *Id.* at 390. The Supreme Court affirmed.

The Court held that the absent class member's motion to intervene to appeal the district court's class certification denial was timely, as it had been filed within the time to appeal under FRAP 4(a) following the dismissal of the named plaintiffs' claims. The Court found that intervention was authorized once it became clear "that the interests of the unnamed class members would no longer be protected by the named class representatives." *Id.* at 394. The Court also endorsed the putative class member's decision to wait to intervene until after judgment had been entered from the dismissal of the named plaintiffs' claims, noting that earlier intervention would have forced absent class members to enter the action solely to preserve their appellate rights should the named plaintiff cease pursuing the class claims. *Id.* at 394 n.15; *see Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 280 (2022) (reaffirming *McDonald*'s holding that it is appropriate for an intervenor to wait to intervene until "the movant learned that the class

representatives would not appeal").

Subsequent Supreme Court decisions have relied on *McDonald* as foundational authority on appellate jurisdiction to review the denial of class certification. First, in *Coopers & Lybrand*, 437 U.S. 463, the Court relied on *McDonald* in rejecting appellate jurisdiction to allow interlocutory review of class certification rulings because "an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff *or intervening class members.*" *Id.* at 469 (emphasis added) (citing *McDonald*, 432 U.S. 385).

Two years later, the Court decided two class action appellate jurisdiction cases that invoked *McDonald* approvingly. In *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, the Court held that a proposed class representative retains Article III standing to appeal the denial of class certification even after his personal claim has become moot, as his interest in obtaining class certification constitutes a separate "personal stake." 445 U.S. at 404; *cf. Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74-75 (2013). In reaching its holding, the Court observed that it had previously recognized the importance of the appealability of class certification denials:

7

> [I]n *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393–95 (1977), the Court held that *a putative class member may intervene, for the purpose of appealing the denial of a class certification motion, after the named plaintiffs' claims have been satisfied and judgment entered in their favor.* Underlying that decision was the view that "refusal to certify was subject to appellate review after final judgment at the behest of the named plaintiffs."

*Id.* at 400 (emphasis added) (quoting *McDonald*, 432 U.S. at 393).

And in *Deposit Guar. Nat'l Bank v. Roper*, the Court held that the ordinary rule – that only a party aggrieved by a judgment may appeal from that judgment – does not apply with respect to orders denying class certification. 445 U.S. 326. A class representative may, the Court held, appeal the denial of certification *even if judgment has been entered in the individual class representative's favor.* The Court reasoned that class representatives have an interest in representing the rights of absent class members, which is an interest distinct from their stake in their individual claims. *Id.* at 331. Crucially, the Court found this interest to rest not just with named class representatives, but also with "putative class members as potential intervenors." *Id.*

B. *Microsoft v. Baker* Did Not Alter The Procedural Path To Appeal The Supreme Court in *McDonald* Endorsed and Therefore Does Not Affect This Court's Jurisdiction to Hear Curlee's Appeal

8

Nothing in *Microsoft v. Baker*, 582 U.S. 23, can properly be interpreted to disapprove of Curlee's appeal, which faithfully followed the course endorsed by *McDonald*. First, it is factually distinct, in critical respects. *Baker* concerned the circumstances under which named plaintiffs could appeal class claims after stipulating dismissal of their individual claims. It did not address whether *absent class members*, not parties to the dismissal, could *intervene* for purposes of appealing their class claims. In *Baker*, the plaintiffs' voluntary dismissal reserved the right to "revive" their claims if the court of appeals reversed the denial of class certification. *Id.* at 27, 34, 41. In other words, the dismissal did not actually bar the plaintiffs from continuing to litigate the dismissed claims. The Court held that review of a certification denial brought by the original plaintiffs cannot be predicated on such an incomplete dismissal of the original plaintiff claims, as the reservation vitiates the finality required to establish jurisdiction. *Id.* at 36.

*Baker*'s holding turned on the key fact that the named plaintiffs personally stood to benefit from continued litigation of the case. The Court was clear that it considered the named plaintiffs' dismissal to be a self-serving "tactic" that subverted the finality required for an appeal

9

pursuant to section 1291. *Id.* at 27 (plaintiffs had "reserved the right to revive their claims should the Court of Appeals reverse the District Court's certification denial"); *id.* at 41 (noting, in rejecting plaintiffs' arguments, their claims in the briefs and during oral argument that "everything would spring back to life" on remand); *id.* at 27 (in describing plaintiffs' dismissal of their claims, the Court used quotation marks to suggest a non-conventional use of the term "with prejudice"); *id.* at 37 (referring to the dismissal as a "device").

In the circumstances presented here, *Baker* leaves *McDonald* undisturbed. Far from disavow *McDonald* and its progeny, *Baker* in fact relied extensively on a case that endorsed *McDonald*: *Coopers & Lybrand*, where the Court had rejected the "death knell" doctrine for appeals from denials of class certification and declined to treat such orders as immediately appealable collateral orders. 437 U.S. at 465. As noted *supra*, in rejecting that alternate pathway to appellate review, the *Coopers & Lybrand* Court cited the intervention procedure recognized in *McDonald* for class members as an available route to obtain review of such denials as well as review after dismissal with prejudice. 437 U.S. at 469. *Baker* cannot fairly be read, therefore, to repudiate

10

appeals by intervention of absent class members as recognized by *McDonald*.

As this Court recognized in its order, the D.C. Circuit has held that *Baker* does not undermine *McDonald*. *Brewer*, 863 F.3d 861. *Brewer* had a complex procedural posture, but the core question was "how the only named plaintiff's stipulated dismissal of his individual claims affected whether absent members of a putative class could appeal the denial of class certification." *Id.* at 868. As noted *supra*, the court rejected *Baker* as the appropriate controlling authority, in favor of appellate jurisdiction. *Id.* at 871. Citing *McDonald*, the court found that "intervention for the purpose of appealing a denial of class certification is certainly available." *Id.* at 868.[1]

Although the procedural history is simpler here, *Brewer* is directly on point: A named plaintiff's dismissal does not preclude other class

---

[1] The D.C. Circuit's decision to remand to the district court rather than review class certification is a function of the case's procedural posture. After concluding it had jurisdiction, the court denied interlocutory review of class certification. *Id.* at 873–76. Even after denying 23(f) review, the appellate court had jurisdiction because the intervenors had filed a notice of appeal from the order denying class certification, *id.* at 868, and ordered that the district court on remand allow "renewed motion for class certification." *Id.* at 876.

11

members from seeking review of the denial of class certification.

## II.    The Practical Considerations Disfavoring Appellate Jurisdiction in *Baker* Have No Bearing Here.

In finding that the plaintiffs' "voluntary-dismissal tactic" did not lead to a final judgment, the *Baker* Court observed that "finality is to be given a practical rather than a technical construction." 582 U.S. at 37. It identified three practical considerations informing its analysis. First, avoiding "piecemeal" or protracted litigation, *id.* at 27; second, maintaining the "screening procedure" provided by district courts so as to minimize the questions presented on appeal, *id.* at 29; and third, assuring that the scales are not artificially, and unfairly, weighted toward plaintiffs and against defendants. *Id.* Those practical concerns have no application in this case.

Here, as a threshold matter, the stipulated dismissal below was not a "tactic" to turn an interlocutory order into a final judgment or to otherwise overcome a jurisdictional defect. To the contrary, the settlement and subsequent stipulation of dismissal were undertaken for the sole benefit of plaintiffs Allen and Webb. The appeal taken by Curlee serves the interests of absent class members in securing class certification, which is legally distinct from the interest of the original

12

plaintiffs. *Roper*, 445 U.S. at 331

Nor does Curlee's appeal create the risk of piecemeal appeals by Allen and Webb. The stipulated dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) *completely* dismissed their claims and does not allow them to revive their dismissed claims. As the Court affirmed in *Geraghty*, because the interests of putative class members are distinct from the interests of the named plaintiffs, the possibility of intervention following final judgment does not raise the concern of piecemeal litigation; the named plaintiffs are not parties to, and do not benefit from, the intervenor's appeal. *Geraghty*, 445 U.S. at 404.

The *Baker* Court's concern that the plaintiffs' dismissal of claims with prejudice in name only could permit an end run around courts of appeals' Rule 23(f) discretion also is not present here. Where intervenors seek to appeal it simply does not implicate the manipulation of federal law and civil procedure rules that *Baker* disapproved. As the Court has held since *McDonald*, *supra* Section I.B, absent class members have a right to appeal the denial of class certification through intervention.

Finally, *Baker*'s concern with appellate jurisdiction inuring solely to the benefit of the settling plaintiffs is not implicated here. Indeed, it is

the jurisdictional ruling sought by AT&T that promises lopsided favoritism. Curlee's interest in appealing the denial of class certification arises from Allen's and Webb's having left the more than 2,000 absent class members with no ability to vindicate their claims without intervening to appeal the denial of class certification. *Id.* at 871. Having declined to negotiate a settlement with Allen and Webb that resolved the claims of the class, AT&T now seeks to also escape appellate review of the decision that spared it from classwide adjudication of those claims. Plainly, such circumstances do not implicate *Baker*'s articulated concerns with plaintiffs' manipulating appellate jurisdiction to gain unfair advantage.

### III.   The Ninth Circuit's Two Unpublished Orders Do Not Undermine *McDonald* Intervention

There is well-reasoned appellate authority, on facts analogous to here, that courts of appeal may exercise jurisdiction over intervenors' appeals of denial of class certification. *Brewer*, 863 F.3d at 871. The D.C. Circuit's narrow read of *Baker* is instructive: "questionable tactics" to circumvent the rules governing appellate jurisdiction cannot manufacture a final judgment. Conversely, only two unpublished (and therefore not precedential) summary orders from the Ninth Circuit

14

totaling four paragraphs support an extension of *Baker* to conclude that a valid stipulation of dismissal under Rule 41 lacks sufficient finality for an *intervenor* to appeal a class certification denial.

In *Martinez v. Flowers Foods, Inc.*, 720 F. App'x 415 (9th Cir. 2018) and *Bobbitt v. Milberg LLP*, 723 F. App'x 413 (9th Cir. 2018), the court took the unprecedented step of applying *Baker* to strip itself of jurisdiction any time named plaintiffs have stipulated to dismissal with prejudice of their individual claims. The order in *Bobbitt* applied *Baker* to the intervenor's appeal and *Martinez* simply followed suit. Both failed to reckon with *McDonald* or *Brewer*, which was the only appellate decision to have analyzed *Baker* in the context of intervention and had come to the opposite conclusion. The implication of these orders is alarming: putative class members cannot protect their interests through intervention, a process repeatedly affirmed by the Supreme Court.

## CONCLUSION

Intervenor Curlee submits this Court has jurisdiction over her appeal of the denial of class certification under 28 U.S.C. § 1291, as the named plaintiffs' voluntary stipulation of dismissal, with no reservation of rights, constitutes a final judgment.

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing document complies with the volume limitations of Fed. R. App. P. 27(d)(2)(A) and 11th Circuit Rule 32-4 because it contains 3,004 words, excluding parts exempted by Fed. R. App. P. 32(f).

This document also complies with the typeface and type-style requirements of Fed. R. App. P. 27, 32(a)(5) and 32(a)(6) and 11th Circuit Rule 27-1 because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Century Schoolbook font.

Dated: April 22, 2024                    *s/Joseph M. Sellers*
                                         JOSEPH M. SELLERS

                                         *Counsel for Intervenor*
                                         *Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this document with the Clerk of the Court using the ECF system on April 22, 2024, which will automatically generate and serve by e-mail a Notice of Docket Activity on Attorney Filers under Rule 25(c)(2) of the Federal Rules of Appellate Procedure. Pursuant to 11th Circuit Rule 31-3, four copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for second-day delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, GA 30303

Dated: April 22, 2024

*s/Joseph M. Sellers*
JOSEPH M. SELLERS

*Counsel for Intervenor
Plaintiff-Appellant*

1